## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Adv. Proc. No. 01-771 |
| | Jointly Administered |
| Libby Plaintiffs, | |
| Appellants, | C.A.06-00026-RLB |
| v. | |
| W.R. Grace & Co., *et al.*, | |
| Appellees. | |

## BRIEF OF DEFENDANTS-APPELLANTS

Adam G. Landis (No. 3407)               Daniel C. Cohn
Kerri K. Mumford (No. 4186)             Christopher M. Candon
Landis Rath & Cobb LLP                  Cohn Whitesell & Goldberg LLP
919 Market Street, Suite 600            101 Arch Street
P.O. Box 2087                           Boston, MA 02110
Wilmington, DE 19801                    Telephone:  (617) 951-2505
Telephone:  (302) 467-4400              Facsimile:  (617) 951-0679
Facsimile:  (302) 467-4450

Dated: February 2, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

BASIS OF APPELLATE JURISDICTION................................................................... 1

ISSUES PRESENTED ON APPEAL........................................................................... 2

STANDARD OF REVIEW .......................................................................................... 2

STATEMENT OF THE CASE...................................................................................... 3

    Introduction.......................................................................................................... 3

    Procedural Background........................................................................................ 4

    Relevant Facts..................................................................................................... 7

SUMMARY OF ARGUMENT ..................................................................................... 9

ARGUMENT ................................................................................................................ 10

I.    The Order was Improperly Entered Without Reaching
the Merits of the Injunction Motion........................................................ 10

II.    The Bankruptcy Court Lacked Subject Matter Jurisdiction
to Enjoin the State Litigation .................................................................. 12

    A.  Subject Matter Jurisdiction is a Threshold Requirement................... 12

    B.  Under Established Third Circuit Precedent, Related-To
Jurisdiction Does not Extend to the State Litigation ...................... 14

III.    Even if the Bankruptcy Court Concluded Jurisdiction Existed to Enjoin
the State Litigation, a Section 105 Injunction was Not Warranted........................ 24

    A.  Section 105(a) and the "Unusual Circumstances" Requirement...................... 24

        1.  Grace had the burden of demonstrating "unusual circumstances.".............. 26

        2.  Grace did not meet the first part of the "unusual circumstances" test,
requiring that Grace demonstrate an identity of interest with the State..... 26

        3.  Grace did not meet the second part of the "unusual circumstances" test,
requiring that Grace demonstrate that the State Litigation will have an
adverse effect on Grace's ability to reorganize .......................................... 27

B.  Grace did not satisfy the traditional equitable factors relevant to issuance of an injunction..............................................................28

1.  The Likelihood of Success.........................................................29

2.  Irreparable Harm to the Estate ..................................................31

3.  Irreparable Harm to the Libby Claimants ..................................32

4.  Public Interest ..........................................................................33

CONCLUSION............................................................................................................34

## TABLE OF AUTHORITIES

<u>Cases</u>

A.H. Robins, Inc. v. Piccinin (In re A.H. Robins Co.), 788 F.2d 994 (4th Cir.),
cert. denied, 479 U.S. 876 (1986) ..........................................................................................20, 25

Acierno v. New Castle County, 40 F.3d 645 (3d Cir. 1994) .........................................................29

American Hardwoods, Inc. v. Deutsche Credit Corp.,
 (In re American Hardwoods, Inc.), 885 F.2d 621 (9th Cir. 1989)................................................13

Carol Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)
115 Fed.Appx. 565 (3d Cir. 2004)…...........................................................................................16

Celotex Corp. v. Edwards, 514 U.S. 300 (1995) ....................................................................15, 16

Chase Manhattan Bank v. Third Eighty-Ninth Assoc.
(In re Third Eighty-Ninth Assoc., Inc.), 138 B.R. 144 (S.D.N.Y. 1992).......................................25

Clinton v. Jones, 520 U.S. 681 (1997) ............................................................................24, 26, 33

Coffin v. Malvern Fed. Sav. Bank, 90 F.3d 851 (3d Cir. 1996) ........................................................23

Cunningham v. Pension Benefit Guar. Corp. (In re SiMetco, Inc.),
235 B.R. 609 (N.D. Ohio 1999)...................................................................................................13

Dore & Assocs. Contracting, Inc. v. Am. Druggists' Ins. Co.,
54 B.R. 353 (Bankr. W.D. Wis. 1985)...........................................................................................26

Durden v. Hydro Flame Corp., 983 P.2d 943 (Mont. 1999) .........................................................20

Federal Ins. Co. v. W.R. Grace, et al., Civil Action Nos. 04-844 and 04-845:
Memorandum and Opinion (D. Del. November 22, 2004) (Buckwalter, J.) .................................14

Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746 (5th Cir. 1995).................12, 13, 24, 25, 28, 30

Finstad v. W.R. Grace & Co., 8 P.3d 778 (Mont. 2000) ...............................................................23

Granny Goose Foods. Inc. v. Brotherhood of Teamsters and Auto Truck Drivers
Local No. 70 of Alameda County, 415 U.S. 423 (1974) ..........................................................10, 11

Great Northern Ry. v. United States, 187 F.Supp. 690 (D. Mont. 1960) ......................................20

Gray v. Hirsch, 230 B.R. 239 (S.D.N.Y. 1999)............................................................................26

In re Cary Metal Products, Inc., 158 B.R. 459 (N.D. Ill. 1993)........................................14

In re Circle Land and Cattle Corp., 213 B.R. 870 (Bankr. D. Kan. 1997) ....................14

In re Combustion Engineering, Inc.,
391 F.3d 190 (3d Cir. 2004) ..........................4, 9, 12, 13, 14, 16, 17, 18, 20, 21, 22, 23, 24, 25, 30

In re Commonwealth Oil Refining Co., 805 F.2d 1175 (5th Cir. 1986)........................28

In re Continental Airlines, 203 F. 3d 203 (3d Cir. 2000)...............................................24

In re Crazy Eddie Sec. Litig., 104 B.R. 582 (E.D.N.Y. 1989).......................................27

In re Deltacorp, Inc., 111 B.R. 419 (Bankr. S.D.N.Y. 1990)........................................14

In re Eagle-Picher Indus., Inc., 963 F.2d 855 (6th Cir. 1992) .....................................28

In re Federal-Mogul Global, Inc., 282 B.R. 301 (D. Del.),
mandamus denied, 300 F.3d 368 (3d Cir. 2002), cert. denied sub nom.,
Daimler Chrysler Corp. v. Official Comm. Of Asbestos Claimants,
537 U.S. 1148 (2003) ........................................................16, 17, 18, 19, 20, 21, 22, 24

In re Johns-Manville Corp., 801 F.2d 60 (2d Cir. 1986) ...................................13, 22, 29

In re Jacksen, 105 B.R. 542 (B.A.P. 9th Cir. 1989)......................................................13

In re Kids Creek Partners, 248 B.R. 554 (Bankr. N.D. Ill. 2000)..................................14

In re Lowenschuss, 67 F.3d 1394 (9th Cir. 1995) ........................................................30

In re Morristown & Erie Railroad Co., 885 F.2d 98 (3d Cir. 1989)...............................25

In re Nunez, 2000 WL 655983 (E.D.N.Y.).....................................................................13

In re O'Brien Envtl. Energy, Inc., 188 F.3d 116 (3d Cir. 1999) ......................................2

In re Prof'l Ins. Mgmt., 285 F.3d 268 (3d Cir. 2002)...................................................1, 2

In re Reliance Acceptance Group, Inc., 235 B.R. 548 (D. Del. 1999) ...........................1

In re Resorts Int'l, Inc., 372 F.3d 154 (3d Cir. 2004)....................................................23

In re S.T.R. Corp., 66 B.R. 49 (Bankr. N.D. Ohio 1986) ...............................................14

Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
456 U.S. 694 (1982).....................................................................................................23

Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.),
40 B.R. 219 (S.D.N.Y. 1984)..........................................................................22

MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89 (2d Cir. 1988) ...........................................29

Nutrasweet Co. v. Vit-Mar Enterprises, Inc., 112 F.3d 689 (3d Cir. 1997) .............................2, 11
Oklahoma Federated Gold and Numistatics, Inc. v. Blodgett,
24 F.3d 136 (10th Cir. 1994) .............................................................................27

O'Malley Lumber Co. v. Lockard (In re Lockard), 884 F.2d 1171 (9th Cir. 1989) ............... 26-27

Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187 (3d Cir. 1990) ......................29

Orr v. State of Montana, 106 P.3d 100 (Mont. 2004)......................................................3, 9, 18, 26

Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984) .....................15, 16, 17, 18, 19, 20, 21, 22, 24

Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n.,
306 F.2d 840 (2d Cir. 1962).............................................................................11

Phar-Mor, Inc. Sec. Litig. v. Gen. Elec. Capital Corp.
(In re Phar-Mor, Inc. Sec. Litig.), 166 B.R. 57 (W.D. Pa. 1994)...................................26

Plumb v. Fourth Judicial District Court, 927 P.2d 1011 (Mont. 1996) .........................................21

The Pitt News v. Fisher, 215 F.3d 354 (3d Cir. 2000)..................................................................29

Robbins v. Chase Manhattan Bank, N.A.,
1994 U.S. Dist. LEXIS 5100 (W.D. Va. April 4, 1994).................................................26

Sampson v. Murray, 415 U.S. 61 (1974) ..........................................................................1, 11, 12

Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.),
352 F.3d 671 (2d Cir. 2003).............................................................................25

State, ex rel., Deere & Co. v. District Court of the Fifth Judicial District,
730 P.2d 396 (Mont. 1986).............................................................................20

Stonington Partners v. Lernout & Hauspie Speech Products, N.V.,
310 F.3d 118 (3d Cir. 2002)..............................................................................2

United Airlines, Inc. v. U.S. Bank N.A., 406 F.3d 918 (7th Cir. 2005) ....................................1, 12

United States v. Pepperman, 976 F.2d 123 (3d Cir. 1992) ...........................................................25

United States v. Sutton, 786 F.2d 1305 (5th Cir. 1986)............................................................25

Univesity Med. Ctr. v. Am. Sterilizer Co. (In re Univ. Med. Ctr.),
82 B.R. 754 (Bankr. E.D. Pa. 1988) ......................................................................................25

Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159 (7th Cir. 1994) ...................................................12

## Statutes

11 U.S.C. § 105.....................................................................13, 14, 20, 24, 25, 26, 28, 30, 31

11 U.S.C. § 524(g) .............................................................................................17, 29, 30

11 U.S.C. § 524(g)(4)(A)(ii)(I)-(IV).................................................................................30

28 U.S.C. § 157(a) ........................................................................................................15

28 U.S.C. § 1292(a)(1)......................................................................................................1

28 U.S.C. § 1334(b) ...........................................................................................6, 9, 14, 15

Fed. R. Bankr. P. 7065 ......................................................................................................1

Fed. R. Bankr. P. 8002(a) .................................................................................................7

Fed. R. Civ. P. 1..............................................................................................................33

Fed. R. Civ. P. 65(b) ...........................................................................................1, 10, 11, 12

Mont. Code Ann. § 27-1-221 (1997) .................................................................................23

Mont. Code Ann. § 27-1-703 (1997) ..............................................................................20, 21

## Treatises

2 Collier on Bankruptcy ¶ 105.03[2][b][i][A] (15th Ed. 2002) .....................................................25

## Rules

Third Circuit Internal Operating Procedure 5.5.4 (July 2002).......................................................16

## BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1) which

provides this Court with jurisdiction of appeals from interlocutory orders "granting, continuing,

modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions."

See In re Prof'l Ins. Mgmt., 285 F.3d 268, 282 n.16 (3d Cir. 2002)(bankruptcy court orders

regarding injunctions are appealable as of right pursuant to 28 U.S.C. § 1292(a)(1)); In re

Reliance Acceptance Group, Inc., 235 B.R. 548, 553 (D. Del. 1999)(same).  This is an appeal

from an order of the Bankruptcy Court enjoining the claimants injured by exposure to tremolite

asbestos from Grace's operations in and near Libby, Montana (the "Libby Claimants")[1] from

prosecuting their tort claims against the State of Montana (the "State") in the Montana District

Courts for Lincoln, Cascade, and Lewis and Clark Counties (the "State Litigation") while the

Bankruptcy Court takes under advisement the Debtors' Motion to Expand the Preliminary

Injunction to Include Actions Against the State of Montana (the "Injunction Motion").

[Adversary Case D.I.  359.][2]  The Bankruptcy Court order is reviewable as a preliminary

injunction because, whether or not intended as such by the Bankruptcy Court, it has continued

beyond the time permissible under Fed. R. Civ. P. 65(b) (as incorporated by Fed. R. Bankr. P.

7065).  See Sampson v. Murray, 415 U.S. 61, 86-88 (1974)(no matter how denominated by the

court, a restraining order that extends beyond the time permitted under Rule 65(b) acts as a

preliminary injunction and is reviewable as such); United Airlines, Inc. v. U.S. Bank N.A., 406

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Bankr. Case D.I. 11624] filed in the bankruptcy case (Case No. 01-01139 (JFK)), as it may be amended and restated from time to time.

[2] Items designated by the Libby Claimants, the State, and Grace to be included in the record are from both the main bankruptcy case and the adversary proceeding.  Accordingly, cites to the record indicate whether the docket reference is from the main case "[Bankr. Case D.I. ___]" or the adversary proceeding "[Adversary Case D.I. ___]."

F.3d 918, 923-24 (7th Cir. 2005); Nutrasweet Co. v. Vit-Mar Enterprises, Inc., 112 F.3d 689, 692-94 (3d Cir. 1997).

## ISSUES PRESENTED ON APPEAL

1.      Did the Bankruptcy Court have subject matter jurisdiction to stay the Libby Claimants' pending litigation against a non-debtor party, the State, where the litigation asserts claims against the State for its own tortious conduct?

2.      Even if the Bankruptcy Court had subject matter jurisdiction, did the Bankruptcy Court err in staying the Libby Claimants' pending litigation against the State based solely on the State's own tortious conduct without requiring debtor W. R. Grace & Co., Inc. ("Grace" or the "Debtor") to establish grounds therefor under the stringent standards established by caselaw for entry of an injunction against independent third-party litigation?

## STANDARD OF REVIEW

Legal determinations of the Bankruptcy Court are reviewed *de novo*, factual findings for clear error and exercises of discretion for abuse thereof. See, e.g., Prof'l Ins. Mgmt., 285 F.3d at 282-83 (3d Cir. 2002). The Bankruptcy Court's application of the law to the facts is reviewed *de novo*. In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). Where the Bankruptcy Court does not apply correct legal standards, its decision will be reversed even if the decision entailed an exercise of discretion. See Stonington Partners v. Lernout & Hauspie Speech Products, N.V., 310 F.3d 118, 121 (3d Cir. 2002). Since the issues on this appeal are matters of law or concern application of incorrect legal standards in the issuance of an injunction, the *de novo* standard of review applies.

## STATEMENT OF THE CASE

### Introduction

Libby, Montana – a town of about 2,600 residents – has been ravaged like no other community in America by the effects of tremolite asbestos disease, suffered by miners and other townspeople through years of exposure to dust created by Grace's mining and processing of vermiculite. But the devastating disease, said to be 10 times more deadly than more common types of asbestosis, was not caused by Grace alone. In <u>Orr v. State of Montana</u>, 106 P.3d 100 (Mont. 2004), the Montana Supreme Court held that under the Industrial Hygiene Act, "the State had statutory duties to the public and persons confronted with workplace hazards," <u>Orr</u>, 106 P.3d at 110, ¶ 40, and that "the State had discretion to determine what information to gather, but once that information was gathered, it had no discretion about whether to distribute it." <u>Id</u>. at 108, ¶ 25. The court noted: "[I]t appears that the record is bereft of any actions taken by the State to warn the miners or the Libby townspeople of their plight." <u>Id</u>. at 110, ¶ 37.

Libby Claimants continue to suffer and die, without medical coverage for end stage care. The Grace Libby Medical Program does not pay for nursing home care or 24-hour home care for patients with asbestos disease. The affidavits of those who have performed the 24-hour home care, and of those who are currently performing it, show enormous suffering and terrible stress, with no help from Grace.[3]

Instead, Grace moved to enjoin the Libby Claimants from obtaining compensation in the tort system from the State—a recognized wrongdoer with no special relationship to Grace or its Chapter 11 case. Grace's attempt to extend the preliminary injunction it obtained early on its

---

[3] A detailed description of the hardships faced by the Libby Claimants can be found in Section III.B.3 below and in the Affidavits of Tami Broden, Betty Challinor, Linda Collinson, Lois Dickerman, Richard Erickson, Bonnie Fuller, Neil Nelson, Glynda Olson, Julie Randles, Nancy A. Sagen, Doloris Spady, Lynn Stanley, Lona Diane Walker, and Betty Warner. [Adversary Case D.I. 363, Ex. A-N.]

bankruptcy case to enjoin asbestos-related claims against insurers and other affiliates of Grace (the "Preliminary Injunction") to the State goes far beyond the original purpose of the Preliminary Injunction, and far beyond the typical case where a debtor seeks to enjoin suits against its insurers to protect the bankruptcy estate. Rather, in direct contradiction to the consistent teachings of the Third Circuit—most recently in In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004)—Grace seeks to shield a non-debtor party from on-going litigation that cannot, as a matter of law, have a direct impact on Grace's estate. In Combustion Engineering and two earlier decisions, the Third Circuit concluded that the bankruptcy court did not have jurisdiction to enjoin litigation among non-debtor parties merely because the defendant claimed a right of contribution or indemnity against the debtor – as the State does here.

