## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF) |
| Debtors. | Adv. Proc. No. 01-771 |
| | Jointly Administered |

| | |
|---|---|
| Libby Claimants, | |
| Appellants, | C.A.06-00026-RLB |
| v. | |
| W.R. Grace & Co., *et al.*, | RE: D.I. 9, 13 |
| Appellees. | |

## LIBBY CLAIMANTS' RESPONSE TO
## DEBTORS' MOTION TO DISMISS APPEAL

Claimants injured by exposure to tremolite asbestos from Grace's operations in and near

Libby, Montana (the "Libby Claimants"),[1] hereby respond to the Debtors' Motion to Dismiss

Appeal dated January 30, 2006 (the "Motion to Dismiss"). Pursuant to the Motion to Dismiss,

Grace seeks the dismissal of the Libby Claimants' appeal from an order of the Bankruptcy Court

enjoining them from prosecuting their tort claims against the State of Montana (the "State") in

the Montana District Courts for Lincoln, Cascade, and Lewis and Clark Counties (the "State

Litigation") while the Bankruptcy Court takes under advisement the Debtors' Motion to Expand

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis
Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Bankr. Case D.I. 11624] filed in the bankruptcy case (Case
No. 01-01139 (JFK)), as it may be amended and restated from time to time.

the Preliminary Injunction to Include Actions Against the State of Montana (the "Injunction Motion"). [Adversary Case D.I. 359.][2]  The Motion to Dismiss should be denied because the Bankruptcy Court order is appealable to this Court as of right as a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).

## BACKGROUND

On April 2, 2001 (the "Petition Date"), Grace filed a petition for relief under Chapter 11 of the Code. In re W.R. Grace, et. al., Chapter 11 Case No. 01-01139 (JKF).  On the same date, Grace filed an adversary complaint seeking, *inter alia*, to preliminarily enjoin asbestos-related claims against insurers and other affiliates of Grace. [Adversary Case D.I.  359, ¶ 3.]  The Bankruptcy Court entered a temporary restraining order, followed by a preliminary injunction, and later a modified preliminary injunction, which remains in effect today (the "Preliminary Injunction"). [Adversary Case D.I. 87.]  As entered, the Preliminary Injunction indisputably does not bar the State Litigation, which was commenced by a series of complaints brought before and after the Petition Date.  [Adversary Case D.I. 363, p. 5.]  Until the filing of the Injunction Motion on August 22, 2005, the State Litigation proceeded uninterrupted by and without involvement of Grace.  [Id.]  On June 9, 2005, the State filed a motion seeking relief from the automatic stay (the "Stay Motion") "in order to name and liquidate claims against Grace" including claims for contribution or indemnity that the State claimed would arise from any judgment against the State in the State Litigation.  [Bankr. Case D.I. 8582, ¶ 18.]  The Stay Motion was opposed by Grace and the official committees of Asbestos Property Damage Claimants, Asbestos Personal Injury Claimants (the "PI Committee"), and General Unsecured Creditors appointed in the Grace case.

---

[2] Items designated by the Libby Claimants, the State, and Grace to be included in the record are from both the main bankruptcy case and the adversary proceeding.  Accordingly, cites to the record indicate whether the docket reference is from the main case "[Bankr. Case D.I. ___]" or the adversary proceeding "[Adversary Case D.I. ___]."

[Bankr. Case D.I. 8795, 8707, and 8708.] Each of the oppositions argued that the State failed to meet its burden to demonstrate why its claims should be liquidated now while other claimants remain subject to the automatic stay. [Id.] These oppositions, which are based on elementary and long-standing principles of bankruptcy law, had every expectation of success. But instead of pursuing the matter to its inevitable conclusion—denial of the Stay Motion—Grace shifted gears, put determination of the Stay Motion on hold, and filed the Injunction Motion seeking to expand the Preliminary Injunction to include the State Litigation. [Adversary Case D.I. 359.]

In the weeks after the filing of the Injunction Motion, the Libby Claimants, the State, and Grace agreed to stay all activity in the State Litigation until one day after the hearing on the Injunction Motion. In the meantime, on October 7, 2005, the Libby Claimants filed the Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana (the "Opposition"), arguing that (a) the Bankruptcy Court lacked subject matter jurisdiction to enjoin the Libby Claimants' separate and independent tort claims against the State because the State Litigation is not related to the Grace bankruptcy within the meaning of 28 U.S.C. § 1334(b), and (b) the Injunction Motion failed to establish grounds for entry of an injunction against independent third-party litigation under the stringent standards established by caselaw. [Adversary Case D.I. 363.] The PI Committee joined the Opposition by filing the Joinder of the Official Committee of Asbestos Personal Injury Claimants in the Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Case D.I. 365.] On October 14, 2005, Grace filed the Debtors' Reply in Support of Their Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Case D.I. 367.]

On December 19, 2005, the Bankruptcy Court held a hearing on the Injunction Motion (the "Hearing"). [Bankr. Case D.I. 11473.] At the conclusion of the Hearing, the Bankruptcy Court stated that it would take the Injunction Motion under advisement. [Bankr. Case D.I. 11473, p.199:21.] In response, the State asked the Bankruptcy Court to "stay the Libby Claimants from taking discovery or proceeding any further with the [State Litigation] until the [Bankruptcy] Court renders a decision on [the Injunction Motion]." [Bankr. Case D.I. 11473, pp.200:21-25 and 201:1-5.] The Bankruptcy Court indicated that it considered the extension of the stay appropriate and sought the Libby Claimants' agreement to such a stay. [Bankr. Case D.I. 11473, p.201:7-11.] Asked by the Libby Claimants for an indication of the time period to render a decision, the Bankruptcy Court suggested it could be more than a year. [Bankr. Case D.I. 11473, p.202:15-25.] Having previously entered into a voluntary stay in a separate matter not unlike the circumstance presented here,[3] the Libby Claimants informed the Bankruptcy Court that they would not assent to the stay. [Bankr. Case D.I. 11473, p.203:1-7.] The Bankruptcy Court then orally entered a stay [Bankr. Case D.I. 11473, p.203:8], followed by entry of a written order on January 17, 2006 (the "Order"). [Adversary Case D.I. 376.] In the meantime, on December 29, 2005, the Libby Claimants filed a Notice of Appeal of the December 19, 2005 ruling. [Adversary Case D.I. 373.] On January 19, 2006, the Libby Claimants filed an Amendment to Notice of Appeal, clarifying that the appeal was of the Order, which replaced and superseded the oral order announced in open court on December 19, 2005.[4] [Adversary Case

---

[3] In a similar contested proceeding concerning Grace's attempt to further expand the Preliminary Injunction to cover Montana Vermiculite Company, the Bankruptcy Court asked the Libby Claimants if they would continue a voluntary stay pending its ruling on Grace's motion. The Libby Claimants acceded to the Bankruptcy Court's request. The decision was not rendered until 10 months later. [Adversary Case D.I. 298 and 299.]

[4] Pursuant to Fed. R. Bankr. P. 8002(a), "a notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof."

D.I. 378.]

On January 30, 2006, Grace filed the Motion to Dismiss. On January 31, 2006, the State joined the Motion to Dismiss by filing the Joinder of the State of Montana in the Debtors' Motion to Dismiss Appeal. On February 7, 2006, Grace filed a reply (the "Reply") in support of its own motion—an innovation that, if nothing else, casts some doubt on the credibility of the procedural arguments whereby Grace attempts to torpedo this appeal.[5]

## ARGUMENT

The Motion to Dismiss should be denied because (a) the stay entered by the bankruptcy judge, no matter how characterized by her, constitutes a preliminary injunction because it has lasted longer than the maximum of 20 days permitted by Fed. R. Civ. P. 65(b), and (b) a preliminary injunction entered by a bankruptcy court is immediately reviewable by this Court pursuant to 28 U.S.C. § 1292(a)(1).

## I.    The Appeal is Properly Before this Court

Grace advances the astonishing argument that (a) a court may evade review of an injunction by calling it a temporary or interim stay, and (b) a preliminary injunction entered by a bankruptcy court—a non-article III court under the Constitution—may not be reviewed by this Court even though an identical stay, if entered by this Court, would be reviewable by the Court of Appeals. Since these propositions defy logic and self-evidently create the potential for abuse, it is not surprising that the applicable statutes and judicial decisions provide otherwise. As more specifically demonstrated below, the Order is reviewable as a preliminary injunction because,

---

[5] In the Reply, Grace accuses the Libby Claimants of "manipulating the briefing schedule to obscure the jurisdictional issues." Reply at pp. 1-2. While the rhetoric is unnecessary, the Libby Claimants give Grace the benefit of the doubt of not knowing that the Libby Claimants were directed by this Court to file its opening brief on February 2, 2006. The Libby Claimants also note that a response to the Motion to Dismiss was not due until February 9, 2006. At all times, the Libby Claimants were following the directives or rules of this Court.

whether or not intended as such by the Bankruptcy Court, it has continued beyond the time

permissible under Fed. R. Civ. P. 65(b) (as incorporated by Fed. R. Bankr. P. 7065). See

Sampson v. Murray, 415 U.S. 61, 86-88 (1974)(no matter how denominated by the court, a

restraining order that extends beyond the time permitted under Rule 65(b) acts as a preliminary

injunction and is reviewable as such); United Airlines, Inc. v. U.S. Bank N.A., 406 F.3d 918,

923-24 (7th Cir. 2005); Nutrasweet Co. v. Vit-Mar Enterprises, Inc., 112 F.3d 689, 692-94 (3d

Cir. 1997). And, as a preliminary injunction, the Order is appealable as of right to this Court.