The statutory duties violated by the State are specific to the State alone. The torts of the State are legally separate from any cause of action against Grace.[4] The record reflects that the balance of harm upon the Libby Claimants far outweighs any imagined harm to Grace. Yet the Bankruptcy Court stayed the State Litigation without even reaching the merits of the Injunction Motion. In so doing, the Bankruptcy Court exceeded its jurisdiction. Allowing the injunction to stand would irreparably harm the people of Libby, some of whom will not live long enough to obtain medical expense compensation from the State.

**Procedural Background**

On April 2, 2001 (the "Petition Date"), Grace filed a petition for relief under Chapter 11 of the Code. In re W.R. Grace, et. al., Chapter 11 Case No. 01-01139 (JKF). On the same date, Grace filed an adversary complaint seeking, inter alia, the Preliminary Injunction (the "Injunction Proceeding"). [Adversary Case D.I. 359, ¶ 3.] The Bankruptcy Court entered a

---

[4] This does not, of course, preclude any additional claim that the State—separate and apart from breaching its *own* independent duties to the Libby Claimants—conspired with Grace in the commission of other torts.

temporary restraining order on April 2, 2001 [Id.], and on May 3, 2001 entered the Preliminary Injunction sought by Grace. [Id.] On January 22, 2002, the Bankruptcy Court entered an order modifying the Preliminary Injunction to expand its scope to include certain additional affiliates of Grace. [Adversary Case D.I. 87]

Prior to and after the Petition Date, the Libby Claimants commenced the State Litigation in the Montana District Courts for Lincoln, Cascade, and Lewis and Clark Counties against the State. [Adversary Case D.I. 363, p. 5.] Until the filing of the Injunction Motion, the State Litigation proceeded uninterrupted by and without involvement of Grace. [Id.] On June 9, 2005, the State filed a motion seeking relief from the automatic stay (the "Stay Motion") "in order to name and liquidate claims against Grace." [Bankr. Case D.I. 8582, ¶ 18.] The Stay Motion was opposed by Grace and the official committees of Asbestos Property Damage Claimants, Asbestos Personal Injury Claimants (the "PI Committee"), and General Unsecured Creditors appointed in the Grace case. [Bankr. Case D.I. 8795, 8707, and 8708.] Each of the oppositions argued that the State failed to meet its burden to demonstrate why its claims should be liquidated now while other claimants remain subject to the automatic stay. [Id.] These oppositions, which are based on elementary and long-standing principles of bankruptcy law, had every expectation of success. But instead of pursuing the matter to its inevitable conclusion—denial of the Stay Motion—Grace shifted gears, put determination of the Stay Motion on hold, and on August 22, 2005 filed the Injunction Motion seeking to expand the Preliminary Injunction to include the State Litigation. [Adversary Case D.I. 359.]

In the weeks following the filing of the Injunction Motion, the Libby Claimants, the State, and Grace agreed to stay all activity in the State Litigation until one day after the hearing on the Injunction Motion. In the meantime, on October 7, 2005, the Libby Claimants filed the

Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana (the "Opposition"), arguing that (a) the Bankruptcy Court lacked subject matter jurisdiction to enjoin the Libby Claimants' separate and independent tort claims against the State because the State Litigation is not related to the Grace bankruptcy within the meaning of 28 U.S.C. § 1334(b), and (b) the Injunction Motion failed to establish grounds for entry of an injunction against independent third-party litigation under the stringent standards established by caselaw. [Adversary Case D.I. 363.] The PI Committee joined the Opposition by filing the Joinder of the Official Committee of Asbestos Personal Injury Claimants in the Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Case D.I. 365.] On October 14, 2005, Grace filed the Debtors' Reply in Support of Their Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Case D.I. 367.]

On December 19, 2005, the Bankruptcy Court held a hearing on the Injunction Motion (the "Hearing"). [Bankr. Case D.I. 11473.] At the conclusion of the Hearing, the Bankruptcy Court stated that it would take the Injunction Motion under advisement. [Bankr. Case D.I. 11473, p.199:21.] In response, the State asked the Bankruptcy Court to "stay the Libby Claimants from taking discovery or proceeding any further with the [State Litigation] until the [Bankruptcy] Court renders a decision on [the Injunction Motion]." [Bankr. Case D.I. 11473, pp.200:21-25 and 201:1-5.] The Bankruptcy Court indicated that it considered the extension of the stay appropriate and sought the Libby Claimants' agreement to such a stay. [Bankr. Case D.I. 11473, p.201:7-11.] Asked by the Libby Claimants for an indication of the time period to render a decision, the Bankruptcy Court suggested it could be more than a year. [Bankr. Case D.I.

11473, p.202:15-25.] Having previously entered into a voluntary stay in a separate matter not unlike the circumstance presented here,[5] the Libby Claimants informed the Bankruptcy Court that they would not assent to the stay. [Bankr. Case D.I. 11473, p.203:1-7.] The Bankruptcy Court then orally entered a stay [Bankr. Case D.I. 11473, p.203:8], followed by entry of a written order on January 17, 2006 (the "Order"). [Adversary Case D.I. 376.] In the meantime, on December 29, 2005, the Libby Claimants filed a Notice of Appeal of the December 19, 2005 ruling. [Adversary Case D.I. 373.] On January 19, 2006, the Libby Claimants filed an Amendment to Notice of Appeal, clarifying that the appeal was of the Order, which replaced and superseded the oral order announced in open court on December 19, 2005.[6] [Adversary Case D.I. 378.]

### Relevant Facts

The suffering of the people of Libby, Montana due to asbestos disease from exposure to Libby tremolite asbestos (also known as the Libby amphibole) originating from the vermiculite mine and mill operated by Grace (the "Libby Mine") is well chronicled. [Adversary Case D.I. 363, p.3.] Through the Center for Asbestos Related Disease ("CARD") in Libby, Montana, Dr. Alan C. Whitehouse and Dr. C. Brad Black have diagnosed at least 1,500 patients with asbestos related disease due to exposure to Libby tremolite asbestos in or near Libby, Montana. [Id.] The CARD Clinic regularly treats about 1,200 of these 1,500 patients. [Adversary Case D.I. 363, Ex. O and P.] Since the CARD Clinic opened in 2000, physicians have had about 60 patients who

---

[5] In a similar contested proceeding concerning Grace's attempt to further expand the Preliminary Injunction to cover Montana Vermiculite Company, the Bankruptcy Court asked the Libby Claimants if they would continue a voluntary stay pending its ruling on Grace's motion. The Libby Claimants acceded to the Bankruptcy Court's request. The decision was not rendered until 10 months later. [Adversary Case D.I. 298 and 299.]

[6] Pursuant to Fed. R. Bankr. P. 8002(a), "a notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof."

have died of cancer or respiratory failure related to asbestos disease. [Adversary Case D.I. 363, Ex. O.] Since April 2, 2001, the date Grace filed its Chapter 11 petition (the "Petition Date"), 34 clients of McGarvey, Heberling, Sullivan & McGarvey in Kalispell, Montana have died of asbestos related disease. [Adversary Case D.I. 363, Ex. Q.] Currently the CARD Clinic has over 80 patients on oxygen, and about 100 patients are severely limited, with short life expectancy. [Adversary Case D.I. 363, Ex. O.] Most require 24 hour care. [Id.]

The Grace Libby Medical Program is voluntary and is not insurance, but covers many of the CARD patients. [Id.] There is no provision in Grace's proposed Chapter 11 Plan to continue this health plan for Libby. The Grace Libby Medical Plan does not offer 24-hour home care, which is generally necessary in end stage asbestos disease. For virtually all patients, the cost of 24-hour care in end stage asbestos disease has not been paid by the Grace Libby Medical Program. [Adversary Case D.I. 363, Ex. B, O, and R.] The affidavits of those who have performed 24-hour care show that even though all the now deceased asbestos diseased patients in question were accepted onto the Grace Libby Medical Program, no amounts were paid for 24-hour home care by the Grace Libby Medical Program. [Adversary Case D.I. 363, Ex. A-N.]

Nor does the Grace Libby Medical Program pay for nursing home care. [Adversary Case D.I. 363, Ex. B and R.] The letter of Health Network America, which administers the Grace Libby Medical Program, states: "Nursing home care is not a covered benefit of the [Grace] Libby Medical Program." [Adversary Case D.I. 363, Ex. Q, attachment A.] Grace's refusal to pay for end stage care or nursing home care has caused unimaginable stress upon the asbestos patients and their families.

From 1956 until 1991 when Grace ceased its operations at the Libby Mine, the State inspected the Libby Mine more than 20 times. [Adversary Case D.I. 363, Ex. S.] The purpose of

the inspections was to fulfill the State's duties to protect workers and the public, including workers' families and community members, from hazards created by the Grace operations. [Id.] Based on its inspections of the Grace operations, the State was aware from the 1950s forward that workers at the mine and mill were exposed to deadly toxins on a daily basis. [Id.] The purpose of industrial hygiene inspections is to protect human health from hazards created by industrial operations. [Id.] The State had many opportunities to warn or protect the Libby workers and community members from a known hazard and failed to do so. [Id.] As more specifically outlined in the Spear Affidavit [Adversary Case D.I. 363, Ex. S] (attached to the Opposition), the State's failure to require correction of the deficiencies it observed and to inform the workers and public of its findings was a violation of recognized industrial hygiene standards and practices, as well as its statutory duties under Montana law. [Id.]; see also Orr, 106 P.3d at 108.

### SUMMARY OF ARGUMENT

The Libby Claimants respectfully submit that the Order should be overturned because the Bankruptcy Court (1) improperly entered the Order, which constitutes a preliminary injunction, without reaching the merits of the Injunction Motion; and (2) if viewed as having decided the merits, erred on both jurisdictional and substantive grounds in enjoining the Libby Claimants' independent tort claims against the State. The Bankruptcy Court lacked subject matter jurisdiction because the dispute between the Libby Claimants and the State is not related to the Grace bankruptcy within the meaning of 28 U.S.C. § 1334(b) under long-established Third Circuit precedent, recently affirmed and amplified in Combustion Engineering. But even if the Bankruptcy Court had jurisdiction, Grace—which has the burden of proof on all elements of the

Injunction Motion—failed to establish that the Injunction Motion meets the stringent

requirements to obtain an injunction against litigation among third parties.

## ARGUMENT

I.  **The Order was Improperly Entered Without Reaching
    the Merits of the Injunction Motion**

   Without reaching a decision on the merits of the Injunction Motion, the Bankruptcy Court

entered the Order, which, for all purposes, granted Grace the requested injunction.  While the

Bankruptcy Court stated that the Order was not intended to act as a temporary restraining order,

the Bankruptcy Court's characterization of the Order does not mitigate its impact on the Libby

Claimants and the State Litigation.  Pursuant to the terms of the Order:

> [P]ending the Court's ruling on the [Injunction Motion] . . ., the [State
> Litigation] and all other actions that have been or may be brought against
> the State that arise from alleged exposure to asbestos indirectly or directly
> caused by the Debtors shall be temporarily stayed, so as to preserve the
> status quo pending resolution [of the Injunction Motion].

   While it is understandable that a court may require a brief period to render a considered

decision, in injunction proceedings that time period is limited by Fed. R. Civ. P. 65(b).[7]  As

noted by the Court of Appeals for the Second Circuit:

> [Fed. R. Civ. P. 65(b)] contemplates that notice and hearing shall result in
> an appropriate adjudication, i.e. the issuance or denial of a preliminary
> injunction, not an extension of the temporary stay.
>
> The purpose of a temporary restraining order is to preserve an existing
> situation in status quo until the court has an opportunity to pass upon the
> merits of the demand for a preliminary injunction.  Such an order is
> necessarily limited to a very brief period because what may later prove to
> be a right of the party who is restrained is suspended before even a
> tentative adjudication as to that right has been had. . . .  It is because the
> remedy is so drastic and may have such adverse consequences that the
> authority to issue temporary restraining orders is carefully hedged in Rule

---

[7] "[T]emporary restraining orders must expire by their own terms within 10 days after entry, 20 days if good cause is shown."  Granny Goose Foods. Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 433 (1974)

65(b) by protective provisions. And the most important of these protective provisions is the limitation on the time during which such an order can continue to be effective.

Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n., 306 F.2d 840, 842-43 (2d Cir. 1962). Here, the Bankruptcy Court issued an injunction without passing on the merits of the Injunction Motion. Now, more than 40 days have passed, and the stay is still in place (and likely will remain so for much of 2006).

Temporary restraining orders require specific time limitations. See Fed. R. Civ. P. 65(b); Granny Goose Foods. Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 435 (1974) (recognizing "important congressional policies reflected in the time limitations in Rule 65(b).") "Where a temporary restraining order has been continued beyond the time limits permitted under Rule 65(b), and where the required findings of fact and conclusions of law have not been set forth, the order is invalid." Id. at 443 n.17.

The Supreme Court has held that a temporary restraining order of potentially unlimited duration should be treated as a preliminary injunction. Sampson v. Murray, 415 U.S. 61, 87-88 (1974). In Sampson, the Supreme Court found that because of the strict limitations on the scope of temporary restraining orders, any such order that continues beyond the time permissible in Fed. R. Civ. P. 65(b) should be construed as a preliminary injunction so as to be immediately appealable. Id. at 85-86. In so holding, the Court observed that if a court "were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions, [the court] would have virtually unlimited authority over the parties in an injunctive proceeding." Id. at 86-87.

Applying Sampson, the Third Circuit held in Nutrasweet Co.v. Vit-Mar Enterprises, Inc., 112 F.3d 689 (3d Cir. 1997), that a district court's temporary restraining order that had remained

in effect for 77 days at the time defendants filed their notice of appeal was the equivalent of a

preliminary injunction, and thus subject to appellate review. Id. at 694. The court explained:

> [T]emporary restraining orders . . . cannot be continued indefinitely
> without observance of the safeguards required for entry of a preliminary
> injunction and that temporary restraining orders of indefinite duration,
> whether or not issued with notice, are subject to appellate review. The
> most prevalent view is that a temporary restraining order, even if issued
> with notice, cannot be continued beyond the periods prescribed in Fed. R.
> Civ. P. 65(b) without being treated as the equivalent of a preliminary
> injunction and thus subject to appellate review.

Id. at 692. Recently, the Seventh Circuit similarly stated:

> Temporary restraining orders that extend past 20 days are reviewable as
> preliminary injunctions, no matter what the rendering judge may have
> called them.

United Airlines, Inc. v. U.S. Bank N.A., 406 F.3d 918, 923 (7th Cir. 2005) (citing Sampson, 415

U.S. at 86-88).

The Order cannot be distinguished from a temporary restraining order, which has now

extended beyond the time permissible under Fed. R. Civ. P. 65(b). As a result, the Order

constitutes a preliminary injunction that was entered by the Bankruptcy Court without any basis

whatsoever, and should be overturned by this Court.

## II.    The Bankruptcy Court Lacked Subject Matter Jurisdiction to Enjoin the State Litigation

### A.    Subject Matter Jurisdiction is a Threshold Requirement

A bankruptcy court has subject matter jurisdiction to enjoin litigation among third parties

only if the bankruptcy court has subject matter jurisdiction over the litigation sought to be

enjoined. In re Combustion Engineering, Inc., 391 F.3d 190, 224-25 (3d Cir. 2004); Feld v. Zale

Corp. (In re Zale Corp.), 62 F.3d 746, 751 (5th Cir. 1995); see also Zerand-Bernal Group, Inc. v.

Cox, 23 F.3d 159, 162 (7th Cir. 1994). In Combustion Engineering, the Third Circuit defined the

threshold issue as "whether the District Court properly exercised 'related to' jurisdiction over the

non-derivative asbestos claims against non-debtors Basic and Lummus" when it enjoined those

claims. Combustion Engineering, 391 F.2d at 224. The court cautioned that "[w]hile aspects of

the § 105(a) analysis [concerning the merits of the injunction] may be relevant to the 'related to'

jurisdiction inquiry, these inquiries are analytically distinct." Id. The court went on to conduct

an extensive analysis of the jurisdictional issue, concluding that the proponents of the injunction

had failed to establish the court's jurisdiction to enter it. Id. at 225-33. Reaching the merits of

the injunction under Section 105(a) only in order to determine whether it would be pointless to

remand for more fact-finding on the issue of jurisdiction, id. at 233, the court then conducted a

separate and equally extensive analysis of whether the Bankruptcy Code permitted entry of the

injunction. Id. 233-39.