See In re Prof'l Ins. Mgmt., 285 F.3d 268, 282 n.16 (3d Cir. 2002)(bankruptcy court orders

regarding injunctions are appealable as of right pursuant to 28 U.S.C. § 1292(a)(1)); In re

Reliance Acceptance Group, Inc., 235 B.R. 548, 553 (D. Del. 1999)(same).

## A.      The Order is a Preliminary Injunction

While the Bankruptcy Court stated that the Order was not intended to act as a temporary

restraining order, the Bankruptcy Court's characterization of the Order does not mitigate its

impact on the Libby Claimants and the State Litigation.  Pursuant to the terms of the Order:

> [P]ending the Court's ruling on the [Injunction Motion] . . ., the [State
> Litigation] and all other actions that have been or may be brought against
> the State that arise from alleged exposure to asbestos indirectly or directly
> caused by the Debtors shall be temporarily stayed, so as to preserve the
> status quo pending resolution [of the Injunction Motion].

Thus, the Order bars the Libby Claimants from pursuing the State Litigation no less effectively

than if the Bankruptcy Court had labeled the Order a temporary restraining order or, once the

maximum 20-day period for such an order had lapsed, a preliminary injunction.  The subjective

purpose of the Order—which, as indicated by the Bankruptcy Court, was to permit the Court to

have an indefinite period within which to rule on the merits of the Injunction Motion—does not

change its impact on the Libby Claimants, which is to deprive them of the remedy of the State

Litigation while they suffer and die without medical coverage for end-stage care.  Apparently without any sense of irony, Grace argues that the bankruptcy court should have "breathing room" to decide the merits of the Injunction Motion[6]—this while the Libby Claimants who are on oxygen struggle for each breath.

Grace's argument fails because the "breathing room" for a federal judge to decide the merits of an injunction request is limited by Fed. R. Civ. P. 65(b).  "[T]emporary restraining orders must expire by their own terms within 10 days after entry, 20 days if good cause is shown."  Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70, 415 U.S. 423, 433 (1974).  In so holding, the Supreme Court referred to the "important congressional policies reflected in the time limitations in Rule 65(b)."  Id. at 435.  As explained by the Court of Appeals for the Second Circuit:

> [Fed. R. Civ. P. 65(b)] contemplates that notice and hearing shall result in an appropriate adjudication, *i.e.* the issuance or denial of a preliminary injunction, not an extension of the temporary stay.
>
> The purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.  Such an order is necessarily limited to a very brief period because what may later prove to be a right of the party who is restrained is suspended before even a tentative adjudication as to that right has been had. . . .  It is because the remedy is so drastic and may have such adverse consequences that the authority to issue temporary restraining orders is carefully hedged in Rule 65(b) by protective provisions. And the most important of these protective provisions is the limitation on the time during which such an order can continue to be effective.

Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n., 306 F.2d 840, 842-43 (2d Cir. 1962).

A critical function of the strict time limits imposed by Rule 65(b) is to facilitate appellate review by assuring that a temporary retraining order, which is non-reviewable, will either be

---

[6] Reply at p. 4.

dissolved or converted into a preliminary injunction, which is subject to immediate appeal, within a maximum of 20 days. Thus, the Supreme Court has held that any temporary restraining order that continues beyond the time permissible in Fed. R. Civ. P. 65(b) should be construed as a preliminary injunction for purposes of the right of appeal. Sampson v. Murray, 415 U.S. 61, 86-88 (1974). In so holding, the Court observed that if a court "were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions, [the court] would have virtually unlimited authority over the parties in an injunctive proceeding." Id. at 86-87. Yet, that is precisely the scenario that Grace seeks to impose by the Motion to Dismiss.

Applying Sampson, the Third Circuit held in Nutrasweet Co. v. Vit-Mar Enterprises, Inc., 112 F.3d 689, 694 (3d Cir. 1997), that a district court's temporary restraining order that had remained in effect for 77 days at the time defendants filed their notice of appeal was the equivalent of a preliminary injunction, and thus subject to appellate review. The court explained:

> [T]emporary restraining orders . . . cannot be continued indefinitely without observance of the safeguards required for entry of a preliminary injunction and that temporary restraining orders of indefinite duration, whether or not issued with notice, are subject to appellate review. The most prevalent view is that a temporary restraining order, even if issued with notice, cannot be continued beyond the periods prescribed in Fed. R. Civ. P. 65(b) without being treated as the equivalent of a preliminary injunction and thus subject to appellate review.

Id. at 692. To like effect, the Seventh Circuit last year stated flatly:

> Temporary restraining orders that extend past 20 days are reviewable as preliminary injunctions, no matter what the rendering judge may have called them.

United Airlines, Inc. v. U.S. Bank N.A., 406 F.3d 918, 923 (7th Cir. 2005) (citing Sampson, 415 U.S. at 86-88).

The Order cannot be distinguished from a temporary restraining order, which has now extended beyond the time permissible under Fed. R. Civ. P. 65(b). As a result, the Order constitutes a preliminary injunction that was entered by the Bankruptcy Court without any basis whatsoever.

**B.      The Order Is Appealable As Of Right to this Court**

As an injunction, the Order is appealable by the Libby Claimants to this Court as of right pursuant to 28 U.S.C. § 1292(a)(1). Sections of Title 28 must be read together. See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992). Section 158(c)(2) makes Section 1292(a)(1) applicable to the appellate process described in Section 158(a)(3). This analysis of Sections 158(a)(3), 158(c)(2) and 1292(a)(1) has been adopted by district courts in this Circuit and approved by the Third Circuit Court of Appeals. See In re Prof'l Ins. Mgmt., 246 B.R. 47, 59 (D. N.J. 2000), vacated and remanded on other grounds, 285 F.3d 268 (3d Cir. 2002); In re Reliance Acceptance Group, Inc., 235 B.R. 548, 553 (D. Del. 1999); D'Avella, Jr. v. City of Newburgh (In re Bertoli), 1987 WL 8196, *4 (D. N.J. March 18, 1987); see also In re Prof'l Ins. Mgmt., 285 F.3d 268, 282 n.16 (3d Cir. 2002) (approval of District Court's analysis of appellate jurisdiction).

In Prof'l Ins. Mgmt., the district court concluded jurisdiction existed over the appeal pursuant to Sections 158(c)(2) and 1292(a)(1), without the need to resort to discretion to grant leave to appeal, because "an injunction, whether permanent or preliminary, is appealable." Prof'l Ins. Mgmt., 246 B.R. at 59. The Third Circuit explicitly approved the district court's analysis, explaining: "[W]e agree that the District Court, sitting as an appellate court, was authorized to hear the appeal from the Bankruptcy Court as an appealable injunctive order under 28 U.S.C. § 1292(a)(1) . . . ." Prof'l Ins. Mgmt., 285 F.3d at 282 n.16.

Likewise, this Court has also concluded that bankruptcy injunctions are appealable as of

right pursuant to 28 U.S.C. § 1292(a)(1).  Reliance Acceptance, 235 B.R. at 553.  In Reliance

Acceptance, which involved an appeal to this Court from a bankruptcy court's injunction, this

Court explained the interplay of the jurisdictional statutes:

> 28 U.S.C. § 158(a) governs the court's jurisdiction to review orders of the
> bankruptcy court.  It provides that district courts have jurisdiction to hear
> appeals "with leave of the court, from interlocutory orders and decrees, of
> bankruptcy judges entered in cases and proceedings referred to the
> bankruptcy judges under section 157 of this title."  Section 158(c)(2)
> provides that "[a]n appeal under subsection (a) ... of this section shall be
> taken in the same manner as appeals in civil proceedings generally are
> taken to the courts of appeals from the district courts...."
>
> 28 U.S.C. § 1292(a) governs appeals from the district courts to the courts
> of appeals and provides that a party has an appeal as of right to the court
> of appeals from a district court order granting a preliminary injunction.
> Carson v. American Brands, Inc., 450 U.S. 79 (1981).  Cf. 11 Wright &
> Miller, Federal Practice and Procedure § 3923 ("An order that prohibits a
> party from pursuing litigation in another court is unquestionably an
> injunction for purposes of interlocutory appeal under 28 U.S.C. §
> 1292(a)(1).").
>
> Consequently, the court looks to sections 158(c)(2) and 1292(a) to find the
> defendants have a right to appeal to this court at this time the Bankruptcy
> Court's preliminary injunction order.