The Fifth Circuit similarly explained in Zale:

> Subject matter jurisdiction and power [under Section 105] are separate
> prerequisites to the court's capacity to act. Subject matter jurisdiction is
> the court's authority to entertain an action between the parties before it.
> Power under Section 105 is the scope and forms of relief the court may
> order in an action in which it has jurisdiction.

Zale, 62 F.3d at 751 (citing American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American

Hardwoods, Inc.), 885 F.2d 621, 624 (9th Cir. 1989)).

The requirement for jurisdiction over the target litigation reflects the well-established

principle that Section 105 of the Bankruptcy Code (the bankruptcy equivalent of the All Writs

Act) "does not provide an independent source of federal subject matter jurisdiction."

Combustion Engineering, 391 F.3d at 225. Accord, In re Johns-Manville Corp., 801 F.2d 60, 63

(2d Cir. 1986); In re Jacksen, 105 B.R. 542, 544 (B.A.P. 9th Cir. 1989); In re Nunez, 2000 WL

655983, at *8 (E.D.N.Y.); Cunningham v. Pension Benefit Guar. Corp. (In re SiMetco, Inc.), 235

B.R. 609, 618 (N.D. Ohio 1999); In re Cary Metal Products, Inc., 158 B.R. 459, 465 (N.D. Ill.

1993); In re Kids Creek Partners, 248 B.R. 554, 561 (Bankr. N.D. Ill. 2000); In re Circle Land

and Cattle Corp., 213 B.R. 870, 877 (Bankr. D. Kan. 1997). Section 105(a) is properly viewed

as only an "aid to the exercise of jurisdiction." In re Deltacorp, Inc., 111 B.R. 419, 420 (Bankr.

S.D.N.Y. 1990). A bankruptcy court may not invoke Section 105 to give the court jurisdiction

that it does not already possess. Combustion Engineering, 391 F.3d at 224-25; In re S.T.R.

Corp., 66 B.R. 49, 51 (Bankr. N.D. Ohio 1986); compare Federal Ins. Co. v. W.R. Grace, et al.,

Civil Action Nos. 04-844 and 04-845: Memorandum Opinion (D. Del. November 22, 2004)

(Buckwalter, J.)(specifying Section 105(a) as the procedural vehicle for the appointment of a

futures representative where jurisdiction to make such an appointment was conferred by Section

524(g)).

        In sum, before the Bankruptcy Court could even consider the merits of Grace's request to

enjoin the State Litigation, the Bankruptcy Court was required to determine whether it had

jurisdiction over the State Litigation. No such determination was made prior to the entry of the

Order.

### B.    Under Established Third Circuit Precedent, Related-To Jurisdiction Does not Extend to the State Litigation

        The Bankruptcy Court lacked jurisdiction over the Libby Claimants' litigation against the

State because under long-standing Third Circuit precedent, related-to jurisdiction under 28

U.S.C. § 1334(b) does not extend to litigation among non-debtor parties unless a judgment

rendered in the litigation would result in direct and automatic liability of the debtor's estate. No

direct or automatic liability to Grace can result from the State Litigation. Accordingly, the

Bankruptcy Court had no jurisdiction to enjoin the State Litigation.

The jurisdiction of bankruptcy courts is grounded in and limited by statute. 28 U.S.C. §1334(b); 28 U.S.C. § 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In turn, Section 157(a) permits the district court to refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). In the present case, since the claims of the Libby Claimants against the State arose neither under the Bankruptcy Code nor in Grace's Chapter 11 case, the sole issue is whether those claims are "related to" the Chapter 11 case.

Courts have universally adopted the test first articulated by the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), for determining whether related-to jurisdiction exists:

> A matter is related to the bankruptcy case for §1334 purposes if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . . Moreover, an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and in any way impacts upon the handling and administration of the bankruptcy estate.

Applying this standard, the Third Circuit held that related-to jurisdiction did not extend to personal injury litigation between non-debtor parties, neither of them related to the Chapter 11 debtor, stating:

> At best, [the personal injury lawsuit] is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the [the personal injury lawsuit] would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the [the personal injury lawsuit], it could not be bound by res judicata or collateral estoppel.

Id. at 995. Accordingly, the Third Circuit concluded:

> there would be **no automatic creation of liability** against Manville on account of a judgment against Pacor. Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor, and thus a judgment in the [the personal injury lawsuit] could not give rise to any automatic liability on the part of the estate. All issues regarding Manville's possible liability would be resolved in the subsequent third party impleader action . . . . There would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim.

Id. at 995-96 (emphasis added). Since the Chapter 11 debtor could not be bound **automatically** by the litigation, the litigation could not affect the estate in any way and thus was not related to the debtor's Chapter 11 case. Id.

Pacor has been expressly approved by the United States Supreme Court. Celotex, 514 U.S. at 308. And the Third Circuit recently confirmed the on-going vitality of Pacor in Combustion Engineering, 391 F.3d at 225-27,[8] and In re Federal-Mogul Global, Inc., 282 B.R. 301 (D. Del.), mandamus denied, 300 F.3d 368 (3d Cir. 2002), cert. denied sub nom. Daimler Chrysler Corp. v. Official Comm. of Asbestos Claimants, 537 U.S. 1148 (2003).

---

[8] Grace failed to cite Combustion Engineering in the Injunction Motion and instead pointed the Bankruptcy Court to the Third Circuit's opinion in Carol Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.), 115 Fed.Appx. 565 (3d Cir. 2004), which was expressly rendered as "non-precedential." This may be taken as an indication that Grace knows it must lose unless the Bankruptcy Court applies the incorrect analysis contained in Gerard. That decision vacated a District Court order that the Bankruptcy Court lacked related-to jurisdiction for the Bankruptcy Court to expand the Preliminary Injunction to include the Libby Claimants' independent actions against Maryland Casualty Company. Although Gerard rested largely upon an odd procedural posture that does not exist here—the panel determined that the Libby Claimants had the burden of proof since the appeal was not from the Bankruptcy Court's imposition of the injunction but rather the Bankruptcy Court's refusal to clarify and/or reconsider the injunction— the decision is at odds with Combustion Engineering in permitting an injunction against litigation among third parties without requiring that the court be able to exercise jurisdiction over that litigation. In this regard, it is overruled by Combustion Engineering, a later decision and one that was expressly rendered on a precedential basis. Under Third Circuit rules, this means that the decision was circulated to the full court, including the two members of the Gerard panel who did not also serve on the Combustion Engineering panel. See Third Circuit Internal Operating Procedure 5.5.4 (July 2002). In the matter before the Bankruptcy Court, Grace indisputably had the burden of proof and the Bankruptcy Court was bound by Combustion Engineering's requirement that there exist related-to jurisdiction over the State Litigation before the Bankruptcy Court may consider enjoining it.

In Combustion Engineering, a prepackaged Chapter 11 case, the plan provided for all asbestos claims—including claims against non-debtor affiliates Basic, Inc. and ABB Lummus Global, Inc.—to be channeled to a post-confirmation trust created under Section 524(g) of the Bankruptcy Code. The plan provided for all three entities, along with their respective parent companies, to make substantial contributions of cash and other assets to the post-confirmation trust. Fulfilling a prerequisite to these contributions, the bankruptcy court entered an injunction under Section 105 barring the assertion of asbestos claims against Basic and Lummus. After a thorough analysis of Pacor and Federal-Mogul, the Third Circuit held that related-to jurisdiction cannot be extended to claims of asbestos plaintiffs against the non-debtors (Basic and Lummus) simply because of their corporate affiliation with the debtor or because the substantial financial contributions to the plan by the non-debtor affiliates depended on a channeling injunction in their favor. Combustion Engineering, 391 F.3d at 225-27. Accordingly, the court considered the other factors advanced by the debtor as grounds for related-to jurisdiction: a unity of interest based on the debtor's obligations of indemnity or contribution to the non-debtor affiliates, and the existence of shared insurance between the debtor and the affiliates.[9]

The Combustion Engineering court rejected the debtor's assertion that the non-debtor affiliates' potential rights of contribution or indemnity from the debtor established related-to jurisdiction. Id. at 230-32. In so doing, the court specifically rejected the debtor's contention that common production sites between the debtor and affiliates provided "a sufficient basis for the kind of 'unity of interest' that could give rise to 'related to' jurisdiction." Id. at 232. In the State Litigation, of course, the State of Montana is not even in the business of producing asbestos products. Rather, liability in the State is predicated on the State's own violation of a

---

[9] There is indisputably no shared insurance between Grace and the State, so this factor will not be addressed in this Brief.

governmental duty to warn about hazards at Grace's production sites. <u>Orr</u>, 106 P.3d at 108. But even if the fact that the inspections made by the State and the warnings it failed to issue concerned Grace's operations in Libby could be shoe-horned into the concept of a "common production site" between Grace and the State, <u>Combustion Engineering</u> makes it crystal clear that this factor does *not* represent a "unity of interest" that could confer jurisdiction. <u>Combustion Engineering</u>, 391 F.3d at 231-32.

This aspect of <u>Combustion Engineering</u> was not new, but simply an application of principles long settled under <u>Pacor</u> and <u>Federal-Mogul</u>. As the court in <u>Combustion Engineering</u> observed, <u>Pacor</u> rejected related-to jurisdiction even though the non-debtor's exposure to liability resulted from sale of products that the debtor manufactured, and <u>Federal-Mogul</u> found no jurisdiction even though the non-debtors' exposure to liability resulted from incorporating the debtor's products into their own. <u>Combustion Engineering</u>, 391 F.3d at 231-32. The court continued:

> In both cases the unity of exposure created by asbestos contained in a common product was insufficient to give rise to "related to" jurisdiction when the third-party claim would not directly result in liability for the debtor.

<u>Id</u>. at 232.

The District Court's decision in <u>Federal-Mogul</u> explains why a claim against a non-debtor who merely asserts a right of contribution or indemnity does not directly result in liability for the debtor. In <u>Federal-Mogul</u>, non-debtors Chrysler, Ford and other automakers who were codefendants with the debtors in thousands of asbestos-related tort lawsuits (referred to as the Friction Products Litigation) sought to transfer those cases to the Delaware Bankruptcy Court, arguing that the tort suits were "related to" the debtors' Chapter 11 case so as to confer bankruptcy jurisdiction. Applying <u>Pacor</u>, the District Court held that "related-to bankruptcy

jurisdiction [does] not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical possibility that the estate will be affected." Federal-Mogul, 282 B.R. at 309. The debtor, although a putative indemnitor, had no cause for concern that common facts would be litigated against the non-debtors, because no factual determination could be binding on the debtor's estate. Id. at 306. An indemnitor can be bound by an underlying judgment only if given an opportunity to be heard and defend, but since the automatic stay prevents the debtor from being required to defend, the debtor cannot be bound:

> Implicit in Pacor's rationale is that a debtor may not be prejudiced by its failure to defend a lawsuit against a third-party common-law indemnitee without *de facto* depriving the debtor of the benefit of the automatic stay of litigation against it.

Id. at n.3. Accordingly:

> The Court sees no justification to take the situation of these movants [the non-debtor codefendants of the debtor in asbestos litigation] outside of the rule of Pacor. **A judgment against them will not bind the debtors.** No asset of the estate is threatened nor is any re-ordering of creditors in the offing. It is true that recovery by asbestos claimants against the movants may give rise to claims, indeed very substantial claims, against the debtors in the future. It is at that time, when the movants appear as creditors of the estate and the facts underlying the liability are adjudicated in the context of the bankruptcy, that the Friction Product Claims will affect the estate.

Id. at 311 (emphasis added). The District Court's denial of jurisdiction was upheld by the Third Circuit, which concluded:

> Any indemnification claims that the [automakers] might have against Debtors have not yet accrued and would require another lawsuit before they could have an impact on Federal-Mogul's bankruptcy proceeding . . . .

Federal-Mogul, 300 F.3d at 382.[10]

Before Combustion Engineering, it was possible (albeit incorrect) to distinguish Pacor and Federal-Mogul on the basis that those decisions involved attempts to remove litigation to the bankruptcy court, rather than attempts to enjoin such litigation. But in Combustion Engineering, the Third Circuit applied the exact same analysis of related-to jurisdiction to the injunction situation. It is now clear that related-to jurisdiction must exist for litigation to be enjoined by the bankruptcy court, just the same as it must exist for litigation to be removed to the bankruptcy court.

Without citing Combustion Engineering, Federal-Mogul, or Pacor, and without even addressing the issue of jurisdiction, Grace's Injunction Motion attempted to premise an injunction against the State Litigation on (a) the State's alleged indemnification or contribution claim, and (b) the sub-issue of "record taint"—Grace's allegation that since the State Litigation will necessarily involve evidence of Grace's operations in Libby, Grace will be prejudiced by

---

[10] In this regard (as well as in the requirement that a disciplined jurisdictional analysis precede consideration of a Section 105 injunction), the jurisprudence of the Third Circuit parts company with the Fourth Circuit. In A.H. Robins, Inc. v. Piccinin (In re A.H. Robins Co.), 788 F.2d 994, 1000 (4th Cir. 1986), the Fourth Circuit upheld an injunction of litigation against non-debtor defendants who had a right of indemnification from the debtor because of concern that an indemnitee may be "unfairly mulcted by inconsistent judgments" if required to prove its indemnity claim in a bankruptcy claim allowance proceeding wherein the debtor would not be bound by the non-bankruptcy judgment against the indemnitee. Apart from being inconsistent with Pacor, Federal Mogul and Combustion Engineering on this issue, Robins is distinguishable from the present case because the non-debtor defendants were entitled to "absolute indemnity." Id. at 999. Here, it is undisputed that no relationship exists between Grace and the State that would entitle the State to absolute indemnification. Most likely, the State's rights against Grace (if any) are properly considered a claim for contribution, not indemnification. Grace's suggestion in the Injunction Motion that the State Litigation could give rise to a right of indemnity appears based on the State's citation of older Montana caselaw purportedly establishing that a party primarily at fault is required to indemnify the less culpable joint tortfeasor. [Bankr. Case D.I. 8582, ¶ 38] (citing Great Northern Ry. v. United States, 187 F.Supp. 690, 693 (D. Mont. 1960)). This caselaw has been superseded by Montana's adoption of statutory comparative fault for multiple defendants. Mont. Code Ann. § 27-1-703 (1997). With contribution serving the purpose of allocating responsibility among parties who are at fault, indemnity is left as a remedy for a party that is not at fault. As recently stated by the Montana Supreme Court: "'Indemnity is an all-or-nothing proposition, representing in effect total contribution.'" Durden v. Hydro Flame Corp., 983 P.2d 943 (Mont. 1999) (quoting State, ex rel., Deere & Co. v. District Court of the Fifth Judicial District, 730 P.2d 396, 405 (Mont. 1986)(superseded by statute)).

evidence adduced and/or findings made in the State Litigation. [Adversary Case D.I. 359.] These factors do not suffice to confer jurisdiction.

Concerning indemnity, the Injunction Motion stated merely that allowing the State Litigation to proceed "could potentially subject the Debtors to additional indemnity claims." [Adversary Case D.I. 359, ¶ 18.][11] Neither Grace nor the State has anywhere alleged a contract between Grace and the State giving rise to an indemnity obligation. It is indisputable that at most, the State has a common law right of indemnity or contribution. As already described, the Third Circuit has ruled three times that a common law right of indemnity or contribution against a debtor that would arise from judgment in a litigation among non-debtors does not make the litigation "related to" the debtor's bankruptcy for purposes of establishing federal jurisdiction. Combustion Engineering, 391 F.3d at 232; Federal-Mogul, 300 F.3d at 382; Pacor, Inc., 743 F.2d at 994-95. Grace offered no argument to distinguish the instant matter from Pacor, Federal-Mogul, and Combustion Engineering. Indeed, no such distinction exists. The State Litigation is going forward against the State of Montana, not Grace. If the Libby Claimants obtain judgment against the State, then the State may recover against Grace only by successfully proving a claim in Grace's Chapter 11 case. In the contested matter relating to allowance of the State's claim, Grace will not be bound by any determination or order in the State Litigation.[12] As in Pacor, Federal-Mogul, and Combustion Engineering, the State's assertion that it has rights of indemnity or contribution against Grace does not confer jurisdiction to enjoin the State Litigation.

---

[11] Grace later pointed out that: "The Debtors do not concede that the State possesses a valid indemnification and/or contribution claim against them. The State, however, alleged such rights in its Third-Party Complaint and its filed proof of claim." [Adversary Case D.I. 359, ¶ 25.]

[12] Apart from the federal principles discussed above, Montana law prohibits the State from litigating or establishing a factual basis (i.e., percentage of comparative fault) against Grace for either contribution or indemnity during the course of the State Litigation. See generally Mont. Code Ann. § 27-1-703 (1997); Plumb v. Fourth Judicial Dist. Court, 927 P.2d 1011 (Mont. 1996) (entry of findings against a non-party violates substantive due process).