Reliance Acceptance, 235 B.R. at 553.  Similar analysis was employed by the district court in

D'Avella case.  D'Avella, 1987 WL 8196, *4.  In that case, the court found that an appeal from a

bankruptcy preliminary injunction was subject to an immediate appeal.  Id.  Looking to Sections

158(a), 158(c), and 1292(a)(1), the court concluded that an appeal of an injunction is "an appeal

of right and that the court is duty bound to hear and decide the issues presented."  Id.  See also

Carol Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.), Civil Action No. 02-1549:

Memorandum Opinion, pp. 1-2 (D. Del. July 16, 2003) (Wolin, J.)[7] ("the court has jurisdiction

---

[7] [Adversary Case No. D.I. 154.]

over this case pursuant to 28 U.S.C. § 1292(a)(1) in the exercise of its jurisdiction over interlocutory orders with respect to injunctions."),[8] vacated by 115 Fed.Appx. 565 (3d Cir. 2004).

Courts outside of the Third Circuit have similarly concluded that bankruptcy court orders regarding injunctions are appealable as of right. See Official Comm. of Unsecured Creditors of Indust. Ceramics, Inc. v. Indus. Ceramics. Inc., 252 B.R. 296, 301-02 (W.D.N.Y. 2000) (recognizing that preliminary injunctions issued by bankruptcy court are appealable as of right to district court, but finding that order on appeal was not an injunction); La Habra Products, Inc. v. Patio Indus. (In re Patio Indus.), 220 B.R. 672, 676 (C.D. Cal. 1996) (granting appeal as of right under section 1292(a)(1) for review of bankruptcy court injunction); Internal Revenue Serv. v. Ernst & Young, Inc. (In re Petition of Ernst & Young, Inc.), 135 B.R. 517, 520-21 (S.D. Ohio 1991) ("the application of Section 1292(a) to bankruptcy [cases] makes bankruptcy injunctions appealable" as of right). See also Sarah R. Neuman Found., Inc. v. Garrity (In re Neuman), 81 B.R. 796, 801-02 and n.5 (S.D.N.Y. 1998) (permitting appeal from bankruptcy court injunction).

Injunctions issued by bankruptcy courts are no different from injunctions issued by district courts; both can be equally serious, with irreparable consequences. Moreover, "[a]s a policy matter, the rulings of a non-Article III bankruptcy court should not be more insulated from appellate review than the rulings of an Article III district court." Clark v. Sanders (In re Reserve Prod., Inc.) 190 B.R. 287, 290 (E.D. Tex. 1995) Accordingly, just as the district courts in Prof'l Ins. Mgmt., Reliance Acceptance, and D'Avella, Jr. and courts outside of the Third Circuit have

---

[8] Ironically, in Gerard (an appeal originating out of the same bankruptcy adversary proceeding as this appeal, raising similar jurisdictional issues, in which both Grace and the Libby Claimants participated), Grace argued in its brief before this Court that 28 U.S.C. § 1292(a)(1) provided the district court with jurisdiction of appeals concerning bankruptcy court injunctions. Gerard, Civil Action No. 02-1549: Brief of Appellees. The district court agreed. Gerard, Civil Action No. 02-1549: Memorandum Opinion, pp. 1-2.

found that bankruptcy court orders regarding injunctions are appealable as of right, this Court should similarly conclude that the Order is appealable as of right.

In sum, the Order constitutes a preliminary injunction that is immediately appealable to this Court pursuant to 28 U.S.C. § 1292(a)(1). [9] The appeal is properly before this Court, and the Motion to Dismiss should be denied.

## C.    Grace's Other Arguments are Unavailing

### 1.    The Order is Not a Stay that Merely Preserves the Status Quo

Grace is incorrect in stating that the Order "merely orders a stay to preserve the status quo while the Bankruptcy Court considered the merits of the [Injunction] Motion." Motion to Dismiss at p. 4. The "status quo" of the case is not a stay of the State Litigation. Except for the September 2005 agreement among the parties for a short voluntary stay in order to permit full briefing of the Injunction Motion, the State Litigation has been proceeding for more than four years uninterrupted by and without involvement of Grace. Having finally prevailed in the Montana Supreme Court as to the existence of a cause of action against the State, Orr v. State of Montana, 106 P.3d 100 (Mont. 2004), the Libby Claimants have been deprived by the Order of the ability to complete the State Litigation by going to trial against the State. The damage to the Libby Claimants of being deprived of coverage for end-stage care is severe, not mere, and represents a drastic change in the status quo.

### 2.    The Cases Cited By Grace Are Inapposite

The cases cited by Grace in support of dismissal are inapposite. While Grace argues in its Reply that 28 U.S.C. § 1292(a)(1) does not apply to appeals to the district court from

---

[9] Alternatively, to the extent that this Court determines that the Order is an interlocutory order that requires a motion for leave to appeal under 28 U.S.C. 158(a), the Libby Claimants request that the Court deem the notice of appeal as a motion for leave to appeal pursuant to Fed. R. Bankr. P. 8003(c) and consider this appeal.

bankruptcy court injunctions, none of the cases cited by Grace[10] support a change in this Circuit's jurisprudence. In the Third Circuit cases cited by Grace, the Court of Appeals merely recited the jurisdictional history (as most decisions do), but did not address the situation presented here—an appeal of a bankruptcy court injunction to the district court. Indeed, as noted above (pp. 9-10), the courts in the Third Circuit that have faced such a scenario have consistently concluded that such injunctions are appealable as of right to the district court. See Prof'l Ins. Mgmt., 246 B.R. at 59, vacated and remanded on other grounds, 285 F.3d 268 (3d Cir. 2002); Reliance Acceptance, 235 B.R. at 553; D'Avella, Jr., 1987 WL 8196, *4; see also In re Prof'l Ins. Mgmt., 285 F.3d 268, 282 n.16 (3d Cir. 2002) (approval of District Court's analysis of appellate jurisdiction). Notwithstanding, Grace's assertion otherwise, the Third Circuit's recital of jurisdiction in non-analogous cases does not represent a long line of Third Circuit cases that the Libby Claimants are asking this Court to reject. The only cases Grace cites that support its position are district court decisions from the Second Circuit that directly contravene the established precedent in this Circuit represented by the Prof'l Ins. Mgmt., Reliance Acceptance, and D'Avella decisions.

In addition, Grace's string cites analyzing stays under 28 U.S.C. § 1291 (governing appeals of final decisions of the district court)[11] and 28 U.S.C. § 1292(b) (governing appeals of non-injunction interlocutory decisions)[12] are a red herring. The Libby Claimants have not suggested that either of those sections provides the jurisdictional basis for this appeal. In all instances, the Libby Claimants have asserted that the Order is reviewable as a preliminary injunction.

---

[10] Reply at pp. 2-3.

[11] Motion to Dismiss at pp. 4-6.

None of the cases cited by Grace involves an injunction. Two of the cases suggest that if an injunction had been involved, it would have been appealable. See Cofab, Inc. v. Philadelphia Joint Bd. Amalgamated Clothing and Textile Workers Union, AFL CIO-CLC, 141 F.3d 105, 108 (3d Cir. 1998) (finding that the district court order granting stay was not appealable because the "district court 'enjoined' no party or proceeding"); Hoots v. Pennsylvania, 587 F.2d 1340, 1348 (3d Cir. 1978) (finding that stays that are "injunctive in character" are appealable). Thus, the cases cited by Grace, to the extent relevant at all, support the Libby Claimants' position.

### 3.    This Appeal is Not Moot

Finally, in the Motion to Dismiss, Grace makes a disingenuous argument that "the appeal should be dismissed because it may become moot by the time it is considered by this Court." Motion to Dismiss at p. 8. In the Reply, Grace similarly argues that "the bankruptcy court can be expected to rule on [the Injunction Motion] . . . at any time." Reply at p. 4. Putting aside the difficult issue of whether the Bankruptcy Court has jurisdiction to act on the merits of the Injunction Motion,[13] the only indication the parties have received of the time-frame that the Bankruptcy Court has in mind comes from the colloquy between the Libby Claimants' counsel and Judge Fitzgerald in which she requested that the Libby Claimants enter into a voluntary stay of the State Litigation that would last through December 2006. [Bankr. Case D.I. 11473, p.202:15-25.] By contrast, briefing of this appeal will be completed by February 24 at the latest—not "another month and a half" as asserted by Grace.[14] This Court has the option either

---

[12] Motion to Dismiss at pp. 6-7.

[13] The Libby Claimants assume that, if Judge Fitzgerald indicated that she was prepared to act, the parties would cooperate to find a way to permit her decision to be entered free from any impediment related to the pendency of this appeal.