Dressing up the contribution/indemnity argument by referring to "record taint" cannot change this result. Grace's argument in the Injunction Motion that its own conduct is "in large part" at issue in the State Litigation [Adversary Case D.I. 359, ¶ 23,] does not distinguish this situation from Pacor and Federal-Mogul. In Federal-Mogul, the debtor's conduct was squarely at issue because the debtor had manufactured the brake pads that were the subject of the third-party litigation. Nevertheless, the bankruptcy court lacked jurisdiction over the target litigation. Federal-Mogul, 282 B.R. 301. In Pacor, too, the debtor's conduct was at issue in the third-party litigation, which concerned asbestos products manufactured by the debtor. The debtors in Pacor and Federal-Mogul faced the same detriment about which Grace professes concern: in the litigation among non-debtor parties, witnesses might say things about the debtor without the debtor being present to cross-examine. It follows *a fortiori* from Pacor, Federal-Mogul, and Combustion Engineering that—since even a judgment with adverse implications for the debtor is insufficient to establish bankruptcy jurisdiction over the target litigation—the less serious prospect that someone may say something bad about the debtor in the target litigation cannot confer jurisdiction.

Although even a well-founded concern about "record taint" cannot confer jurisdiction, Grace has failed to establish a valid basis for any such concerns in this case. While Grace points to a District Court decision in Johns-Manville noting that "[o]nce an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time," that observation is inapposite here. [Adversary Case D.I. 359, ¶ 29, (citing Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.), 40 B.R. 219, 225 (S.D.N.Y. 1984)).] Whatever admissions Grace is concerned about have already been made. The issue of Grace's conduct in Libby has been tried three times to verdict in Montana. [Adversary Case D.I. 363,

p.15] In addition to the numerous documents, photographs and other exhibits that were submitted to the courts during those trials, the plaintiffs introduced the testimony of dozens of miners along with the very damaging testimony of Earl Lovick, the assistant manager of the Libby Mine for nearly 30 years, and now deceased. [Id.] The evidentiary record of Grace's misconduct in Libby already exists. Indeed, the Montana Supreme Court has determined that the proof meets Montana's high standard for punitive damages, see Mont. Code Ann. § 27-1-221 (1997), and that Grace was found by a jury to have committed intentional, reckless and/or malicious conduct. Finstad v. W.R. Grace & Co., 8 P.3d 778 (Mont. 2000). The horse is out of the barn, and shutting the door would not help Grace even if the Bankruptcy Court had jurisdiction to do it.

The possibility of collateral estoppel, which Grace says would arise from the State Litigation **if Grace were to intervene therein** [Adversary Case D.I. 359, ¶ 31], affords no jurisdiction for the Bankruptcy Court's entry of an injunction. The Third Circuit has held that the parties' own proposed actions cannot confer jurisdiction even when in pursuit of the laudable goal of confirming a Chapter 11 plan. See Combustion Engineering, 391 F.3d at 228-30. See also Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject matter jurisdiction upon a federal court."); In re Resorts Int'l, Inc., 372 F.3d 154, 161 (3d Cir. 2004); Coffin v. Malvern Fed. Sav. Bank, 90 F.3d 851, 854 (3d Cir. 1996). Grace's threat of a self-inflicted wound if the Bankruptcy Court were to deny the requested injunction did not confer jurisdiction that the Bankruptcy Court otherwise lacked.

In sum, the factors advanced by Grace in the Injunction Motion—(1) potential indemnity or contribution claims, (2) the possibility (illusory in any event) of "record taint," or (3) the

prospect of collateral estoppel if Grace chooses to intervene in the State Litigation—fall far short

of the standards developed by extensive Third Circuit precedent to confer on the Bankruptcy

Court jurisdiction to enjoin the State Litigation. Accordingly, for the same reason that the courts

lacked jurisdiction in Pacor, Federal-Mogul and Combustion Engineering, the Bankruptcy Court

here did not have jurisdiction over the State Litigation. Its order must be reversed.

### III.    Even if the Bankruptcy Court Concluded Jurisdiction Existed to Enjoin the State Litigation, a Section 105 Injunction was Not Warranted

Even where a bankruptcy court has jurisdiction to enjoin actions between non-debtors,

the Bankruptcy Court is still constrained by the limits on such injunctions established under

federal law. The Supreme Court has established that, in considering a stay of any civil litigation,

federal courts must give paramount importance to the rights of the plaintiff. Clinton v. Jones,

520 U.S. 681, 707-08 (1997). This requirement does not disappear because the litigation is

related to a bankruptcy proceeding. Indeed, when the injunction of non-debtor litigation is in the

context of a Chapter 11 case, it is established that even if the bankruptcy court has jurisdiction, it

may enter the injunction only if the moving party demonstrates the existence of (i) unusual

circumstances warranting the injunction and (ii) the traditional prerequisites to issuance of an

injunction. See Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 761, 765 (5th Cir. 1995).

Grace failed to meet either requirement in support of its request to enjoin the State Litigation.

### A.    Section 105(a) and the "Unusual Circumstances" Requirement

Section 105(a) is intended to assure that bankruptcy courts may take whatever actions are

necessary or appropriate to further the purposes of the substantive provisions of the Code.

However, there are limits to the relief that a court may grant under Section 105. Combustion

Engineering, 391 F.3d at 236; In re Continental Airlines, 203 F.3d 203, 211 (3d Cir. 2000). As

the Third Circuit has stated, "Section 105 does not 'give the court power to create substantive

rights that would otherwise be unavailable under the Code.'" United States v. Pepperman, 976

F.2d 123, 131 (3d Cir. 1992) (quoting In re Morristown & Erie Railroad Co., 885 F.2d 98, 100

(3d Cir. 1989)); see also United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986). Courts

have indicated that the Section 105 power must be used sparingly and in extraordinarily limited

circumstances. University Med. Ctr. v. Am. Sterilizer Co. (In re Univ. Med. Ctr.), 82 B.R. 754,

757 (Bankr. E.D. Pa. 1988); see also Chase Manhattan Bank v. Third Eighty-Ninth Assoc. (In re

Third Eighty-Ninth Assoc., Inc.), 138 B.R. 144, 146 (S.D.N.Y. 1992). Section 105(a) in no

sense constitutes "'a roving commission to do equity.'" Combustion Engineering, 391 F.3d at

236 (quoting Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d

671, 680 (2d Cir. 2003)).

    Consistent with these principles and recognizing that a particularly high standard is

required to enjoin litigation between non-debtor parties, courts have held that "[i]f the

bankruptcy court does not determine that **unusual circumstances exist**, the court may not enter

an injunction of the third-party actions." Zale, 62 F.3d at 761 (emphasis added). Unusual

circumstances exist (1) when the non-debtor and the debtor enjoy such an identity of interests

that the suit against the non-debtor is essentially a suit against the debtor, and (2) when the third-

party action will have an adverse impact on the debtor's ability to reorganize. Id. See also 2

Collier on Bankruptcy ¶ 105.03[2][b][i][A] (15th Ed. 2002). An example of unusual

circumstances would be where the third party litigation consists of an action against directors or

officers of the debtor for acts within the scope of their corporate duties. A.H. Robins, Inc. v.

Piccinin (In re A.H. Robins Co.), 788 F.2d 994 (4th Cir. 1986). Even where the "unusual

circumstances" test has been met, the party seeking the injunction must also satisfy the

traditional four-part test for issuance of an injunction. Zale, 62 F.3d at 765.

1.    **Grace had the burden of demonstrating "unusual circumstances."**

Whenever a litigant proposes to stay litigation, the proponent bears the burden of establishing its need. Clinton, 520 U.S. at 708. This rule is no less true when seeking an injunction to protect the reorganization process. See Robbins v. Chase Manhattan Bank, N.A., 1994 U.S. Dist. LEXIS 5100 (W.D. Va. April 4, 1994) (party seeking Section 105 injunction must clearly establish entitlement to the relief sought). **Mere speculation about harm** to the reorganization process does not constitute the type of proof required to entitle debtors to an injunction against third party actions. Gray v. Hirsch, 230 B.R. 239, 243-44 (S.D.N.Y. 1999); Phar-Mor, Inc. Sec. Litig. v. Gen. Elec. Capital Corp. (In re Phar-Mor, Inc. Sec. Litig.), 166 B.R. 57, 62-63 (W.D. Pa. 1994); Dore & Assocs. Contracting, Inc. v. Am. Druggists' Ins. Co., 54 B.R. 353, 358 (Bankr. W.D. Wis. 1985).

2.    **Grace did not meet the first part of the "unusual circumstances" test, requiring that Grace demonstrate an identity of interest with the State.**

As discussed above,[13] it is undisputed that Grace bears no identity of interest to the State—as would be required to meet the first part of the "unusual circumstances" test. Obviously, the State is not a director, officer or other insider of Grace. The State is not an insurer of Grace. The State's role—conducting periodic inspections of the Libby Mine—did not align the State with Grace but made the State a potential adversary. The State Litigation is based upon the independent breach by the State of its own statutory duty to the Libby Claimants to disseminate the critical information derived from its inspections. Orr, 106 P.3d at 111.

The unusual circumstances exception does not apply where a third party codefendant has obligations that are "independent and primary, not derivative of those of the debtor." O'Malley

---

[13] See pp.17–18.

Lumber Co. v. Lockard (In re Lockard), 884 F.2d 1171, 1179 (9th Cir. 1989).  In Lockard, a

creditor of a building contractor commenced an action against the contractor's bonding company.

When the contractor subsequently filed a Chapter 11 petition, it sought to extend the automatic

stay to the action against the bonding company.  The debtor argued that there was such an

identity of interest between the debtor and the bonding company—in part because of the bonding

company's rights back against the debtor—that the action against the bonding company should

also be stayed.  The court in Lockard denied the injunction because a surety's obligations are

independent and primary, not derivative of those of the debtor.  Id. at 1179.  Other cases have

similarly found that independent and primary actions against third parties do not constitute

unusual circumstances, even where the plaintiff would have similar direct claims against the

debtor.  See, e.g., Oklahoma Federated Gold and Numistatics, Inc. v. Blodgett, 24 F.3d 136 (10th

Cir. 1994) (action against president of debtor for fraud not enjoined where claims were separate

and independent from claims against the debtor); In re Crazy Eddie Sec. Litig., 104 B.R. 582,

584 (E.D.N.Y. 1989) (except where the liability of the non-debtor defendants is automatically

imputed to the debtor by operation of law, an injunction staying actions against the non-debtor

defendants is not warranted).

> **3.** **Grace did not meet the second part of the "unusual circumstances" test, requiring that Grace demonstrate that the State Litigation will have an adverse effect on Grace's ability to reorganize.**

The Bankruptcy Court record does not reflect and Grace has not alleged that the parties to

the State Litigation will require any significant involvement by Grace personnel, much less a

level of participation that could have any effect on Grace's ability to reorganize.  The State

Litigation does not involve insurance policies of Grace and is not directed against Grace

personnel.  Discovery will impose no meaningful burden on Grace.  Grace has not alleged that

any of Grace's current managers were involved in the events that are the subject of the State Litigation; thus, depositions or testimony of Grace personnel are not required. Although the State may request production of documents from Grace,[14] it is undisputed that the Grace documents relevant to the State Litigation are housed at a repository in Boston, Massachusetts, set up to handle with ease all document requests against Grace. The documents are all on a database, and have in the past been made available for litigation parties including the Libby Claimants. If a keeper-of-records deposition is needed to authenticate documents, it could not possibly distract any key personnel of Grace from the reorganization effort. In sum, the State Litigation will have no effect on Grace's ability to reorganize.

Nowhere in the Bankruptcy Court record is there any basis for the Bankruptcy Court to determine that "unusual circumstances" are present. For this reason alone, the Order cannot be affirmed.

### B.    Grace did not satisfy the traditional equitable factors relevant to issuance of an injunction.

Even if Grace had been able to demonstrate "unusual circumstances," Grace was unable to (and did not) satisfy the other prerequisites to issuance of an injunction. Zale, 62 F.3d at 765 (Section 105(a) injunctions are also subject to the traditional rules for the issuance of an injunction); In re Eagle-Picher Indus., Inc., 963 F.2d 855, 858 (6th Cir. 1992); In re Commonwealth Oil Refining Co., 805 F.2d 1175, 1188-89 (5th Cir. 1986).

The four prerequisites to issuance of a preliminary injunction, as enunciated by the Third Circuit, are: (1) a substantial likelihood that the movant will prevail on the merits; (2) a

---

[14] The Libby Claimants' proof in the State Litigation regarding the Grace operations in Libby will be based upon exhibits and testimony obtained in pre-bankruptcy litigation with Grace. [Adversary Case D.I. 363, p.21] The Libby Claimants will not be serving discovery requests upon Grace for any State Litigation. [Id.] Moreover, the State has already been provided with access to all discovery obtained by the Libby Claimants from Grace and the Grace repository. [Id.]

substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) the extent to which the enjoined party would suffer irreparable harm if the preliminary injunction is issued; and (4) public interest. The Pitt News v. Fisher, 215 F.3d 354, 365-66 (3d Cir. 2000). The court should issue the injunction only if the movant demonstrates that all four factors favor granting the injunction. Id. at 365.

### 1.    The Likelihood of Success.

The likelihood-of-success arm of the preliminary injunction test measures the probability that the party seeking the injunction against other parties will ultimately succeed in its litigation against those parties. Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990). Since the ultimate objective of the Preliminary Injunction is a permanent injunction, Grace was required to establish that it will likely succeed in permanently enjoining the State Litigation. This is not only unlikely, it is prohibited by Section 524(g) of the Bankruptcy Code.

Section 524(g) of the Bankruptcy Code was enacted in 1994 to codify the manner in which asbestos personal-injury claims were resolved in the Johns-Manville bankruptcy case: establishing a trust to pay present and future asbestos claims, enjoining such claims from being asserted against the debtor, and discharging the debtor from such liabilities. See MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89 (2d Cir. 1988). Section 524(g) permits a "channeling injunction" whereby the liability of the debtor and certain third parties for asbestos claims against the debtor can be channeled so as to become the exclusive liability of the asbestos trust established under the plan. However, Section 524(g) does not apply to the State Litigation. The State Litigation does not seek to hold the State liable for claims against Grace but rather for the State's own independent torts, and the State does not fit within any of the four statutory causes of

liability from which a third party may be shielded under Section 524(g):

> (I)    the third party's ownership of a financial interest in the debtor, a past or present affiliate of the debtor, or a predecessor in interest of the debtor;

> (II)    the third party's involvement in the management of the debtor or a predecessor in interest of the debtor, or service as an officer, director or employee of the debtor or a related party;

> (III)    the third party's provision of insurance to the debtor or a related party; or

> (IV)    the third party's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the debtor or a related party, including but not limited to--

>> (aa)    involvement in providing financing (debt or equity), or advice to an entity involved in such a transaction; or

>> (bb)    acquiring or selling a financial interest in an entity as part of such a transaction.

11 U.S.C. § 524(g)(4)(A)(ii)(I)-(IV).

Since an injunction of the State Litigation is not authorized by Section 524(g), Grace had no likelihood of success in obtaining a permanent injunction against the State Litigation. This is so because the only other route to a permanent injunction against the State Litigation has been foreclosed by the Third Circuit's decision in Combustion Engineering, where the Court held that Section 105(a) cannot be "employed to extend a channeling injunction to non-debtors in an asbestos case where the requirements of [Section] 524(g) are not otherwise met." Combustion Engineering, 391 F.3d at 233-34. See also In re Lowenschuss, 67 F.3d 1394, 1402 (9th Cir. 1995) ("Section 105 does not authorize relief inconsistent with more specific law."); Zale, 62 F.3d at 760 ("A [Section] 105 injunction cannot alter another provision of the code.").

Accordingly, Grace had no likelihood of success in obtaining a permanent injunction of the State Litigation because such an injunction is barred as a matter of law.

### 2.    Irreparable Harm to the Estate.

The Bankruptcy Court record is devoid of any demonstration by Grace that a substantial threat of any significant harm, much less irreparable harm, if the State Litigation was not enjoined. Bearing in mind that Grace had the burden on each element of the test for issuance of an injunction, Grace was in no position to premise a determination of irreparable harm upon the possibility that the State will someday have a right of indemnification or contribution from Grace, given that Grace denied that any such rights exist. [Adversary Case D.I. 359, ¶ 25, n.12.] Moreover, since (as demonstrated above) **Grace would not be bound** by the judgment or any finding made in the State Litigation, any harm to Grace from the State Litigation is by definition not irreparable. Nor can a finding of irreparable harm be premised on the possibility of record taint, given that Grace did not even allege—much less established by credible evidence— specific facts indicating rational grounds to fear any new taint of the already-developed record of Grace's misconduct.[15]    In sum, the Bankruptcy Court record does not reflect that Grace met its burden of establishing a substantial threat of irreparable harm if the State Litigation was not enjoined.