[14] Grace indicates that Fed. R. Bankr. P. 8009(a) applies to this appeal. Motion to Dismiss at p.8 n.1. However, it is the Local Rules of the United States District Court for the District of Delaware that apply. Accordingly, Grace has until February 16, 2006 to file its response brief, and the Libby Claimants have until February 24, 2006 to file a reply brief. See D. Del. LR. 7.1.2.

to consider the full merits of the appeal (the Libby Claimants' assertion that the Bankruptcy Court lacks jurisdiction to enjoin the State Litigation and the record before the Bankruptcy Court cannot support issuance of the injunction) or to simply vacate the Order on the basis that it was improperly entered without making the determination of jurisdiction and the findings required to support an injunction.[15] This latter course—which would leave the Bankruptcy Court free to rule in due course on the merits of the Injunction Motion but permit the State Litigation to go forward in the meantime—could be implemented by this Court summarily and without the need for oral argument.  But whichever approach this Court elects, the plight of the Libby Claimants by reason of the Bankruptcy Court's failure to act within the time frame required by Rule 65(b) cries out for this Court to act expeditiously, not grant Grace's request for further delay.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

---

[15] "Where a temporary restraining order has been continued beyond the time limits permitted under Rule 65(b), and where the required findings of fact and conclusions of law have not been set forth, the order is invalid."  <u>Granny Goose Foods</u>, 415 U.S. at 443 n.17.

## CONCLUSION

Based on the foregoing, the Libby Claimants respectfully request that the Motion to

Dismiss be denied and the Court further grant relief that is just and proper.

Respectfully submitted this 9th day of February 2006.

<div style="margin-left: 40%;">

LIBBY CLAIMANTS

By their attorneys,

Adam G. Landis (No. 3407)
Kerri Mumford (No. 4186)
LANDIS RATH & COBB LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450

and

Daniel C. Cohn
Christopher M. Candon
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, MA  02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

</div>

G:\DATA\877p\Resp to Mot to Dismiss7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF)<br>Adv. Proc. No. 01-771 |
| Debtors. | Jointly Administered |
| Libby Claimants, | |
| Appellants, | C.A.06-00026-RLB |
| v. | |
| W.R. Grace & Co., *et al.*, | |
| Appellees. | |

## COMPENDIUM OF UNREPORTED OPINIONS

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Landis Rath & Cobb LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

Daniel C. Cohn
Christopher M. Candon
Cohn Whitesell & Goldberg LLP
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679

Dated: February 9, 2006

# COMPENDIUM OF UNREPORTED OPINIONS

**Case**                                                                    **Exhibit No.**

D'Avella v. City of Newburgh, New York, 1987 WL 8196 (D.N.J. March 18, 1987).............1

Gerard v. W.R. Grace & Co., Inc., Civil Action No. 02-1549; Memorandum Opinion
(D. Del. July 16, 2003 (Wolin, A., J.)) ......................................................................................2

# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 8196 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

c

Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.
In the Matter of Richard BERTOLI, Debtor,
Bernard J. D'AVELLA, JR., Trustee, Plaintiff,
v.
CITY OF NEWBURGH, New York, Defendant.
Civ. A. No. 86-4856.

March 18, 1987.

OPINION

*BARRY, District Judge.*
*1 The City of Newburgh, New York, appeals the bankruptcy judge's granting of a preliminary injunction restraining it from selling, transferring or otherwise alienating the property located at 497-533 Liberty Street, Newburgh ("the property"). For the reasons set forth below, I will remand the matter to the bankruptcy judge.

The facts underlying this dispute are complex. Fortunately, for the purpose before this court, I may summarize them briefly. Richard Bertoli ("Richard") was the President and Chief Operating Officer of Executive Securities Corporation, a brokerage firm that went into bankruptcy in 1975. Richard apparently concocted a convoluted scheme to fraudulently transfer personal and corporate assets into various family holding companies or makeshift corporations to put them beyond the reach of creditors.

One of these holding companies was the Rutherford Construction Corporation ("RCC") which was owned by Richard's brother John Bertoli ("John") and Richard's three minor children. In a state court proceeding brought by the Trustee for Executive Securities Corporation against Richard and John, the Hon. Gregory J. Castano described in detail how Richard had "systematically stripped a number of assets in which [he] had a substantial direct or indirect interest." *Executive Securities Corp. v. Bertoli,* Civ. No. C-5088-79 (Law Div.N.J.Super. Feb. 23, 1983) (slip op. at 4) *aff'd* Civ No. A-3164-82T2 (N.J.Div. May 22, 1984), *certif. denied,* 97 N.J. 701 (1984). Further, Judge Castano found that "John is a mere figurehead for Richard in RCC." *Id.* at 17.

The Trustee has consistently characterized this

decision as holding that "all of the property of Rutherford ... belonged in fact to Richard Bertoli." Plaintiff Respondent's Brief at 5. *See also id.* at 6. I have carefully reviewed the state court opinion and the opinion of the Hon. H. Lee Sarokin in *Bertoli v. D'Avella,* 85-4324 (D.N.J. March 6, 1986) (slip op. at 3), *aff'd* ---- F2d ---- (3d Cir. Feb 26, 1987), in which he summarized the state court's finding in a much more limited fashion:

the court found that Richard Bertoli had transferred Executive Securities' assets to Rutherford and Door Openings in order to defraud Executive's creditors and shareholders."

Judge Sarokin also characterized the issue before him as whether John had some enforceable rights to the property of Richard's estate. Inasmuch as Judge Sarokin found the suit before him barred under the principle of *res judicata,* it would appear that the Trustee's characterization is correct.

On October 11, 1983, Richard's own estate filed for reorganization pursuant to Chapter 11 of the Bankruptcy Code. Bernard J. D'Avella, Jr. was appointed acting trustee on February 1, 1985 and began the unenviable task of assembling Richard's assets. While the Trustee has not stated the obvious, the task of sorting through Richard's fraudulent affairs and assembling assets for the benefit of the creditors no doubt requires herculean efforts. As the case before me demonstrates, it also requires detective work more commonly associated with Sherlock Holmes than with a bankruptcy trustee.

*2 In July, 1985, the Trustee ordered a title abstract for the property at issue here. This title abstract revealed that the City of Newburgh had taken a deed to the property on April 30, 1985 when the previous owner, Woods Apts. Enterprises, Inc. ("Woods"), had failed to pay $822.48 in taxes. The Trustee claims that Woods is owned by RCC and therefore is part of Richard's estate. The sole proof provided to substantiate this claim is an appellate brief filed on behalf of John in the state court proceeding. In that brief John's attorney argued:

John Bertoli contributed to RCC certain real property in Newburgh, New York, having a value of approximately $120,000 (T1.101-14 to T1.102-25). Title to the property had previously been in Woods Apartment Enterprise, Inc., a creditor of DOC

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 8196 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

[another Bertoli family holding company] in the amount of $40,000 (Da 164). Woods was itself owned by John Bertoli and James Goodwin; Richard Bertoli had no interest in it. (Da.164).

*See* Exhibit B at 21-22 of Plaintiff-Respondent's Brief.

The Trustee relies on the finding of the state court that John was a mere figurehead for Richard in RCC and argues that this property is therefore part of Richard's estate. [FN1]

From July, 1985 through October, 1986, the Trustee and the City attempted to reach some accommodation. From the record before me, it appears that the Trustee entered into negotiations with Mount St. Mary's to sell the property with the informal understanding that the taxes would be paid from the sale price with the balance going to the debtor's estate. *See* Affidavit of Franklin K. Wymann ¶ 9. Based on an independent evaluation of the property, the Trustee offered to sell the property for $90,000. *Id.* ¶ 14. From February through September, 1986, Mount St. Mary's "sat" on the offer. On September 23, 1986, the Trustee withdrew the offer of $90,000 and informed Mount St. Mary's that it had an offer of $120,000 from Action Alarm, Inc. *Id.* ¶¶ 23, 25. Apparently, in an effort to prevent a townhouse development that was contemplated by Action Alarm, Inc., the City began preparations to sell the property to Mount St. Mary's for $50,000. *Id.* ¶¶ 31, 32, 36.

On October 27, 1986, the Trustee sought and obtained an Order to Show Cause temporarily restraining the City of Newburgh from disposing of the property and filed a complaint alleging that the City of Newburgh had acquired the property on April 30, 1985 in violation of the automatic stay which began pursuant to 11 U.S.C. § 362 on October 11, 1983. By this time, the City of Newburgh was under contract to sell the property to Mount St. Mary's. Transcript at 2.

On November 12, 1986, the Hon. Vincent J. Commisa of the bankruptcy court entered a preliminary injunction essentially to preserve the rights of all parties until trial. In an oral opinion, Judge Commisa balanced the harm to the City of Newburgh and the creditors and found that the City stood to temporarily lose $822.48 in property taxes. In contrast, if the Trustee ultimately prevailed and the land was prematurely sold, the creditors of the estate stood to lose approximately $100,000. In the only

discussion of who might ultimately prevail, Judge Commisa stated:

*3 There seems to be the likelihood, the possibility that upon further examination, further trial of all of the issues involved in this case, it might be found that the township acted in accordance with state law, but without knowing, without knowledge of the filing of the bankruptcy proceedings and without the knowledge they would be unaware that they were automatically stayed from proceeding against property of the debtor corporation. Transcript at 3.

Thus, Judge Commisa appears to have found that while the City is at least as likely as the Trustee to succeed on the merits of the action, the balance of hardship warranted granting the preliminary injunction. The City of Newburgh now appeals this decision arguing that the Trustee has failed to demonstrate any likelihood of success on the merits and that the injunction would prevent the City from satisfying its tax lien and acting in the public interest. The Trustee argues that this is an inappropriate interlocutory appeal which should be dismissed or, in the alternative, that the preliminary injunction was warranted.