---

[15] It is hard to imagine that a fear of "record taint"—which ultimately translates into a concern that witnesses under oath will tell the truth—is the kind of harm from which anyone deserves protection by means of an injunction. It is no exaggeration to observe that every day of the week in courts throughout the land, witnesses say bad things about non-parties without entitling those non-parties to an injunction.

### 3.    Irreparable Harm to the Libby Claimants.

The balance of harms, standing alone, precluded enjoining the State Litigation. For the Libby Claimants, the harm resulting from an injunction will be severe and continuing. Through the CARD Clinic in Libby, Montana, Dr. Alan C. Whitehouse and Dr. C. Brad Black have diagnosed approximately 1,500 patients with asbestos related disease due to exposure to Libby tremolite asbestos in or near Libby, Montana. [Adversary Case D.I. 363, p.24.] Since the CARD Clinic opened in 2000, physicians have had about 60 patients who have died of cancer or respiratory failure related to asbestos disease. [Adversary Case D.I. 363, Ex. O.] At least 34 of the Libby Claimants have died of asbestos disease since Grace filed for bankruptcy protection in 2001. [Adversary Case D.I. 363, Ex. Q.]

Many Libby Claimants participate in the Grace Libby Medical Program, which is voluntary and is not insurance. [Adversary Case D.I. 363, Ex. O.] There is no provision in Grace's proposed Chapter 11 plan to continue this health plan for Libby. Currently, the CARD Clinic has over 80 patients on oxygen, and about 100 patients severely limited, with limited life expectancy. [Id.] Most require 24-hour care. [Id.] However, the Grace Libby Medical Program does not offer 24-hour home care. [Id.] The Affidavit of Bonnie Fuller, who was caring for her husband Bob Fuller in end stage asbestos disease, shows that no amounts have been paid for 24 hour care by the Grace Libby Medical Program. [Adversary Case D.I. 363, Ex. F.] The Grace Libby Medical Program also does not pay for nursing home care. [Adversary Case D.I. 363, Ex. B and R.] The result has been to subject the Libby victims of asbestos disease and their families to enormous stress. For example, the affidavit of Betty Challinor states:

> I have taken care of aged parents, and have worked as an advocate for the aged
> for 15 years. But, I could never have imagined what taking care of my dear
> husband for the last six months of his life would be. It was extremely stressful,
> and I was close to a nervous breakdown. I have the greatest respect for anyone
> who provides this kind of 24 hour care.

[Adversary Case D.I. 363, Ex. B.]

By enjoining the State Litigation, the Libby Claimants will be unable to obtain

compensation in the tort system to cover end stage care, against a recognized wrongdoer, the

State of Montana. Since the effect of the State Litigation on Grace's reorganization is non-

existent, any fair balancing of harms favors the Libby Claimants.

### 4.    Public Interest

There is an important public interest in permitting injured persons to obtain the speediest

possible recovery, especially when the plaintiff is likely to die if the litigation drags on. See

Clinton, 520 U.S. at 708 (recognizing that the potential death of a party is a factor in determining

prejudice caused by a stay of litigation). Indeed, this is a matter of strong public interest in the

federal courts. The Federal Rules of Civil Procedure state that the rules "shall be construed and

administered to secure the just, speedy, and inexpensive determination of every action." Fed. R.

Civ. P. 1. While there is also a public interest in successful reorganization under Chapter 11, the

Bankruptcy Court record shows that Grace failed to establish any significant detriment to its

reorganization effort if the State Litigation continues to go forward as it has for the last four

years. It would be gratuitously cruel to make the Libby Claimants wait, in many cases in terrible

pain and without adequate medical coverage, for however many years it takes to sort out the

Grace reorganization. There is no public interest in permitting the State, a non-debtor party, to

hide behind the protections of the Bankruptcy Code.

## CONCLUSION

Based on the foregoing, the order of the Bankruptcy Court enjoining the State Litigation should be reversed.


Respectfully submitted this 2nd day of February 2006.

LIBBY CLAIMANTS

By their attorneys,

Adam G. Landis (No. 3407)
Kerri Mumford (No. 4186)
LANDIS RATH & COBB LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
(302) 467-4400

and

Daniel C. Cohn
Christopher M. Candon
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, MA 02110
(617) 951-2505

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF)<br>Adv. Proc. No. 01-771 |
| Debtors. | Jointly Administered |
| | |
| Libby Plaintiffs, | |
| Appellants, | C.A.06-00026-RLB |
| v. | |
| W.R. Grace & Co., *et al.*, | |
| Appellees. | |

## COMPENDIUM OF UNREPORTED OPINIONS

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Landis Rath & Cobb LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

Daniel C. Cohn
Christopher M. Candon
Cohn Whitesell & Goldberg LLP
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

Dated: February 2, 2006

## COMPENDIUM OF UNREPORTED OPINIONS

**Case**                                                                              **Exhibit No.**

Federal Ins. Co. v. W.R. Grace, et al., Civil Action Nos. 04-844 and 04-845;
Memorandum Opinion (D.Del. November 22, 2004 (Buckwalter, J.) ...................................... 1

Robbins v. Chase Manhattan Bank, N.A., 1994 U.S. Dist. LEXIS 5100
(W.D. Va. April 4, 1994) ............................................................................................................ 2

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

FEDERAL INSURANCE COMPANY  : CIVIL ACTION NO. 04-844

            Appellant,  :

    and  :

ROYAL INDEMNITY COMPANY  : CIVIL ACTION NO. 04-845

            Appellant,  :

      v.  :

W.R. GRACE, et. al.  :

           Appellees,  :

    and  :

OFFICIAL COMMITTEE OF ASBESTOS  :
PERSONAL INJURY CLAIMANTS  :

           Appellee.  :



FILED

NOV 2 4 2004

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**<u>MEMORANDUM</u>**

BUCKWALTER, S. J.                                    November 22, 2004

      Presently before the Court are Appellants'[1] Motion Appealing the Bankruptcy

Court's Order Appointing David Austern as Future Claimants' Representative, Appellee W.R.

Grace, et. al.'s (collectively "Debtors") Reply, Appellee Official Committee of Asbestos Personal

Injury Claimants' ("P.I. Committee") Reply, Appellants' Reply, Appellants' Motion to Strike the

Brief of P.I. Committee, P.I. Committee's Reply to Appellants' Motion to Strike and Appellants'

---

1. The Appellants are Federal Insurance Company and Royal Indemnity Company (collectively "Certain Insurers").

Reply to P.I. Committee's Reply.[2]  For the reasons set forth below, Appellants lack standing to appeal the Bankruptcy Court's Order appointing David Austern to the position of future claimants' representative.

## I.  FACTUAL AND PROCEDURAL HISTORY

On April 2, 2001, the Debtors filed for bankruptcy under Chapter 11 of the Bankruptcy Code.  The Debtors filed their initial motion asking the Bankruptcy Court to appoint a future claimants' representative pursuant to 11 U.S.C. §§ 105, 327 and 524(g)(4)(B) on October 13, 2003.  In this application, debtors sought the appointment of C. Judson Hamlin as future claimants' representative.  After objections were filed to the proposed appointment of Hamlin, the Debtors withdrew their application.

The Debtors filed a second motion for appointment of a future claimants' representative on April 19, 2004.  In this second motion, entitled Application of Debtors Pursuant to 11 U.S.C. §§ 105, 327 and 524(g)(4)(B)(i) For the Appointment of a Legal Representative for Future Asbestos Claimants (the "Motion"), the Debtors suggested three candidates for the position of future claimants' representative to the Bankruptcy Court.  In response to the Debtors' Motion, the Bankruptcy Court accepted responses and objections, including a statement from the United States Trustee for this District.  In the United States Trustee's statement to the Bankruptcy Court, she declined the request of certain parties, including Certain Insurers, to appoint the future claimants' representative explaining it was outside of her

---

2. On September 16, 2004, Certain Insurers filed the Motion to Strike the Brief of P.I. Committee.  Pursuant to Local Rule 7.12, the P.I. Committee had the opportunity to reply to Certain Insurers' Motion to Strike until September 30, 2004.  P.I. Committee filed a response on October 29, 2004, and Certain Insurers filed their Reply on November 5, 2004.  Despite the tardiness of P.I. Committee's Reply, the Court denies the Motion to Strike the Reply Brief of the P.I. Committee as Certain Insurers failed to show a basis for such action.

statutory authority. Further, the Trustee commented on the fitness of the three candidates suggested by Debtors in writing that "[n]othing in the Application or in the objections suggests that any of the candidates are representing interests in this or any other case that conflict with the interests of future claimants." (A.J.D.[3] at 5575).

The Bankruptcy Court held a hearing on the Motion on May 24, 2004. After listening to the arguments of the parties, including Certain Insurers, the Bankruptcy Court found David Austern "actually disinterested" and "no appearance" of conflict attached to him and appointed David Austern to the position of future claimants' representative pursuant to 11 U.S.C. §§ 105, 327 and 524(g)(4)(B). Further, the Bankruptcy Court defined Mr. Austern's constituency as future demand holders claiming exposure to asbestos and refused Certain Insurers' request to delay the appointment of the future claimants' representative until after the resolution of the litigation involving asymptomatics.

In this appeal, the Appellants have stated the issues as follows:

(1) Whether the Bankruptcy Court erred in relying upon the actual conflict of interest disqualification standard of 11 U.S.C. § 327 in appointing a legal representative for future claimants instead of applying an appearance of impropriety disqualification standard.

(2) Whether the Bankruptcy Court erred in appointing David Austern as legal representative for future claimants where (a) his "nomination" for the position by constituencies with conflicting interests creates an appearance

___

3. Amended Joint Designation of Items to be Included in the Record on Appeal and Statement of Issues of Appellants ("A.J.D.").

3

of impropriety; (b) his repeated employment as a legal representative for future claimants in multiple bankruptcies in a de facto system where conflicting constituencies are permitted to "nominate" their adversary's representative creates an appearance of impropriety.

(3) Whether the Bankruptcy Court erred in appointing a legal representative for future claimants without adequately and correctly instructing him at the outset (a) that his constituency includes, and he is the sole representative of, the potential future interests of asymptomatic individuals as "demand" holders; (b) that asymptomatics do no possess currently compensable "claims," and (c) that asymptomatics accordingly are not "creditors" entitled to vote on plans or reorganization.

## II.  JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over appeals from final judgments, orders and decrees from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a) and Federal Bankruptcy Rule of Procedure 8001.[4] The Court reviews the Bankruptcy Court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof.  In re Trans World Airlines, Inc., 145 F.3d 124, 131 (3d Cir. 1998).

---

4.  Because the Court denies this appeal for lack of standing, the Court will make no determination as to whether the Bankruptcy Court's Order is "final."

4

## III. DISCUSSION

### A.    STANDING

Appellate standing in bankruptcy has its roots in the Bankruptcy Act of 1898. Under § 39(c) of the Act of 1898, which was repealed in 1978, only a "person aggrieved" was permitted to appeal an order of the bankruptcy court. Travelers Insurance Co. v. H.K. Porter, Inc., 45 F.3d 737, 741 (3d Cir. 1995). The current incarnation of the Bankruptcy Code has no explicit restriction on appellate standing; however, courts, including the Third Circuit, have held the "person aggrieved" standard of the 1898 Bankruptcy Act to be applicable under the current Code. Id. (citing In re Fondiller, 707 F.2d 441, 443 (9th Cir. 1983)). Courts have retained this standard for prudential reasons as bankruptcy proceedings involve disputes in which numerous persons are interested and, thus, "efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected." Id. (quoting Fondiller, 707 F.2d at 443). Marginal parties, who are not directly affected by a bankruptcy court's order, have been denied standing even though the parties may have been exposed to potential harm related to the order. Id. (citing Kane v. Johns-Manville Corp., 843 F.2d 636, 642 n. 2 (2d Cir. 1988)).

The Third Circuit adopted the "person aggrieved" standard in the In re Dykes case. 10 F.3d 184 (3d Cir. 1993). In Dykes, the Third Circuit wrote that "litigants are persons aggrieved if the order diminishes their property, increases their burdens, or impairs their rights." Id. at 187 (quoting Fondiller, 707 F.2d at 443) (internal quotation marks omitted). As the Third Circuit explained in In re PWS Holding Corp., "only persons whose rights or interests are directly and adversely affected pecuniarily by an order of the bankruptcy court may bring an

5

appeal." <u>PWS</u>, 228 F.3d 224, 228 (3d Cir. 2000)(citing <u>Dykes</u>, 10 F.3d at 187)(internal quotation marks and citations omitted).

      In the instant case, Certain Insurers allege that they meet the "person aggrieved" standard because future claimants will attack the trust-injunction of the debtor due to procedural and conflict of interest problems with the Bankruptcy Court's appointment of the future claimants' representative. (Appellants' Reply Br. at 8). Further, Certain Insurers argue that all participants in the bankruptcy process should have standing to raise issues regarding the appropriateness of the appointment. (Appellants' Reply Br. at 9).

      As to Certain Insurers' first argument asserting that they meet the "person aggrieved" standard, we refer to <u>Travelers</u> for guidance in applying the appellate standing standard. <u>Travelers</u> involved the bankruptcy of H.K. Porter Company, Inc. ("H.K Porter"). During the bankruptcy, creditors filed asbestos-related property damage claims against H.K. Porter, but after learning of the limited assets in the bankruptcy estate, certain creditors withdrew their claims for financial reasons. When certain creditors later learned of H.K. Porter's insurance coverage, they moved to have their claims reinstated. The bankruptcy court allowed the certain creditors' claims to be reinstated but limited recovery to insurance proceeds. The insurance carrier, Travelers, appealed the order to the district court and then filed an appeal of the district court's decision to the Third Circuit. <u>Travelers</u>, 45 F.3d at 740-741.

      The Third Circuit held that Travelers lacked standing to appeal because Travelers' interest in the order of the bankruptcy court was too remote to meet the "person aggrieved" standard. <u>Id.</u> at 741. Explaining why Travelers' interest was too remote, the Third Circuit wrote that "Travelers potential exposure is double removed, turning on both the success of the

6

Claimants in their prosecution of claims against Porter, and on a judicial determination that the policy issued by Travelers covers the claims" Id. at 742. Because the Travelers' exposure was "double removed," the Third Circuit found Travelers' interest in the bankruptcy court's order was "too remote and contingent to satisfy the standing requirement of bankruptcy appeals." Id. at 741.

Under the aforementioned rationale, Certain Insurers lack appellate standing because their interest is too remote and contingent to satisfy the personally aggrieved requirement. Certain Insurers allege that if a lawsuit, which has not been filed, is filed by a future claimant, whom is presently unidentifiable, challenging a trust-injunction, which does not presently exist, and succeeds, which this Court believes is unlikely to happen, Certain Insurers' property would be diminished, their burdens increased and their rights impaired. In Travelers, because Travelers' exposure was "double removed," the Third Circuit ruled that Travelers did not meet the personally aggrieved standard as it was too contingent. Id. at 742. In the instant case, Certain Insurers' aggrievement is at least four times removed. First, a trust-injunction must be approved as part of a confirmation plan, which is not a formality because of the rigid approval requirements and inherent difficulties of the process. Second, a future claimant must experience a manifestation of his injury. Third, the future claimant must challenge the trust-injunction. Fourth, the future claimant must succeed in his lawsuit. As explained, Certain Insurers' exposure is at least four times removed and, therefore, too contingent to allow them appellate standing as neither of them qualify as a "person aggrieved."

Certain Insurers also argue that they have standing because all participants in the bankruptcy process should have the ability to raise issues regarding the appropriateness of the

7

appointment. (Appellants' Reply Br. at 9). Certain Insurers' argument seems more applicable to standing in bankruptcy court, a question which involves the term "parties in interest."[5]  As discussed above, the purpose of the appellate court "persons aggrieved" standard is prudential, to enable efficient judicial administration. Id. at 741 (citing Fondiller, 707 F.2d at 443). Allowing Certain Insurers standing for the reasons they articulated would be contrary to the purposes of the standard.

Finally, Certain Insurers assert third party standing on behalf of the future claimants. (Appellants Reply Br. at 9). In Storino v. Borough of Point Pleasant Beach, the Third Circuit set forth the following standard for third party standing: (1) the litigant has suffered an injury in fact giving him a sufficiently concrete interest in the outcome of the issue, (2) the litigant has a close relation to the third party, and (3) there exists some hindrance to the third party's ability to protect his own interest.  Storino, 322 F.3d 293, 299 (3d Cir. 2003)(citing Powers v. Ohio, 499 U.S. 400 (1991)).

The Court cannot afford Certain Insurers third party standing because they have not suffered an injury in fact. An injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 484-485 (3d Cir. 1998)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)). As discussed above, Certain Insurers' argument of alleged injury, the possibility that a future claimant may challenge a future trust-injunction for violations of process, is based on at least

---

5. Certain Insurers participated in the hearing before the Bankruptcy Court during which the future claimants' representative was appointed.