As an initial matter, the Trustee argues that the court should exercise its discretion and deny leave to appeal this interlocutory order. 28 U.S.C. § 158 states in relevant part that

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgment, orders, and decrees, and with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title ...

* * *

(c) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the court of appeals from the district court and in the time provided by Rule 8002 of the Bankruptcy Rules.

The Trustee argues that a preliminary injunction is an interlocutory order and is therefore only appealable with leave of the court. Relying on *In Re Teleport Oil Co., 759 F.2d 1376, 1378 (9th Cir.1985),* the Trustee argues that because § 158 is "the exclusive basis of [appellate] jurisdiction," § 1292(a), which makes an appeal from a preliminary injunction an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 8196 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

appeal of right, does not govern an appeal from a bankruptcy judge.

The Trustee has mischaracterized the holding in *In Re Teleport Oil Co.* That case involved the jurisdiction of the Court of Appeals over a bankruptcy appeal from the district court. Section 158(d) explicitedly states that:

The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered [by either the district court or bankruptcy appellate panel]

Thus, in the "jurisdictional maze" created by the Bankruptcy Act of 1984, Congress has interposed an additional rung of appellate review. In its role of reviewing bankruptcy appeals, the Court of Appeals reviews the decision of another appellate body. Accordingly, § 158(d) ensures that the courts of appeals do not duplicate the review of the district court or bankruptcy appellate panel. For that reason, *In Re Teleport Oil Co.* refused to incorporate a § 1292 type of review. *See also Brown v. Pennsylvania State Employees Credit Union,* 803 F.2d 120 (3d Cir.1987); *In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir.1985).

**\*4** In contrast to the above, however, the district court explicitly reviews the orders of a bankruptcy judge in the same manner as the court of appeals reviews the orders of a district court judge. 28 U.S.C. § 158(c). Thus, for instance, in determining whether to grant leave for an interlocutory appeal, courts have routinely looked to the standard enunciated at 28 U.S.C. § 1292(b). *See, e.g., Bertoli v. D'Avella, supra; In Re. United Press International,* 60 B.R. 265, 275 (Bankr.Colo.1986); *Connelly v. Shatkin Investment Corp.,* 57 B.R. 794, 796 (M.D.Ill.1986); *In Re Johns-Manville Corp.,* 45 B.R. 833 (S.D.N.Y.1984).

Section 158(a) on its face does not distinguish certain categories of interlocutory orders as subject to an appeal of right as does § 1292(a). Nevertheless, § 158(c) should be interpreted to make § 1292(a) as well as § 1292(b) applicable to the appellate process described in § 158(a). Moreover, I note that while no published opinion since the new bankruptcy act has discussed this issue, traditionally preliminary injunctions in a bankruptcy proceeding have been subject to an immediate appeal. *In Re Brentano's, Inc.,* 36 B.R. 70, 91 7, 4 (S.D.N.Y.1984); *In Re Den-Col Cartage & Distribution, Inc.,* 20 B.R. 645, 847 (D.Colo.1982). Accordingly, I conclude that this

appeal is an appeal of right and that the court is duty-bound to hear and decide the issues presented.

Turning to the merits of this appeal, I find that the case should be remanded to the bankruptcy judge for certain findings of fact and conclusions of law. The Court of Appeals for the Third Circuit has often stated the standard for granting a preliminary injunction:

the moving party must generally show (1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted. Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction and (4) the public interest."

*In Re Arthurs Treacher's Franchise Litigation,* 689 F.2d 1137, 1143 (3d Cir.1982) (citations omitted); *E.E.O.C. v. State of New Jersey,* 620 F.Supp. 977, 980 (D.N.J.1985) appeal pending.

In *Educational Testing Services v. Katzman,* 793 F.2d 533, 537 (3d Cir.1986), the Third Circuit stressed that the Federal Rules of Civil Procedures 52(a) and 65(d) require injunctions to be accompanied by explicit findings of fact and conclusions of law insuring effective appellate review. Moreover,

if the record does not provide a sufficient basis to ascertain the legal and factual grounds for issuing the injunction or if the findings "are inadequate to explain the basis for that ruling or to permit meaningful review" the appellate court must vacate the injunction and remand to the [lower] court for further findings.

*Id.* (citations omitted).

**\*5** Just recently, the Third Circuit reemphasized the need for courts considering motions for preliminary injunctions to make clear and specific findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a). The Third Circuit remanded the case solely for the purpose of enabling the lower court to comply with Fed.R.Civ.P. 52(a). *Northwest Women's Center, Inc. v. McMonagle,* Civ. No. 86-1364 (slip. op. at 4-5) (3d Cir. March 11, 1987)

I have carefully reviewed the opinion of the bankruptcy judge. Judge Commisa does not appear

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1987 WL 8196 (D.N.J.)
(Cite as: Not Reported in F.Supp.)

to have made any explicit finding of probable success. Further, Judge Commisa did not make any finding regarding irreparable harm, although he did find that the City had much less to lose than the creditors.

Specific findings aside, I question whether the Trustee has shown a likelihood of success on the merits. The only proof offered to establish that Woods was owned by RCC was a statement by John's attorney in a state appellate brief. Inasmuch as that statement appears based on John's testimony, it bears mention that Judge Castano found that John was not a credible witness. *Executive Securities Corp., supra,* slip op. at 15-17. While I am sympathetic to the needs of the Trustee to investigate every potential asset for the estate, he must establish more than this in order to prevail and, perhaps, will now be able to do so.

The Trustee argues that in cases in which irreparable harm is clear, plaintiffs are relieved of the burden of showing a likelihood of ultimate success on the merits. While cases outside this circuit appear to have adopted this approach, *see, e.g., In Re Delorean Motor Co., supra; Maryland Undercoating Co., Inc. v. Payne,* 601 F.2d 477 (4th Cir.1978); *Hamilton Watch Co. v. Bensons Watch Co.,* 206 F.2d 738 (2d Cir.1953), the Third Circuit has explicitly refused to do so. *In Re Arthur Treacher's Francise litigation, supra,* 689 F.2d at 1147 n. 14 (explicitly limiting *Constructions Associations of WC Stein Pennsylvania Kreps,* 573 F.2d 811, 815 (3d Cir.1978)).

Therefore, this case will be remanded for findings with reference to the likelihood of success and irreparable harm, i.e., harm which is immediate and "of a peculiar nature, so that compensation cannot atone for it." *ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987).

Any restraints will remain in effect until such time that the bankruptcy court, acting with due diligence, rules in accordance with this opinion.

### ORDER

The matter having been opened to the court by the City of Newburgh, New York, on appeal of the November 12, 1986, order of the Hon. Vincent J. Commisa granting Bernard J. D'Avella, Jr., the trustee of the estate of Richard Bertoli, a preliminary injunction restraining the City of Newburgh, New York, from selling, transferring or otherwise

alienating the property located at 497-533 Liberty Street, Newburgh, New York and,

The court having considered the papers submitted and having decided the appeal pursuant to *Fed.R.Civ.P. 78* without oral argument and for the reasons stated in the attached opinion

*6 IT IS on this 17th day of March, 1987,

ORDERED that this case is remanded to the bankruptcy judge for specific findings of fact and conclusions of law as discussed in the attached opinion, and it is further

ORDERED that the present restraints shall remain in effect until further order of Judge Commisa.

> FN1. The Trustee also relies in part on an adversary proceeding brought by John to assert an interest to some of the property in Richard's estate. The Hon. H. Lee Sarokin ruled that the state court decision in *Executive Securities Corp.* barred that suit. The Third Circuit affirmed Judge Sarokin. *Bertoli v. D'Avella,* --- F.2d ----, ---- n. 3 (3d Cir. Feb. 27, 1987).

D.N.J.,1987.
Matter of Bertoli
Not Reported in F.Supp., 1987 WL 8196 (D.N.J.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

FROM KLEHR HARRISON                (FRI) 8.29'03 15:50/ST. 15:47/NO. 4261182713 P 10

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

_RECEIVED

JUL 22 2003

JCW

| | | |
|---|---|---|
| IN RE | : | Chapter 11 |
| | : | Bankruptcy No. 01-1139 |
| W.R. GRACE & CO., et al., | : | through 01-1200 |
| | : | |
| Debtors. | : | |
| | : | |
| | : | District Court |
| CAROL GERARD, ALFRED | : | Civil Action No. 02-1549 |
| PENNOCK, BILLIE SCHULL, | : | |
| et al., | : | |
| | : | MEMORANDUM OPINION |
| Defendants-Appellants, | : | |
| | : | |
| v. | : | |
| | : | |
| W.R. GRACE & CO., INC., | : | |
| et al., | : | |
| | : | |
| Plaintiffs-Appellees. | : | |

**WOLIN, District Judge**

This matter is opened before the Court on an appeal pursuant
to 28 U.S.C. § 158 (a)(1) from an Order of the Bankruptcy Court
denying the motion of certain asbestos claimants Carol Gerard,
Alfred Pennock, Billie Schull, and others (the "Asbestos
Claimants") to clarify or modify the scope of a preliminary
injunction entered by the Bankruptcy Court pursuant to Section
105 of the Bankruptcy Code.  The Court has jurisdiction over this
case pursuant to 28 U.S.C. § 1292 (a)(1) in the exercise of its

jurisdiction over interlocutory orders with respect to
injunctions.  The matter has been decided upon the written
submissions of the parties.  For the reasons set forth below, the
appeal will be granted and the Order of the Bankruptcy Court will
be modified.