8

four contingencies. The injury in fact requirement demands an actual or imminent injury, not an injury as remote and contingent as put forth by Certain Insurers. Therefore, Certain Insurers do not meet the injury in fact requirement and cannot assert third party standing on behalf of future claimants.

In conclusion, for the reasons articulated above, Certain Insurers lack standing to appeal the Order of the Bankruptcy Court.

B.    APPEAL

Assuming the Appellants did have standing to appeal the Bankruptcy Court's Order, the Bankruptcy Court's appointment of David Austern would nevertheless be affirmed. A brief discussion of the relevant statutory framework follows.

In 1994, with the enactment of the Bankruptcy Reform Act of 1994, the trust-injunctions and related procedures developed by the courts in the bankruptcies of In re Johns-Manville Corp.[6] and In re UNR Industries, Inc.[7] were codified at 11 U.S.C. § 524(g). This new section, § 524(g), was added to the Code for handling "chapter 11 reorganization proceeding[s] with future personal injury claims against the debtor based on exposure to asbestos-containing products." H.R. REP. NO. 103-835, at 40 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340. In Chapter 11 asbestos cases, § 524(g) authorizes the appointment of a legal representative to "protect the rights of persons that might subsequently assert demands of such kind [future claims]." 11 U.S.C. § 524(g)(4)(B)(i) (2004). With respect to the legislative history of the

---

6. The case of In re Johns-Manville involves a multitude of decisions. The Court cites the following opinions from Johns-Manville in this decision: 36 B.R. 743 (Bank. S.D. N.Y. 1984); 52 B.R. 940 (S.D. N.Y. 1985).

7. Like Johns-Manville, In re UNR Industries, Inc. involves a number of decisions. In this opinion, the Court cites the following: 46 B.R. 671 (Bank. N.D. Ill. 1985); 71 B.R. 467 (Bank. N.D. Ill. 1987).

9

Bankruptcy Reform Act of 1994, specifically the reasons for the addition of § 524(g) to the

Bankruptcy Code, the House of Representatives Committee on the Judiciary wrote that § 524(g)

was included "to offer similar certitude to other asbestos trust-injunction mechanisms that meet

the same kind of high standards with respect to regard for the rights of claimants, present and

future, as displayed in the two pioneering cases [Johns-Manville and UNR Industries]." H.R.

REP. NO. 103-835, at 40 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340. The trust-injunctions of

Johns-Manville and UNR were the models for § 524(g), and this Court will review the cases for

guidance in the absence of explicit statutory instruction.

**B(1) The Bankruptcy Court applied the wrong conflict of interest disqualification standard under 11 U.S.C. § 524(g); however, the Bankruptcy Court did find David Austern "disinterested," which is the proper disqualification standard under § 524(g). Therefore, the appointment is affirmed.[8]**

In appointing David Austern to the position of future claimants' representative,

the Bankruptcy Court applied the conflict of interest disqualification standard of 11 U.S.C. § 327

to judge his eligibility. Certain Insurers argue that the Bankruptcy Court should have applied an

"appearance of impropriety" disqualification standard. (Appellants' Br. at 9).

Before the Court determines whether the Bankruptcy Court applied the correct

conflict of interest disqualification standard, the Court must first determine the proper

foundational statute, or statutes, for the appointment of the representative as the conflict of

interest disqualification standard is predicated on the foundational statute. Courts have differed

on what statute, or combination of statutes, constitutes the proper foundation for the

---

8. The Appellants frame this issue as "[w]hether the Bankruptcy Court erred in relying upon the actual conflict of interest disqualification standard of 11 U.S.C. § 327 in appointing a legal representative for future claimants instead of applying an appearance of impropriety disqualification standard." The Court will examine the Bankruptcy Court's application of the conflict of interest standard of § 327 de novo as it involves a legal determination. The Bankruptcy Court's finding of David Austern as "disinterested" will be reviewed for clear error.

10

appointment.  Some courts have used § 524(g) as the sole basis, while other courts, including the

Bankruptcy Court, have utilized § 327 or § 1103 to facilitate the appointment under § 524(g).[9]

Because the courts have utilized different predicates,  the courts have consequently applied

different conflict of interest disqualification standards in their appointments.  The reason for this

confusion among the courts is that 11 U.S.C. § 524(g) neither explicitly specifies the process for

appointing a future claimants' representative nor specifically provides standards for determining

who may serve as future claimants' representative.  As there is no explicit statutory guidance, we

look to the foundations for § 524(g), the UNR and Johns-Manville cases, for the proper

procedure for appointing the future claimants' representative.

---

9.   In re Armstrong World Industries, Inc., No. 00-4471 (Bank. Del. filed March 2, 2002) (Order Appointing Legal
Representative for Future Claimants)(bankruptcy court appointed legal representative pursuant to sections §§ 105,
524(g)(4)(B)(i) and 1109 of Chapter 11, endowed legal representative with standing under § 1109(b) and the power
and duties of a committee as set forth in § 1103 of the Code, allowed the future representative to employ
professionals consistent with §§ 105, 327, 524(g) and 1103 and authorized compensation of the future representative
pursuant to §§ 105(a) and 331).
    In re Federal-Mogul Global Inc., No. 01-10578 (Bank. Del. filed February 11, 2002) (Order Appointing Legal
Representative for Future Claimants)(bankruptcy court appointed legal representative as described in § 524(g),
afforded standing to future representative pursuant to § 1109(b) and powers and duties of a committee under § 1103,
authorized compensation pursuant to §§ 105(a) and 331 and allowed the future representative to employ
professionals consistent with §§ 105(a), 327 and 1103).
    In re Combustion Engineering, No. 03-10495 (Bank. Del. filed March 17, 2003) (Order Appointing Interim
Future Claimants' Representative)(bankruptcy court appointed representatives for persons described in § 524,
afforded the representative standing under section § 1109(b) and powers and duties of a committee under § 1103 and
authorized the representative to hire professionals consistent with §§ 327 and 1103).
    In re The Babcock & Wilcox Co., No. 00-10992 (Bank. E.D. La. filed October 4, 2000) (Order Authorizing
Employment of Young Conaway Stargatt & Taylor, LLP, as Counsel to the Legal Representative to Future Asbestos-
Related Claimants Nunc Pro Tunc to August 1, 2000 and Authorizing Debtors to Include Young Conaway Stargatt &
Taylor, LLP, in Interim Fee Reimbursement Procedure)(bankruptcy court appointed representative pursuant to §§
105, 327 and/or 1103 of the Bankruptcy Code and authorized compensation pursuant to §§ 105(a) and 331).
    In re Congoleum Corporation, et. al., No. 03-51524 (Bank. N.J. filed February 18, 2004) (Order Authorizing the
Appointment of R. Scott Williams as Future Representative)(bankruptcy court afforded future representative
standing under § 1109(b) and powers and duties of a committee under § 1103, authorized compensation pursuant to
§§ 330 and 331 and allowed future representative to hire professionals consistent with §§ 327 and 1103)((Order of
the bankruptcy court was affirmed by the district court)(In re Congoleum Corporation, et. al., No. 3:04-cv-01517)(D.
N.J. filed August 9, 2004)).

11

The bankruptcy court in UNR predicated its authority to appoint a legal representative for future claimants on its equitable powers, specifically citing §§ 105(a), 1102(a)(2), 1109(b), 1128(b), and 1129(a) of title 11 of the United States Code. UNR, 46 B.R. at 676. The court went on to delineate the powers of the legal representative explaining that "[w]ithin the restrictions noted above [the legal representative had to seek court approval before involving the future claimants in certain litigation], the Legal Representative shall exercise the powers and responsibilities of an official creditors' committee set forth in section 1103 of the Bankruptcy Code." Id. at 676. In establishing the procedures for selecting a legal representative, the court asked the U.S. Trustee or parties in interest to suggest a "disinterested" party to serve as the legal representative. Id. at 676.

The Johns-Manville case also provides instruction. In the order authorizing the use of a legal representative for future claimants, the court based its authority to appoint a legal representative on the equitable powers of 28 U.S.C. § 1481[10] and 11 U.S.C. § 105(a). Johns-Manville, 36 B.R. at 757. In another decision, which affirmed the bankruptcy court's appointment of the legal representative, the district court declared that the future claimants were parties in interest under § 1109(b) and afforded the representative the right to exercise the powers and duties of § 1103; however, the court cautioned that the representative was not a committee. Johns-Manville, 52 B.R. at 943.

Based on the UNR and Johns-Manville cases, the Court believes that a court should utilize the equitable powers of § 105(a) to facilitate the appointment of a legal representative for future claimants under § 524(g) and, because § 524(g) serves as the main

---

10. 28 U.S.C. § 1481 has been omitted under current law. 28 U.S.C.A. ch. 90 (2004).

12

predicate, incorporate the conflict of interest disqualification standard utilized by the UNR court. There is no need to employ § 1103(b), § 527 or any other section of the Bankruptcy Code, besides § 105(a), to effectuate § 524(g).

In addition to using the equitable powers of § 105(a), which is discussed below, the UNR and Johns-Manville courts utilized Bankruptcy Code sections such as §§ 1102(a)(2), 1103, 1109(b), 1128(b) and 1129(a) to authorize the appointment or to describe the duties of legal representative. None of these sections are necessary to effectuate § 524(g) as they served an illustrative function or have been incorporated into § 524(g). For example, the courts of UNR and Johns-Manville both compared the legal representative's powers and duties to those of a committee, specifically § 1103. The courts' comparison could lead one to believe that § 1103 should be utilized to effectuate § 524(g) and, therefore, § 1103's "adverse interest" disqualification standard would apply. However, § 1103 cannot be utilized because the Johns-Manville court cautioned that the legal representative was not a committee.

The Bankruptcy Court utilized § 327 to put § 524(g) into effect. The Court believes this action was incorrect for the following reasons. First, the courts of UNR and Johns-Manville neither employed nor mentioned § 327 when appointing their respective legal representatives. Second, because the basic idea of a legal representative for future claimants conflicts with the purposes of § 327, it cannot be used to facilitate the appointment. Section 327 authorizes the appointment of professionals by a trustee. 11 U.S.C. § 327 (2004). Pursuant to this section, a trustee must appoint professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327 (2004). This section cannot be utilized because it invokes the word "trustee." Under § 524, courts must appoint a future

13

claimants' representative, not a trustee. Further, the section cannot be employed as the conflict

of interest standard explicitly disallows appointment of those whom hold an interest adverse to

the estate. The future claimants' representative will, because of his constituents, have an inherent

interest against the estate. Some may argue that the Court could impose words, such as "court"

and "future claimants," to replace the conflicting words, but the Court does not believe such

actions are necessary.

        Courts should use § 105(a) to effectuate § 524(g). The courts of UNR and Johns-

Manville utilized their equitable powers under Bankruptcy Code § 105(a) to facilitate the

appointment of the legal representative for future claimants. Under § 105(a), courts may "issue

any order, process or judgment that is necessary or appropriate to carry out the provisions" of the

Bankruptcy Code. 11 U.S.C. § 105(a) (2004). Generally, courts tie their exercise of power under

§ 105 to another Bankruptcy Code section. 7 Collier on Bankruptcy ¶ 105.01(2)(15th ed. rev.

2003). Section 524(g) was enacted to codify the actions of UNR and Johns-Manville, which

some may view as rendering the use of § 105(a) unnecessary. The Court believes that the

equitable powers utilized by the UNR and Johns-Manville courts are still necessary to carry out

the provisions of § 524(g). The difference lies in that this Court uses §105(a) to effectuate a

specific section of the Bankruptcy Code, § 524(g), whereas the UNR and Johns-Manville courts

used § 105(a), in addition to the section's injunctive powers, to execute a newfound concept, a

legal representative for future claimants.

        As we have determined that § 524(g) is the main statutory predicate for appointing

the future claimants' representative, we look at the section for guidance on an applicable conflict

of interest disqualification standard, which again takes us to UNR. In its order authorizing the

14

use of a legal representative for future claimants, the UNR court asked the trustee or the parties

to suggest "disinterested" candidates. The term "disinterested" is defined in the Bankruptcy

Code at § 101(14).[11] As the UNR court employed this disqualification standard, this Court

believes that courts appointing future claimants' representative should do so as well in order to

maintain the "high standards" of UNR, which were referenced by Congress.

Although the Court finds that the Bankruptcy Court applied the wrong conflict of

interest disqualification standard, the Court is free to affirm the appointment of the future

claimants' representative on any basis which has sufficient support in the record. See Brown v.

Commonwealth Pa. Dep't of Health Emer. Med. Servs. Training Inst., 318 F.3d 473, 475 (3d Cir.

2002)(citing Bernitsky v. United States, 620 F.2d 948, 950 (3d. Cir. 1980)). In the Order

appointing David Austern as future claimants' representative, the Bankruptcy Court applied the

conflict of interest disqualification standard of § 327 and found that David T. Austern was

"actually disinterested" and that "no appearance" of conflict attached to him. Despite the

Bankruptcy Court's application of the wrong section of the Bankruptcy Code, it did find David

Austern to be "disinterested," which is the correct disqualification standard. Therefore, if this

Court rules that the Bankruptcy Court's finding of David Austern as "disinterested" was correct

11. "disinterested person" means person that—
(A) is not a creditor, an equity security holder, or an insider;
(B) is not and was not an investment banker for any outstanding security of the debtor;
(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;
(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason. 11 U.S.C. § 101(14)(2004).

under the applicable review standard, the Court's appointment of David Austern will be affirmed.

The Bankruptcy Court's ruling that David Austern was "disinterested" constitutes a finding of fact so the Court will review the Bankruptcy Court's finding for clear error. In Re Morrissey, 717 F.2d 100, 104 (3d Cir. 1983). Clear error is found if the appellate court is "left with the definite and firm conviction that a mistake has been committed" after reviewing the evidence. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985).

After reviewing the record of the Bankruptcy Court, this Court finds that there was no clear error in finding David Austern "disinterested." Concerning the candidates suggested by the Debtors, the U.S. Trustee commented that "[n]othing in the Application or in the objections suggests that any of the candidates are representing interests in this or in any other case that conflict with the interests of future claimants" and, further, "[n]or do the objectors identify any positions that the candidates have taken in the other cases that would restrict their ability to advocate zealously for the interests of future claimants in this case." (A.J.D. at 5545). Other evidence in the record confirms this finding. Therefore, we affirm the Bankruptcy Court's finding that David Austern was "disinterested."

In conclusion, the Court rules that the Bankruptcy Court did err in applying the conflict of interest disqualification standard of § 327 to its appointment of the future claimants' representative. However, because the Court rules that the Bankruptcy Court correctly found David Austern "disinterested," which is the applicable standard, the Court affirms the Bankruptcy Court's appointment of the future claimants' representative.

16

**(B)(2) The procedure employed by the Bankruptcy Court for appointing the future claimants' representative correctly mirrored the processes developed in <u>Johns-Manville</u> and <u>UNR</u>.[12]**

The Bankruptcy Court's procedures for appointing the future claimants' representative paralleled the processes of <u>Johns-Manville</u> and <u>UNR</u>; thus, it utilized the correct procedures for appointing the future claimants' representative. Certain Insurers assert that the Bankruptcy Court used an improper procedure in appointing the future claimants' representative because the Bankruptcy Court allowed the Debtor to suggest possible candidates and the Bankruptcy Court appointed the future claimants' representative. (Appellants' Br. at 13). Certain Insurers also posit that the system and David Austern are tainted by an appearance of impropriety. (Appellants' Br. at 13).

As referenced in the previous section, the Bankruptcy Code does not explicitly describe the procedure for appointing a legal representative for future claimants, but the <u>UNR</u> and <u>Johns-Manville</u> cases do provide guidance. An examination of the <u>UNR</u> and <u>Johns-Manville</u> cases reveals that those courts contemplated and allowed the participation of parties in interest in the process by asking the parties in interest for proposed future claimants' representatives or allowing the parties in interest to offer the motions for appointment of a legal representative. The court of <u>UNR</u>, 46 B.R. at 676, gave the U.S. Trustee 20 days to suggest a disinterested party

---

12. The Appellants frame this issue as:

> Whether the Bankruptcy Court erred in appointing David Austern as legal representative for future claimants where (a) his "nomination" for the position by constituencies with conflicting interests creates an appearance of impropriety; (b) his repeated employment as a legal representative for future claimants in multiple bankruptcies is a de facto system where conflicting constituencies are permitted to "nominate" their adversary's representative creates an appearance of impropriety.

The Court will examine for an abuse of discretion.

17

to be appointed as legal representative for future claimants, and if the U.S. Trustee declined to make a suggestion, the court wrote that it would entertain suggestions from the parties in interest and rule after notice and a hearing. UNR, the debtor, offered the motion for appointment of the legal representative. Id. at 672. The court approved UNR's Application for the Appointment of Legal Representative for Unknown Putative-Related Claimants and a legal representative was appointed by the court. UNR, 71 B.R. at 472. As for Johns-Manville, 52 B.R. at 941, a co-defendant of the debtor, Keene, filed the motion for appointment of a legal representative for future claimants.