## BACKGROUND

On April 2, 2001, debtor, W.R. Grace & Co. ("Grace") filed
its petition in the Bankruptcy Court in the District of Delaware
for relief under Chapter 11 of the Bankruptcy Code, and
contemporaneously sought temporary restraints and a preliminary
injunction of asbestos-related claims against itself and a
defined set of affiliates and co-insured non-debtor affiliates.
The effect of these Orders was to stay the Asbestos Claimants'
claims against Grace, but not claims made against Grace's former
liability and workers compensation insurer, Maryland Casualty
Company, in which the asbestos claimants had asserted independent
tort causes of action against Maryland Casualty.

The Temporary Restraining Order and Preliminary Injunction
also stayed prosecution of all asbestos-related actions against
Grace's affiliated entities, as defined in the Order, where the
alleged exposure to asbestos was allegedly caused by Grace
directly or indirectly.  The Order specifically covered non-

2

debtor affiliates which might be entitled to coverage under Grace's insurance for asbestos-related claims.

On May 1, 2001, Grace applied to the Bankruptcy Court, requesting that Maryland Casualty be added as a party protected by this injunction, attaching a Settlement Agreement dated September 1, 1991. On May 3, 2001, the Bankruptcy Court granted the preliminary injunction, specifically enjoining actions against Maryland Casualty. After applications to modify the injunction to add other affiliated entities and extended hearings, the Bankruptcy Court on January 22, 2002 entered an Order continuing the preliminary injunction and barring actions against Maryland Casualty arising from exposure to asbestos directly or indirectly allegedly caused by Grace.

Less than two weeks later, claimant Carol Gerard filed a motion to clarify the scope of the preliminary injunction, or in the alternative to modify it. She further sought leave to proceed against Maryland Casualty in a pending state court action in Baltimore, Maryland. Shortly thereafter, claimants Alfred Pennock, Billie Schull and other asbestos claimants on this appeal filed similar complaints against Maryland Casualty in Montana. On June 20, 2002, the Bankruptcy Court denied Gerard's motion and stayed both her pending action in Maryland and the other claimants' actions in Montana. A motion to reconsider

3

followed, which was denied by an Order dated September 12, 2002.
After denial of their motions to reconsider, these claimants
sought review of the Bankruptcy Court's decision through this
appeal, which is opposed by both Maryland Casualty and Grace.

The factual background of appellants' claims is relevant to
their appeal.  These Asbestos Claimants seek damages for
asbestos-related injuries alleged to have occurred to them as
residents of Libby, Montana, a town of approximately 2,600 near
which Grace operated a mining, milling and processing facility
for vermiculite.  The vermiculite mine was 10 miles north of
Libby and was operated by Grace from 1963 until 1990.  The mine
yielded ore used to create zonolite, an insulating material
originally produced for the Zonolite Company which was purchased
by Grace in 1963.  Grace continued operation of the mine from
1963 until 1990.  The zonolite ore contained tremolite asbestos,
asserted to be 10 times more carcinogenic and fibrogenic and
hundreds of times more productive of mesothelioma than the more
typical chrysotile asbestos, which has been the subject of most
asbestos litigation.  The processing of zonolite at the plant
apparently removed much of the tremolite asbestos from the
eventual product, but generated high volumes of tremolite-
containing dust, allegedly causing injury to both the plant
workers, their families, and other members of the community.  It

4

is contended that those who have been diagnosed with tremolite
asbestos disease have approximately a 76% likelihood of
progressing from mild to moderate to severe asbestos disease, a
rate three times that of chrysotile asbestos exposure.

Historically, the first civil complaints were by former
employees.  Later, however, family members exposed to the
tremolite dust brought home on employees' clothing brought suit,
joined after 1995 by non-employees and Libby residents living
near the mine.[1]  The earlier complaints generally involved
diagnosed asbestosis or other serious disease.  The more recent
complaints generally alleged no current impairment.[2]  Plaintiff
Carol Gerard lived and worked in Libby, Montana for a period of
time, and asserted that she had been exposed to dust in the air
and on mine workers' clothing at her place of business.  The
other Asbestos Claimants are former Grace employees or their
family members.

Maryland Casualty Company was Grace's primary general
liability insurer through June 30, 1973.  It also issued worker's

---

[1]    The first worker's compensation claims for asbestos-
related diseases related to the Libby mine were presented to
Grace in 1967, and in 1984 the first civil complaint was filed.
Although the mine was closed in 1990, the complaints continued to
be filed, but increased dramatically in 1997.

[2]    216 cases relating to Libby Mine exposure were filed
against Grace; 83 were settled for nearly $22 million, 11 were
dismissed, and 122 were pending at the time of the Grace Chapter
11 filing.

compensation policies covering the site.  Following litigation
between Grace and Maryland Casualty concerning the insurance
coverage for the then-pending thousands of asbestos-related
claims, Grace and Maryland Casualty entered into a Settlement
Agreement on September 1, 1991.  The Settlement Agreement (1)
provided that Grace was to receive a cash settlement which would
exhaust the aggregate policy limits on Maryland Casualty's
primary policies, (2) indemnified Maryland Casualty against
specified future claims under its policies, and (3) discharged
Maryland Casualty's obligations under the policies for asbestos-
related claims against Grace.  The terms of this Agreement will
be analyzed in more detail, _infra_.

The Asbestos Claimants have asserted that, as Grace's
worker's compensation carrier from June 30, 1962 to June 30,
1973, and specifically commencing in 1964, Maryland Casualty,
through its engineering division and medical division, undertook
to design an industrial hygiene program to control and prevent
asbestos dust in Libby, Montana under the rubric "Maryland
Casualty Safety Program."  In doing so, these Asbestos Claimants
contend that  Maryland Casualty undertook a duty to the workers,
their families and the community of Libby, Montana to exercise
reasonable care in relation to the program.  They allege that

6

Maryland Casualty both negligently and intentionally failed to fulfill this duty, as defined by Montana law.

The Asbestos Claimants list five areas of wrongful conduct: (a) omitting to educate workers about the hazards of asbestos exposure, (b) failing to warn workers' families and the community of these hazards, (c) taking insufficient measures to establish standards for dust control through housekeeping, ventilation and exhaust air cleaning, (d) omitting sufficient measures and standards for the maintenance of equipment and premises, and (e) providing insufficient medical monitoring programs. They further assert that Maryland Casualty's staff included industrial hygienists and medical doctors with expertise in occupational diseases, that it was well aware of the hazards of asbestos exposure, that it knew that such exposure existed at the Grace operations, and that workers were contracting diseases and dying from this exposure, an on-going hazardous condition.

The Asbestos Claimants claim to possess statements from Maryland Casualty's staff's records showing a geometric increase in people dying of asbestos disease and with abnormal chest X-rays, and evidence that Maryland Casualty knew that there was a lack of showers and coveralls for the workers and that workers went home each day into the community covered with asbestos dust, a hazard to all who might come in contact with them. The

7

Asbestos Claimants have defined the specific areas of negligence, not only in the insurer's inadequate recommendation of control procedures, but also in its engaging in reckless and intentional misconduct, including the concealment of the asbestos hazard it had agreed to address. In fact, as far back as 1967, Maryland Casualty's counsel allegedly indicated that there were efforts to suppress the extent and severity of the problems and to prevent Montana's Industrial Accident Board from obtaining information concerning the results of this asbestos contamination.

## DISCUSSION

This Court may review the legal determinations of the Bankruptcy Court de novo after assessing any facts found by the Bankruptcy Judge for clear error, with any exercise of discretion reviewed solely for abuse of discretion. See In Re Professional Insurance Management, 285 F.3d 268, 282-83 (3d Cir. 2002); Interface Group-Nevada, Inc. v. Trans World Airlines, Inc. (In Re Trans World Airlines, Inc.), 145 F.3d 124, 130 (3d Cir. 1998). Of course, there is also de novo review where the Bankruptcy Court has determined how to apply the law to its factual findings. See In Re O'Brien Environmental Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). This case involves matters of law and the application of legal standards in the issuance of an injunction. These issues are being considered de novo.

The asbestos claimants, in their application to the
Bankruptcy Court and to this Court, have made it clear that they
are seeking leave to pursue their state remedies against Maryland
Casualty solely with respect to Maryland Casualty's independent
tort liability. They disavow any intention to press claims based
upon Grace's Maryland Casualty's policies or for the insurer's
vicarious liability for Grace's torts. The claimants acknowledge
that their claims against Grace must await resolution in or as
directed by the pending bankruptcy proceedings. They also
acknowledge that any judicial findings made in the course of the
litigation of state claims against Maryland Casualty will not be
binding upon Grace in any subsequent proceeding. They
specifically eschew any collateral estoppel impact in any later
action.