UNR and Johns-Manville also show that the court should make the appointment of the future representative. In UNR, 71 B.R. at 472, the court appointed the legal representative for future claimants, not the Trustee. Similar to the UNR case, the court appointed the future claimants' representative in Johns-Manville, 52 B.R. at 942.

In this instant case, the Debtor filed a motion for appointment of a future claimants' representative. The U.S. Trustee refused a request by certain parties, including Certain Insurers, to make the appointment of the representative, and she refused to suggest candidates for the position. The Bankruptcy Court, after notice and oral argument, appointed one of the candidates suggested by the Debtors.

The Bankruptcy Court's handling of the appointment of future claimants' representative in the instant case paralleled the procedures of UNR and Johns-Manville. First, in UNR and Johns-Manville, the motion for appointment of a future claimants' representative was brought by the debtor or another party-in-interest, just as in the instant case, where the Debtors brought the motion. Second, in UNR, the court wrote that it would review suggestions from the

18

parties in interest in filling the role of legal representative if the U.S. Trustee failed to offer

candidates. In this case, the U.S. Trustee declined to suggest candidates in its statement to the

Bankruptcy Court so the Bankruptcy Court reviewed the candidates offered by the Debtors,

whom are parties in interest. Third, similar to the instant case, both the UNR and Johns-Manville

courts appointed the future claimants' representative. Because the Bankruptcy Court's

procedures mirrored the processes for proposing and appointing the legal representative

developed in UNR and Johns-Manville, the Bankruptcy Court used the correct procedures.

       Certain Insurers also assert that the system and David Austern are tainted by an

appearance of impropriety. This argument has no merit. First, as already discussed above, the

procedures employed by the Bankruptcy Court in appointing David Austern mirror those of UNR

and Johns-Manville, whose "high standards" were the model for § 524(g). See H.R. REP. NO.

103-835, at 40 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340. Second, as shown in the previous

section, the "appearance of impropriety" standard does not apply in the appointment of the future

claimants' representative.

       The procedure employed by the Bankruptcy Court for appointing the future

claimants' representative was similar to the processes of Johns-Manville and UNR. Therefore,

the Bankruptcy Court's appointment and process for making the appointment were correct.

**B(3) The Bankruptcy Court did not abuse its discretion in refusing to delay the
appointment of the future claimants' representative until after the resolution of the
litigation involving the asymptomatics' claims.[13]**

---

13. The Appellants frame this issue as:

> Whether the Bankruptcy Court erred in appointing a legal representative for future
> claimants without adequately and correctly instructing him at the outset (a) that his
> constituency includes, and he is the sole representative of, the potential future interests of
> (continued...)

19

The Bankruptcy Court did not abuse its discretion in refusing to delay the appointment of the future claimants' representative until after the parties litigated the issues involving asymptomatics. Section 524(g) does not explicitly provide an answer on when the future claimants' representative should be appointed. Based on the procedures adopted in UNR and the necessity of the future claimants' presence in the litigation involving asymptomatics, the Bankruptcy Court was correct in refusing to delay the appointment.

Certain Insurers argue that the Bankruptcy Court should have delayed the appointment of the future claimants' representative until after the litigation involving asymptomatics. (Appellants' Br. at 17). The Court disagrees. The Bankruptcy Court correctly declined to determine whether asymptomatics had compensable claims, among other issues involving the asymptomatics, before making the appointment of the future claimants' representative. In UNR, 46 B.R. 671, 676, the court faced this question and wrote:

> The determination of whether putative asbestos disease victims are creditors of these estates, or whether their interests could represented in these proceedings in a manner analogous to a class action, or whether these parties would be entitled to vote on a plan of reorganization, or whether their claims might be discharged in this bankruptcy proceeding, are all questions which can properly be address *after* putative asbestos disease victims commence actual participation in these cases.

As the UNR court explained, the issues involving asymptomatics should be litigated after a futures claimants representative is appointed. The Bankruptcy Court followed UNR's example.

---

13. (...continued) asymptomatic individuals as "demand" holders; (b) that asymptomatics do no possess currently compensable "claims," and (c) that asymptomatics accordingly are not "creditors" entitled to vote on plans or reorganization.

As this question pertains to judicial discretion, the Court will examine it on abuse of discretion standard.

In addition to correctly following the procedure of <u>UNR</u> in refusing to delay the appointment, the

Bankruptcy Court properly denied Certain Insurers request because the future claimants were

entitled to representation during the litigation involving asymptomatics as it affected their rights.

If the litigation would have progressed without the representation for future claimants, it is likely

that the results would not have been binding on the future claimants.

## IV.  CONCLUSION

For the foregoing reasons, Appellants' appeal of the Order of the Bankruptcy

Court appointing David Austern to the position of future claimants' representative is denied for

lack of standing.  An appropriate order follows.

**21**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

FEDERAL INSURANCE COMPANY      :      CIVIL ACTION NO. 04-844
                        Appellant,      :

                        and      :

ROYAL INDEMNITY COMPANY      :      CIVIL ACTION NO. 04-845
                        Appellant,      :

                   v.      :

W.R. GRACE, et. al.      :

                        Appellees,      :

                        and      :

OFFICIAL COMMITTEE OF ASBESTOS      :
PERSONAL INJURY CLAIMANTS      :

                        Appellee.      :

### ORDER

AND NOW, this **22** day of November, 2004, upon consideration of Appellants

Federal Insurance Company's and Royal Indemnity Company's Appeal of the Bankruptcy

Court's Order Appointing David Austern as future claimants' representative, it is hereby

**ORDERED** that Appellants' Appeal is **DENIED**.

BY THE COURT:

RONALD L. BUCKWALTER, S.J.

FILED

NOV 2 4 2004

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

# EXHIBIT 2

FOCUS – 12 of 20 DOCUMENTS

**WALTER C. ROBBINS, JR., Appellant v. THE CHASE MANHATTAN BANK, N.A.,**
**Appellee**

**CIVIL ACTION NO. 93–0063–H**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF**
**VIRGINIA, HARRISONBURG DIVISION**

*1994 U.S. Dist. LEXIS 5100*

**April 4, 1994, Decided**
**April 4, 1994, Filed**

**COUNSEL:** [*1] For WALTER C. **ROBBINS**, JR., Debtor, appellant: Howard J. Beck, Jr., GENTRY, LOCKE, RAKES & MOORE, ROANOKE, VA.

For THE **CHASE MANHATTAN BANK**, N.A., appellee: Richard E. Lear, HAZEL & THOMAS, WASHINGTON, DC.

**JUDGES:** MICHAEL, JR.

**OPINIONBY:** JAMES H. MICHAEL, JR.

**OPINION:**

MEMORANDUM

JUDGE JAMES H. MICHAEL, JR.

This matter appears before the court on appeal by the debtor in bankruptcy, Walter C. Robins, Jr., from the June 1, 1993 Decision and Order of the United States Bankruptcy Court, granting the motion of The Chase Manhattan Bank, N.A. ("Chase") for summary judgment. n1 Robins appeals the bankruptcy court's decision that Chase is entitled to judgment as a matter of law on Robins' claim for injunctive relief.

> n1 This appeal represents the parties' second appearance before this court, the first appeal, Civil Action No. 93–0001, having been decided by Memorandum Opinion and Order of August 2, 1993. In its August 2, 1993 Opinion, this court affirmed the finding of the bankruptcy judge that the debtor, Walter Robins, acted willfully and maliciously when he received rent distributions from Owlet World Limited Partnership ("OWLP"), in which Robins holds a 98 percent limited partnership interest, in violation of a lockbox agreement between OWLP and Chase. This court agreed with the bankruptcy judge that Robins had acted both

willfully and maliciously since the rents belonged to Chase.

[*2}

The court has jurisdiction over this appeal pursuant to *28 U.S.C. § 158*(a). After entertaining oral argument, the court finds the matter ripe for disposition. For the reasons indicated herein, the order of the bankruptcy court granting summary judgment on Count II of the complaint shall be affirmed.

I. FACTS

The historical facts underlying this appeal are undisputed and have been adequately narrated by the bankruptcy court below and by this court in the previous appeal between the parties. Accordingly, the court will provide only a brief summary of the pertinent facts.

The debtor, Walter C. Robins, owns a one percent general partnership interest and a 98 percent limited partnership interest in Outlet World Limited partnership ("OWLP") which owns the South Valley Shopping Center in Fairfax County, Virginia. In order to secure a portion of loans made by Chase, OWLP granted to Chase a second lien deed of trust on South Valley and assigned to Chase the rents therefrom. n2 Robins is a personal guarantor of the loans, and Chase holds a security interest in any proceeds of Robins' partnership interest in OWLP. pursuant to a workout agreement made by [*3] OLWP, Robins and Chase, OWLP agreed to deposit the South Valley rents in a lockbox controlled by Chase for Chase's distribution to OWLP creditors. The OWLP rents and loans defaulted prepetition, leading to Chase's withdrawal of the rents from the lockbox in order to service OWLP's debts.

> n2 OWLP assigned to Chase its rights to rents in South Valley to secure payment of $2.9 million in principal of the $8.3 million "Willingboro Loan"

made by Chase to Burlington Plaza Limited partnership ("BPLP"), in which Robins owns a controlling interest, and of a line of credit totalling $3.1 million granted to Walt Robins, Inc. ("WRI"). Massachusetts Mutual Life Insurance Company holds the first deed of trust on South Valley securing a note with a balance of $15 million.

## II. PROCEEDINGS BELOW

Following the filing of his Chapter 11 petition, Robins filed his complaint in the adversary proceeding, seeking injunctive and other relief against Chase pursuant to 11 U.S.C. § 105. n3 Robins [*4] argued below that if the stay provisions of § 362 would not operate to prevent Chase from withdrawing the rents, the court should nevertheless enjoin Chase from using the money where the rents would be used to further Robins' reorganization plan. Furthermore, Robins characterized Chase's actions as exerting a detrimental influence on his interests and those of the bankruptcy estate, sufficient to warrant extension of an injunction against a creditor proceeding against a non-debtor entity.

> n3 In Count I, Robins alleged that Chase violated the automatic stay provisions contained in 11 U.S.C. § 362(a)(3) when it withdrew the rents which Robins alleged constitute property of his individual bankruptcy estate. In Count III, Robins asked the court to declare void as post-petition transfers, pursuant to 11 U.S.C. §§ 549 and 550, the withdrawals from the lockbox.

The bankruptcy court disagreed with the debtor that the rents are property of the estate. Rather, the lockbox containing the rents constitute OWLP property, subject to Chase's lien which is enforceable by the separate contractual obligation owed by OWLP to Chase. Judge Krumm found that the debtor had failed to set forth specific facts establishing that the funds constitute OWLP profits, rather than rents assigned to Chase, or that Robins had an interest thereto. Robins' allegation that he needed the funds to reorganize was insufficient to demonstrate an entitlement to the rents ahead of Chase. Consequently, Judge Krumm granted summary judgment to Chase on Counts I and III, rejecting Robins' assertion that unusual circumstances exist to warrant extension of § 362 because of an identity of interest between OWLP and Robins and relying on Robins' inability to prove that the rents constitute property of the estate. Robins does not appeal herein the bankruptcy court's grant of summary judgment on Counts I and III.

[*5]

The court below granted Chase's motion for summary judgment, holding that Robins had failed to establish how his reorganization plan could succeed on the theory that he could use the rents which belonged to Chase under the parties' lockbox arrangement. Relying on A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1003 (4th Cir.), cert. denied, 479 U.S. 876, 93 L. Ed. 2d 177, 107 S. Ct. 251 (1986), Bankruptcy Judge Ross Krumm found that Robins had not alleged specific facts indicating that Chase's actions would adversely affect him and the bankruptcy estate in the absence of an injunction. In Piccinin, the Fourth Circuit held that the bankruptcy court may use its equitable powers under § 105 to safeguard the "integrity" of the estate by enjoining proceedings against a third party where "'failure to enjoin would effect [sic] the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through the third party.'" Id. (citing In re Otero Mills, Inc., 25 Bankr. 1018, 1020 (D.N.M. 1982)). Judge Krumm held that Robins had presented no specific facts of his entitlement to the rents ahead of Chase, [*6] rents which OWLP had assigned to Chase by separate contractual obligation. Finding that neither Robins nor the bankruptcy estate could be adversely affected in the absence of an injunction, the bankruptcy court granted Chase's motion for summary judgment.

Following the bankruptcy court's order, Robins moved to alter or amend the decision pursuant to Bankr.R. 9023 on the ground that the bankruptcy court had misconstrued his complaint as requesting the court to subordinate Chase's lien to the rents. Rather, Robins argued that he sought to enjoin Chase from withdrawing the rents pending a separate determination of Robins' entitlement thereto for reorganization. By Decision and Order dated June 14, 1993, the bankruptcy court denied Robins' motion without comment.

## III. DISCUSSION

The district court reviews the factual findings of the bankruptcy court for clear error and its conclusions of law de novo. Fed.Bankr.R. 8013; In re Morris Communications NC, Inc., 914 F.2d 458, 467 (4th Cir. 1990); Lowe's of Virginia, Inc. v. Thomas, 60 Bankr. 418, 419 (W.D. Va. 1986).

Summary judgment is appropriate if there are no genuine issues [*7] of material fact from which the non-moving party could prevail. Fed.R.Civ.P. 56(c). The moving party shoulders its burden by demonstrating an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The non-moving party must

then respond, by affidavit or otherwise, with specific facts showing a genuine issue for trial and cannot rest on the allegations contained in the pleadings alone. *Fed.R.Civ.P. 56(e)*. In deciding a motion, the court must draw all inferences in the light most favorable to the non-moving party. *Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)*.

Robins contends on appeal that factual disputes exist to preclude entry of summary judgment, arguing that the bankruptcy court misapplied the test articulated in Piccinin for determining the propriety of injunctive relief under § 105 against a creditor pursuing actions against a non-debtor third party. Robins also argues that the court below improperly required him to prove that he could use the rents in his reorganization plan and to establish that he was entitled to supplant Chase's **[*8]** lien. Instead, the debtor insists he need only and did allege that Chase's actions threatened his reorganization efforts aimed at developing a plan using the OWLP rents. Robins maintains that because his partnership interests in South Valley and the OWLP rents will form the bases of his reorganization plan, Chase's depletion of the rents adversely influences him and his reorganization efforts.

Section 105 of the bankruptcy code authorizes the bankruptcy court to issue orders necessary or appropriate to effectuate the provisions of the bankruptcy code. *11 U.S.C. § 105(a)*. In certain circumstances, an injunction may stay proceedings where there is a complete identity of interest between the debtor and non-debtor, when such proceedings will adversely impact the debtor's attempt to develop a reorganization plan and if the debtor's case meets the test for granting an injunction as articulated in *Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193 (4th Cir. 1977)*. See *In re A.H. Robins Co., 972 F.2d 77, 82 (4th Cir. 1992); In re F.T.L. Inc., 152 Bankr. 61 (Bankr. E.D. Va. 1993)*. **[*9]** Under Blackwelder, an injunction may issue only after consideration of four factors, namely: 1) the likelihood of irreparable harm to the plaintiff if the injunction does not issue; 2) the likelihood of harm to the defendant if the preliminary injunction does issue; 3) the substantial likelihood of success on the merits; and 4) the public interest. *550 F.2d at 193–96*.

The court acknowledges that the power to enjoin proceedings under § 105 is distinct from that available under the automatic stay provisions of § 362. See 2 Collier on Bankruptcy P 105.02 (15th ed. 1983). However, the court's power under § 105 is not "without bounds," *In re Johns-Manville Corp., 26 Bankr. 405, 415 (Bankr. S.D.N.Y. 1983)* (citations omitted), and the Fourth Circuit reminds this court that an injunction "'is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought.'" See

*Hughes Network Sys., Inc. v. Interdigital Communications Corp., No. 93–1751, 1994 WL 51931,* at *2 (4th Cir. Feb. 23, 1994) (citing *Federal Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 499 (4th Cir. 1981))*. **[*10]** Therefore, an injunction should not enter in the absence of the most unusual of circumstances. Because the question arises here on appeal from summary judgment, the court must determine whether, based upon the factual allegations raised by the debtor beyond those contained in his pleadings, a reasonable jury could find that Robins has alleged sufficient facts of irreparable harm and a likelihood of success to warrant the granting of an injunction.