Against this background, Maryland Casualty and Grace urge
this Court to uphold the Order of the Bankruptcy Judge that the
claims against Maryland Casualty for its own torts are barred by
the Bankruptcy Code. Specifically, they assert that the claims
against Maryland Casualty "relate to" the pending bankruptcy
claims against Grace. The Judiciary Code, at 28 U.S.C. §
1334(b), establishes jurisdiction in the Bankruptcy Court if the
cause of action in question "arises under," "arises in," or is
"related to" a case under Title 11. There is no question in this

9

proceeding that the claims against Maryland Casualty arose neither under the Bankruptcy Code nor in a pending case. The sole issue, therefore, is whether the claims of the asbestos claimants are "related to" the Grace bankruptcy proceeding.

This Court has had an opportunity to treat this issue in detail in In re Federal-Mogul Global, Inc., 282 B.R. 301 (D. Del. 2002), in which the Third Circuit's controlling authority, Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984) was analyzed and quoted at length. There must be a nexus between the related civil proceeding and the Title 11 case, with the core of the test being "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy" 282 B.R. at 305 (quoting Pacor, 743 F.2d at 994). Pacor further explained that a civil proceeding would be considered "related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." Id. at 994. Common issues of fact are insufficient. Id. In Federal-Mogul, this Court held that

> The narrow holding of Pacor was that a mere common-law indemnity claim by a non-debtor co-defendant of a debtor will not "alter the debtors rights, liabilities, options, or freedom of action (either positively or negatively)" in a way that "impacts on the handling and administration of the bankruptcy estate." [Pacor, 743 F.2d] at 994. That common

facts would be litigated against the co-defendant did not
matter, because no resolution of a factual issue would be
binding on the debtor's estate.

282 B.R. at 306.

This Court declined to follow the Sixth Circuit's contrary
view of this issue set forth in In re Dow Corning Corp., 86 F.3d
482 (6th Cir. 1996), cert. denied, 519 U.S. 1071 (1997). 282
B.R. at 308-09 (noting possible points of distinction between
Pacor and Dow Corning and observing that "to the extent that the
reasoning of the Sixth and Third Circuits conflict, this Court
must follow that of the Third"). Reviewing Third Circuit
decisions following Pacor, this Court restated the rule: "that
related-to bankruptcy jurisdiction will not extend to a dispute
between non-debtors unless that dispute, by itself, creates at
least the logical possibility that the estate will be affected."
Id. at 309.

On the other hand, as noted in Federal-Mogul, a guarantee or
indemnification by the debtor of an otherwise unrelated party may
bring a common claimant's suit against the indemnitee within the
jurisdiction of the Bankruptcy Code. 282 B.R. at 311-12. The
example discussed in Pacor was In re Brentano's, 27 B.R. 90
(Bankr. S.D.N.Y. 1983), reconsidered after remand In re Brentano
Inc., 36 B.R. 90 (S.D.N.Y. 1984). Reviewing the case law
following Pacor, the Court in Federal Mogul found that, without

11

more, a bare indemnification agreement by the debtor may not suffice to create to find related-to jurisdiction.  282 B.R. at 310-11.  Indeed, in Brentano, the indemnitor was the largest unsecured creditor of the debtor and also was liable for eleven other guarantees it had made of the debtors other lease obligations.  Consequently, an action by a creditor against the indemnitee could have affected the status of the other creditors, and therefore the administration of the debtor's estate.  However, the court's have noted that "the clear implication of [Pacor discussion of Brentano's] is that, if there had been a contract to indemnify, a contrary result would have been in order."  In re A.H. Robins Co., Inc., 788 F.2d 994, 1001 (4th Cir.), cert. denied, 107 S. Ct. 251 (1986).

As a result, Maryland Casualty takes refuge in its Settlement Agreement with Grace, specifically Grace's indemnification of Maryland Casualty from future claims.  The Court finds little comfort for Maryland Casualty there, however. The indemnification provision in the Agreement clearly relates solely to claims against Maryland Casualty based on the liability of Grace, or claims made under the policies.  It does not cover the insurer's direct liability to third parties for its own acts or omissions.

The applicable portion of the Agreement reads:

12

Grace-Conn. agrees to indemnify and hold Maryland harmless at all times from and after the effective date of this Agreement from and against any and all liability loss, cost or expense (excluding attorneys fees and other defense costs) imposed upon or incurred by Maryland as a result of any known or unknown, past, pending, future, or threatened claims, rights, demands, lawsuits, causes of actions or proceedings that:

(1) are asserted or initiated against Maryland by any Person (including, without limitation, Other Insurers, Bodily Injury Indemnitees, Bodily Injury Claims Plaintiffs, Property Damage Indemnitees, Property Damage Claims Plaintiffs); and

(2) arise out of any one or more of the following:

i)   claims which involve liability or alleged liability on the part of Grace-Conn. subject to the Aggregate Product Limits set forth in any of the Primary Policies issued by Maryland to Grace-Conn. for the period of 6-30-1962 to 6-30-1973;

ii)  Asbestos-Related Claims that are covered, or have been or may be alleged by Grace-Conn. to be covered, by any of the Primary Policies;

iii) the existence or extent of Maryland's obligations to any Person with respect to claims involving liability or alleged liability on the part of Grace-Conn. subject to the Aggregate Product Limits set forth in any or the Primary Policies issued by Maryland to Grace-Conn. for the period of 6-30-1962 to 6-30-1973;

iv)  the existence or extent of Maryland's obligations to any Person with respect to Asbestos-Related Claims that are covered, or have been or may be alleged by Grace-Conn. to be covered, by any of the Primary Policies; or

v)   payments made by Maryland under this Agreement or otherwise with respect to Asbestos-Related Claims that are covered, or have been or may be alleged by Grace-Conn. to be covered, by any of the

13

Primary Policies, or with respect to any other
liability or alleged liability on the part of
Grace-Conn. subject to the Aggregate Product
Limits set forth in any of the Primary Policies
issued by Maryland to Grace-Conn. for the period
of 6-30-1962 to 6-30-1973.

A737-78.

The Settlement Agreement neither in its general terms nor in
it specific indemnification language provides for Grace to
indemnify Maryland Casualty for Maryland Casualty's own
negligence.  The Agreement relates only to insurance coverage and
establishes that the settlement was complete with respect to all
Maryland Casualty's insurance obligations for asbestos-related
claims against Grace.

Moreover, the plain language reading of the Agreement is the
most reasonable.  One would not expect that a settlement
agreement between insurer and insured would cover more than the
then-existing claims under the policies extant and in dispute at
the time the settlement agreement was entered into.  There was no
issue between Grace and Maryland Casualty relating to the
insurer's independent responsibility for its own torts.  Nowhere
within the four corners of the agreement is there the slightest
hint that Grace so indemnified Maryland Casualty.

After careful review of the contractual indemnification
language and the nature of the Asbestos Claimant's tort claims

14

against Maryland Casualty, it is clear that the debtor's estate
will in no way be affected by a remand of the independent claims
against Maryland Casualty to the Montana and Maryland State
Courts.  As was argued by the claimants to the Bankruptcy Judge,
and has been reasserted here, there is no substantial burden upon
Grace's attorneys or management.  This is true for several
reasons.  Among them are:  (1) All documentary evidence is
contained in a repository in Boston.  There is an existing
database of the documents, and the repository searches are
regularized without involvement of Grace's current management.
(2) Similar issues in cases against Grace itself have been tried
five times to verdict in Montana and the substance of the ongoing
cases against Grace (which, of course, have been stayed by the
pending bankruptcy) is mature in its proofs.  Therefore, any
revelations in the Maryland Casualty proceedings are unlikely to
have any substantive impact upon later claims against Grace.  (3)
As to the Maryland Casualty liability, there has been substantial
discovery with respect to Grace in its extensive litigation,
which resulted in the settlement and indemnity agreement.  (4)
There are no current Grace employee-witnesses to be deposed,
except possibly two retired managers who had already been
deposed.  The burden on Grace is insignificant while the burden
of waiting upon the plaintiffs is substantial.

15

Grace asserts that evidence derived in the state actions
will be used against it in later proceedings because admissions
under oath or otherwise by an agent of a party will stand,
irrespective of the actual parties to that litigation, citing
Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-
Manville Corp.), 40 B.R. 219, 225 (S.D.N.Y. 1984). As just
noted, there are no current employees or agents of Grace with
relevant information to this case, and all or nearly all of the
evidence is already a matter of record. Former employees are not
agents of a corporation, and their statements are not imputed to
or considered admissions by such a corporation. See Action
Airfreight, Inc. v. Pilot Airfreight Corp., 769 F. Supp. 899,
902-03 (E.D. Pa. 1991) (citing Anderson v. United States, 417
U.S. 211, 218-19 n.6 (1974)); Jenkins v. Walmart, Inc., 956 F.
Supp. 695, 697 (W.D. La. 1997).