Robins contends that he will suffer harm since, as both general partner and controlling limited partner of OWLP, he is inextricably intertwined with OWLP. The Johns-Manville court summarized that "in an appropriate case, where the proposed extension of the stay is designed to cover actions against entities that truly are inextricably interwoven with the debtor or which affect property of the debtor's estate, Section 105 may be used." *26 Bankr. at 418*. See also *In re Veeco Inv. Co., 157 Bankr. 452, 455 (Bankr. E.D.Mo. 1993)* (parties so "inexorably interwoven" that debtor is in fact the real party against whom creditor was proceeding). Furthermore, *Piccinin, supra,* **[*11]** would permit an injunction where the debtor demonstrates that the failure to enjoin a proceeding instituted against the non-debtor third party would adversely affect his estate and would allow the creditor to influence improperly the debtor through enforcement of a creditor's claim against the non-debtor where the debtor and non-debtor are associated in some way. See *788 F.2d at 1003* (adopting *Otero Mills, 25 Bankr. at 1020*). Undue influence against the debtor by a creditor may exist where the debtor is the real party in interest although the creditor is proceeding directly against the non-debtor. See *Johns-Manville, 26 Bankr. at 416*.

The debtor relies on *In re F.T.L., Inc., 152 Bankr. 61 (Bankr. E.D. Va. 1993)* in support of his argument that he will be irreparably harmed in the absence of an injunction. In F.T.L., the debtor moved for an injunction to prevent Crestar Bank from foreclosing on the personal residence of the debtor's major shareholders, the Lashes, who had guaranteed the debtor's loan from Crestar. *Id. at 62.* **[*12]** The court noted there that the Lashes held substantial equity in their residence and that following the filing of the petition, the debtor continued to make adequate protection payments to Crestar, indicating that the debtor was operating at a profit. Id. In its reorganization plan, the debtor maintained that to assist the reorganization process, the Lashes would contribute the equity in their house through a home equity loan, the commitment for which had been obtained from a creditor. Id.

The F.T.L. court acknowledged the interwoven identity theory by which the bankruptcy court can exercise its injunctive powers under § 105 if the Blackwelder factors are also satisfied. *Id. at 63* (referencing *Piccinin, supra; Willis v. Celotex Corp., 978 F.2d 146 (4th Cir. 1992); In re A.H. Robins Co., 972 F.2d 77 (4th Cir. 1992))*. Id. In support of an injunction, the court noted that Crestar's actions against the Lashes had stemmed directly from the debtor's obligation to Crestar, rather than from the Lashes' personal obligation. Further, the evidence showed [*13] that the debtor was operating at a profit and that the reorganization plan would likely be confirmed. Id. at 63–64. The facts also indicated that Crestar would incur little harm from a temporary injunction since the contribution by the Lashes of their equity would have the same effect as foreclosure on the personal residence. Concluding that the public interest would be served by the injunction, that the case presented unusual circumstances and that the Blackwelder four–part test was satisfied, the F.T.L. court granted the temporary injunction. Id. at 63–64.

The court finds the present case is distinguishable from F.T.L. First, OWLP has a direct contractual obligation to Chase under which Chase is the assignee of the South Valley rents. Thus, Chase's actions can be said to arise directly out of that obligation rather than solely from a guaranty situation. Furthermore, this court has before it no evidence that Robins is operating his businesses at a profit, aside from the allegation that the South Valley property generates an income. Finally, the only hope for confirmation of Robins' plan of reorganization is the debtor's assertion that he will use the South Valley [*14] rents. However, as the court has previously acknowledged, the rents cannot be used by Robins until OWLP's obligation to Chase is first satisfied.

The court does find that Robins and OWLP share an intertwined identity in light of Robins' status as general partner and controlling limited partner of OWLP. Reaching this conclusion, however, does not mandate a reversal of the grant of summary judgment because Robins must not only demonstrate facts of irreparable harm to him and the bankruptcy estate but must show a substantial likelihood of success on the merits. Although this court has acknowledged a sliding scale relationship between a showing of irreparable harm and the likelihood of success, the balance of harms must tip decidedly in Robins' favor to warrant the extraordinary relief prayed for in this case. See *Doe v. Shenandoah County Sch. Bd., 737 F. Supp. 913 (W.D. Va. 1990)*.

Chase maintains that Robins has not established specific facts showing that the failure to enjoin Chase from withdrawing the rents would adversely affect the estate. The bank argues that Robins would never be entitled to

use the South Valley rents in his reorganization [*15] plan because to do so would nullify Chase's agreement with OWLP. Consequently, Chase advances that its withdrawal of the rents cannot be said to influence the estate. n4

> n4 Relying on *RGI, Inc. v. Unified Indus., Inc., 963 F.2d 658, 661 (4th Cir. 1992)*, Chase suggests the court below correctly ruled that the Robins' affidavit, wherein Robins opines that Chase's use of the rents would threaten reorganization, contained only speculative and conclusory allegations, insufficient to overcome the motion for summary judgment. The court agrees.
>
> Robins attempts in his brief on appeal to speculate as to the success of the reorganization plan where Robins did not make such arguments to the court below. Robins' reorganization plan is not contained in the record, and the bald assertion that the rents are needed for the plan is insufficient to oppose successfully the motion for summary judgment.

The court recognizes that a failure to enjoin Chase's withdrawal of the rents from South Valley, the [*16] only "cash cow" property owned by the Robins' entities, could impede Robins' ability to develop his reorganization plan as he has alleged it. However, the only fact before the court is Robins' bald assertion that he plans to use the rents in his reorganization plan. Robins failed to include his plan in the record on appeal, and thus, there is no indication that Robins or the estate will be harmed other than through a depletion of the South Valley funds to which Robins has no immediate claim. Cf. *In re Apollo Molded Prods., Inc., 83 Bankr. 189, 193 (Bankr. D.Mass. 1988)* (finding that the intent of debtor's principal to contribute personal funds to reorganization should not "necessarily have the talismanic effect of shielding him from suit on his personal obligations."). There are no facts specifying the harm which he or the estate will incur particularly where the bankruptcy court would have to overlook the independent contractual obligation which OWLP owes to Chase in order to enjoin Chase from withdrawing the rents. It is the debtor's failure to put before the court particular facts by which he would be entitled to injunctive relief which gives [*17] the court little pause in affirming the decision of the court below.

In addition to establishing irreparable harm, the debtor must make some demonstration, beyond the bald assertions contained in his complaint, that his reorganization plan will likely succeed. Robins himself stated that the linchpin for his reorganization plan is use of the rents, yet, he failed to produce for the record his proposed reorgani-

zation plan or adequate evidence that his plan will likely be confirmed. In any event, because the South Valley funds belong to Chase under the assignment of rents by OWLP, reorganization as Robins alleges it cannot succeed.

The court also believes, on the basis of the facts contained in the record before it, that the balance of harms does not clearly tip in Robins' favor in light of the harm to Chase should an injunction issue. At oral argument, counsel for Robins conceded that only South Valley is a "cash cow" property, producing adequate income to service Chase's debt, whereas the other properties, while allegedly income–producing, do not generate the income produced by South Valley. Thus, the harm to Chase is greater than Robins would have the court believe since to enjoin [*18] Chase would strip the bank of the private contract rights between it and OWLP. Robins failed to put before this court and the court below specific facts that Chase would not be harmed in the event of an injunction. Consequently, the court sees no basis for reversing the grant of summary judgment.

Significant at the hearing in the court below and in the appeal here is the debtor's failure to come equipped to do battle. The court has before it only general allegations of Robins' plan to reorganize but no copy of the reorganization plan itself containing specific facts for confirming the plan other than through use of the South Valley rents. The debtor also failed to produce evidence in the record below indicating how Chase would be adequately protected in the event an injunction did issue. On motion for summary judgment, it is the debtor's burden to come forward with more than the general assertions made in the pleadings. Here, the debtor cannot escape the conclusion that the bankruptcy estate has no valid claim to the rents until OWLP's obligations are satisfied. n5

> n5 Before Robins as a partner would receive distributions, the partnership's creditors must be paid. *Va. Code Ann. § 50–73.52.* Because OWLP's debt to Chase have matured, the rents will not constitute OWLP profits, or partner distributions, until the debts to Chase are paid.

**[*19]**

Furthermore, Robins has little chance of reorganizing as the rents constitute the only funds identified by Robins as providing him with a potentially successful reorganization. Neither has Robins demonstrated irreparable harm to his estate because the rents will not be available to Robins until OWLP's debts to Chase are satisfied. The court also finds that the harm to Chase by virtue of an injunction would not be insubstantial because, as counsel for Robins

conceded, the South Valley property constitutes the only "cash cow." Thus, the court cannot say that the balance tips decidedly in favor of the debtor, even if Robins and OWLP are inextricably interwoven.

Finally, public policy would not counsel in favor of an injunction here. The court finds compelling the statement of the court in *In re Venture Properties, Inc., 37 Bankr. 175, 177 (Bankr. D.N.H. 1984)* (quoted in *Apollo, supra, 83 Bankr. at 194*):

> "It has been a cardinal principle of bankruptcy law from the beginning that its effects do not normally benefit those who have not themselves 'come into' the bankruptcy court with their liabilities and all their **[*20]** assets. . . . To violate this principle on the appealing facts of a particular case, where no specific necessity for doing so is set forth, is simply to invite a wholesale restructuring of the expectations of those involved in commercial transactions without any indication from Congress that such a profound change was intended."

In the case at bar, the debtor failed to create a genuine issue, giving the bankruptcy court justification to exercise its extraordinary powers to assist OWLP, in the absence of specific facts, where OWLP has not sought its own protection behind the curtain of the automatic stay. Consequently, the cardinal principle must be observed.

Whether in granting summary judgment the bankruptcy court conducted a mini-hearing on the merits of the preliminary injunction or simply reviewed the motion for summary judgment, it is evident to this court that an injunction, in any event, would not be appropriate for the reasons previously indicated. Injunctive relief is not to be granted too readily, and the court below did not err in requiring Robins to meet his burden of showing specific facts to create a triable issue as to the propriety of injunctive relief. Accordingly, **[*21]** the court finds no error in the conclusion of the bankruptcy court to grant summary judgment in favor of Chase on Count II of the debtor's complaint. An appropriate order shall this day issue.

ENTERED: James H. Michael, Jr.

Judge

April 4, 1994

Date

ORDER – April 4, 1994, Filed

JUDGE JAMES H. MICHAEL, JR.

1994 U.S. Dist. LEXIS 5100, *21

For the reasons stated in the accompanying Memorandum Opinion, it is this day

ADJUDGED AND ORDERED

as follows:

1. The Order of the United States Bankruptcy Court entered June 1, 1993, granting the motion for summary judgment as to Count II of the complaint, shall be, and it hereby is, affirmed.

2. This case shall be, and it hereby is, dismissed and stricken from the docket of the court.

The Clerk of the Court is hereby directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record and to the Honorable Ross W. Krumm, United States Bankruptcy Judge.

ENTERED: James H. Michael, Jr.

Judge

April 4, 1994

Date

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Adv. Proc. No. 01-771 |
| | Jointly Administered |
| Libby Plaintiffs, | |
| Appellants, | C.A.06-00026-RLB |
| v. | |
| W.R. Grace & Co., *et al.*, | |
| Appellees. | |

**AFFIDAVIT OF SERVICE**

I hereby certify that on February 2, 2006, I electronically filed the Brief of Defendants-Appellants using CM/ECF. I hereby certify that on February 2, 2006, I caused to be served via hand delivery the documents to the following non-registered participants:

**Debtors**

Laura Davis Jones, Esquire
James E. O'Neill, III, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub
919 Market Street, 17th Floor
Wilmington, DE 19801

**Official Committee of Unsecured Creditors**

Michael R. Lastowski, Esquire
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Teresa K.D. Currier, Esquire
KLETT ROONEY LIEBER & SCHORLING
1000 West Street, Suite 1410
Wilmington, DE 19801

**U.S. Trustee**

Frank J. Perch, Esquire
OFFICE OF THE UNITED STATES TRUSTEE
844 N. King Street
Wilmington, DE 19801

**DIP Lender**

Steven Yoder, Esquire
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

**Maryland Casualty Company**

Mark J. Phillips, Esquire
Jeffrey Wisler, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
Wilmington, DE 19801

**The Scotts Co.**

Daniel Butz, Esquire
Gregory Donilon, Esquire
MORRIS NICHOLS ARSHT & TUNNELL
1201 N. Market Street
Wilmington, DE 19801

**Lanier Law Firm Asbestos Claimants**

Bernard Conaway, Esquire
FOX ROTHSCHILD LLP
919 Market Street, Suite 1300
Wilmington, DE 19801

**Gamma Holding, NV**

David E. Wilks, Esquire
BUCHANAN INGERSOLL PC
1007 N. Orange Street, Suite 1100
Wilmington, DE 19801

**Carol Gerard**

Steven Kortanek, Esquire
KLEHR HARRISON HARVEY
BRANZBURG & ELLER
919 Market Street, Suite 1000
Wilmington, DE 19801

**The Chase Manhattan Bank**

Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
RICHARDS LAYTON & FINGER PA
One Rodney Square
Wilmington, DE 19801

**Property Damage Claimants**

Michael B. Joseph, Esquire
FERRY JOSEPH & PEARCE PA
824 N. Market Street, Suite 904
Wilmington, DE 19801

**Continental Casualty**

Herbert Mondros, Esquire
Kevin Gross, Esquire
ROSENTHAL MONHAIT GROSS & GODDESS
919 Market Street, Suite 1401
Wilmington, DE 19801

**Exxon/Mobile**

William E. Chipman, Jr., Esquire
GREENBERG TRAURIG LLP
1007 N. Orange Street, Suite 1200
Wilmington, DE 19801

**Allen Plaintiffs**

Kathleen M. Miller, Esquire
SMITH, KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
Wilmington, DE 19801

**James and Julie Holland**

Thomas D. Walsh, Esquire
MCCARTER & ENGLISH LLP
919 Market Street, Suite 1800
Wilmington, DE 19801

**State of Montana**

Kevin J. Mangan, Esquire
MONZACK AND MONACO PA
1201 Orange Street, Suite 400
Wilmington, DE 19801

**Official Committee of Personal Injury Claimants**

Marla R. Eskin, Esquire
CAMPBELL & LEVINE
800 King Street, Suite 300
Wilmington, DE 19801

I hereby certify that on February 2, 2006, I caused to be mailed by the United States

Postal Service, the documents to the following non-registered participants:

**Debtors**

David M. Bernick, PC
Janet S. Baer, Esquire
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601

**Official Committee of Personal Injury Claimants**

Peter Van N. Lockwood, Esquire
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW
Washington, DC 20005

**Official Committee of Property Damage Claimants**

Scott L. Baena, Esquire
Richard M. Dunn, Esquire
BILXIN SUMBERG DUNN BAENA
PRICE & AXELROD
2500 First Union Financial Center
200 South Biscayne Blvd.
Miami, FL 22131-2236

**W.R. Grace & Co.**

David B. Siegel
W.R. GRACE AND CO.
7500 Grace Drive
Columbia, MD 21044

**Official Committee of Unsecured Creditors**

Lewis Kruger, Esquire
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038

**Official Committee of Equity Holders**
Philip Bentley, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036

**Official Committee of Unsecured Creditors**

William S. Katchen, Esquire
DUANE MORRIS LLP
744 Broad Street, Suite 1200
Newark, NJ 07102-3889

**Maryland Casualty Company**

Edward J. Longosz, II, Esquire
Laura G. Stover, Esquire
ECKERT SEAMANS CHERIN &
MELLOTT LLC
1747 Pennsylvania Avenue, N.W. Suite 1200
Washington, DC 20006

**The Scotts Co.**

Robert J. Sidman, Esquire
Tiffany S. Cobb, Esquire
VORYS, SATER, SEYMOUR & PEASE
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

**Libby Plaintiffs**

Daniel C. Cohn, Esquire
COHN WHITESELL& GOLDBERG LLP
101 Arch Street
Boston, MA 02110

**Royal**

Carl Pennicone, Esquire
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
150 East 42nd Street
New York, NY 10017-5639

**DIP Lender**

J. Douglas Bacon, Esquire
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606

**Official Committee of Asbestos Personal Injury Claimants**

Elihu Inselbuch, Esquire
Rita Tobin, Esquire
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500

**National Medical Care, Inc.**

David S. Rosenbloom, Esquire
MCDERMOTT, WILL & EMERY
227 West Monroe Street
Chicago, IL 60606-5096

**Continental Casualty**

Elizabeth deCristofaro, Esquire
FORD MARRIN ESPOSITO WITMEYER &
GLESER LP
Wall Street Plaza, 23rd Floor
New York, NY 10005-1875

**State of Michigan, Department of Corrections**

David K. Foust, Esquire
3030 W. Grand Boulevard
10th Floor, Suite 200
Detroit, MI 48202

**Carol Gerard**

Brian Parker, Esquire
36 South Charles Street, Suite 2200
Baltimore, MD 21201


Gary Smolker
Alice Smolker
4720 Lincoln Blvd, Suite 280
Marina Del Rey, CA 90292-6977


Dated: February 2, 2006

**Keri Evans**

Michael S. Etkin, Esquire
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, NJ 07068

**David T. Austern**

John C. Phillips, Jr. Esquire
Phillips Goldman & Spence PA
1200 North Broom Street
Wilmington, DE 19806

**LANDIS RATH & COBB LLP**

Kerri K. Mumford (No. 4186)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450


Counsel for the Libby Claimants