Another non-sequitur in the Maryland Casualty and Grace
argument is that because the dust that caused the claimant's
injuries came from Grace's mines, Maryland Casualty's obligations
must be derivative of the claims against Grace and therefore
subject to an active/passive tortfeasor common-law
indemnification. As claimants correctly note, the genesis of a
particular carcinogenic or fibrogenic element did not generate
indemnification responsibility in Federal-Mogul or in Pacor. The

16

fact that the debtors' respective brake pads or asbestos in those cases generated the offending substance did not prevent the courts from permitting independent liability by a third party being the subject of an independent suit.

The Bankruptcy Judge also erred in the basis for assessing the substantive proofs against Maryland Casualty as revealed in the various documents she examined.  There was no written opinion, but in oral argument, she responded to the claimants' counsel stating that she saw no independent obligation undertaken by Maryland Casualty to design a dust control system.  She also questioned whether the insurer was merely a volunteer rather than a principal, even if there might be such documentation, and then concluded that the insurer acted merely as an agent of the debtor without incurring individual responsibility.

These conclusions, however, were merely opinions concerning whether there might be an eventual basis for independent liability proven against Maryland Casualty.  However, the issue before the Bankruptcy Court, and here, is not whether the claimants will or will not be successful in their state court claims.  They may or may not prevail; but this is of no moment. If they are successful, they may be paid for their injuries from a source completely independent from the debtor.  Such liability is independent from the insurance agreement in that such payment

17

discharges no separate obligation of the debtor to the claimants, nor does it trigger any indemnification of the debtor by Maryland Casualty or of the insurer by Grace. If the claimants are unsuccessful, Grace has no other claims against Maryland Casualty which would have been prejudiced by the state actions. The Settlement Agreement precludes such actions if based on the insurance policies. As noted at the outset, factual issues determined against Maryland Casualty which might be included in a later resolution of the tort claims against Grace are non-existent. Unless later determined or stipulated, any facts in such subsequent proceedings must be proven without any collateral estoppel effect. In short, while the claimants may or may not benefit from their actions against Maryland Casualty, the Grace estate is unaffected.

### CONCLUSION

For the reasons set forth above, the Order of the Bankruptcy Court denying appellants' motion to modify the injunction of the Asbestos Claimants' from prosecuting claims against Maryland Casualty will be vacated. This matter will be remanded for

further proceedings consistent with this Opinion.  An appropriate

Order is attached.


Dated: June 16, 2003.


ALFRED M. WOLIN
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| W.R. Grace & Co., *et al.*, | Case No. 01-01139 (JKF)<br>Adv. Proc. No. 01-771 |
| Debtors. | Jointly Administered |
| Libby Claimants, | |
| Appellants, | C.A.06-00026-RLB |
| v. | |
| W.R. Grace & Co., *et al.*, | |
| Appellees. | |

### CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2006, I electronically filed the Libby Claimants'
Response to Debtors' Motion to Dismiss Appeal (the "Response") using CM/ECF. On February
9, 2006, in addition to the electronic service to participants, I hereby certify that I caused the
Response to be served via hand delivery to the following parties:

**Debtors**

Laura Davis Jones, Esquire
James E. O'Neill, III, Esquire
PACHULSKI STANG ZIEHL YOUNG
JONES & WEINTRAUB
919 Market Street, 17th Floor
Wilmington, DE 19801

**Official Committee of Unsecured Creditors**

Michael R. Lastowski, Esquire
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801

**Official Committee of Equity Holders**

Teresa K.D. Currier, Esquire
KLETT ROONEY LIEBER & SCHORLING
1000 West Street, Suite 1410
Wilmington, DE 19801

**DIP Lender**

Steven M. Yoder, Esquire
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

**Maryland Casualty Company**

Mark J. Phillips, Esquire
Jeffrey Wisler, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
Wilmington, DE 19801

**The Scotts Co.**

Daniel B. Butz, Esquire
Gregory T. Donilon, Esquire
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
Wilmington, DE 19801

**Lanier Law Firm Asbestos Claimants**

Bernard G. Conaway, Esquire
FOX ROTHSCHILD LLP
919 Market Street, Suite 1300
Wilmington, DE 19801

**Gamma Holding, NV**

David E. Wilks, Esquire
BUCHANAN INGERSOLL PC
1007 N. Orange Street, Suite 1100
Wilmington, DE 19801

**U.S. Trustee**

Frank J. Perch, Esquire
OFFICE OF THE UNITED STATES TRUSTEE
844 N. King Street
Wilmington, DE 19801

**The Chase Manhattan Bank**

Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
RICHARDS LAYTON & FINGER P.A.
One Rodney Square
Wilmington, DE 19801

**Property Damage Claimants**

Michael B. Joseph, Esquire
FERRY JOSEPH & PEARCE P.A.
824 N. Market Street, Suite 904
Wilmington, DE 19801

**Continental Casualty**

Herbert W. Mondros, Esquire
Kevin Gross, Esquire
ROSENTHAL MONHAIT GROSS & GODDESS
919 Market Street, Suite 1401
Wilmington, DE 19801

**Exxon/Mobile**

William E. Chipman, Jr., Esquire
GREENBERG TRAURIG LLP
1007 N. Orange Street, Suite 1200
Wilmington, DE 19801

**Allen Plaintiffs**

Kathleen M. Miller, Esquire
SMITH, KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
Wilmington, DE 19801

**Carol Gerard**

Steven K. Kortanek, Esquire
KLEHR HARRISON HARVEY
BRANZBURG & ELLERS
919 Market Street, Suite 1000
Wilmington, DE 19801

**State of Montana**

Kevin J. Mangan, Esquire
MONZACK AND MONACO PA
1201 Orange Street, Suite 400
Wilmington, DE 19801

**James and Julie Holland**

Thomas D. Walsh, Esquire
MCCARTER & ENGLISH LLP
919 Market Street, Suite 1800
Wilmington, DE 19801

**Official Committee of Personal Injury
Claimants**

Marla R. Eskin, Esquire
CAMPBELL & LEVINE, LLC
800 King Street, Suite 300
Wilmington, DE 19801


I hereby certify that on February 9, 2006, I caused to be mailed by the United States

Postal Service, the Response to following parties:

**Debtors**

David M. Bernick, PC
Janet S. Baer, Esquire
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601

**Official Committee of Personal Injury
Claimants**

Peter Van N. Lockwood, Esquire
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW
Washington, DC 20005

**W.R. Grace & Co.**

David B. Siegel
W.R. GRACE AND CO.
7500 Grace Drive
Columbia, MD 21044

**Official Committee of Unsecured Creditors**

Lewis Kruger, Esquire
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038

**Official Committee of Property Damage Claimants**

Scott L. Baena, Esquire
Richard M. Dunn, Esquire
BILZIN SUMBERG BAENA PRICE &
AXELROD LLP
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131-5340

**Official Committee of Unsecured Creditors**

William S. Katchen, Esquire
DUANE MORRIS LLP
744 Broad Street, Suite 1200
Newark, NJ 07102-3889

**Maryland Casualty Company**

Edward J. Longosz, II, Esquire
Laura G. Stover, Esquire
ECKERT SEAMANS CHERIN &
MELLOTT LLC
1747 Pennsylvania Avenue, N.W. Suite 1200
Washington, DC 20006

**The Scotts Co.**

Robert J. Sidman, Esquire
Tiffany S. Cobb, Esquire
VORYS, SATER, SEYMOUR & PEASE
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216

**Libby Plaintiffs**

Daniel C. Cohn, Esquire
COHN WHITESELL& GOLDBERG LLP
101 Arch Street
Boston, MA 02110

**Official Committee of Equity Holders**

Philip Bentley, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036

**DIP Lender**

J. Douglas Bacon, Esquire
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606

**Official Committee of Asbestos Personal Injury Claimants**

Elihu Inselbuch, Esquire
Rita Tobin, Esquire
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, NY 10152-3500

**National Medical Care, Inc.**

David S. Rosenbloom, Esquire
MCDERMOTT, WILL & EMERY
227 West Monroe Street
Chicago, IL 60606-5096

**Continental Casualty**

Elizabeth deCristofaro, Esquire
FORD MARRIN ESPOSITO WITMEYER &
GLESER L.L.P.
Wall Street Plaza, 23rd Floor
New York, NY 10005-1875

**Royal**

Carl Pennicone, Esquire
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
150 East 42nd Street
New York, NY 10017-5639

**Carol Gerard**

Brian Parker, Esquire
36 South Charles Street, Suite 2200
Baltimore, MD 21201

Gary Smolker
Alice Smolker
4720 Lincoln Blvd, Suite 280
Marina Del Rey, CA 90292-6977

Dated: February 9, 2006

**State of Michigan, Department of Corrections**

David K. Foust, Esquire
3030 W. Grand Boulevard
10th Floor, Suite 200
Detroit, MI 48202

**Keri Evans**

Michael S. Etkin, Esquire
LOWENSTEIN SANDLER P.C.
65 Livingston Avenue
Roseland, NJ 07068

**David T. Austern**

John C. Phillips, Jr. Esquire
PHILLIPS GOLDMAN & SPENCE P.A.
1200 North Broom Street
Wilmington, DE 19806

**LANDIS RATH & COBB LLP**

Kerri K. Mumford (No. 4186)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

Counsel for the Libby Claimants